## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JANI-KING INTERNATIONAL, INC.,**<br>**a corporation organized under**<br>**the laws of the State of Texas,** | ) )<br>) )<br>) ) |
| **JANI-KING FRANCHISING, INC.,**<br>**a corporation organized under**<br>**the laws of the State of Texas,** | ) )<br>) )<br>) ) |
| **and** | ) ) |
| **OHIO SERVICES-CLE, LLC**<br>**dba JANI-KING OF CLEVELAND,**<br>**a limited liability company organized**<br>**under the laws of the State of Ohio,** | ) )<br>) )<br>) )<br>) )  **Case No.:** _____ |
| **Plaintiffs,** | ) ) |
| **v.** | ) )  **EMERGENCY INJUNCTIVE**<br>) )  **RELIEF REQUESTED** |
| **UNITED STATES SMALL BUSINESS**<br>**ADMINISTRATION,** | ) )<br>) ) |
| **and** | ) ) |
| **JOVITA CARRANZA,**<br>**in her official capacity as Administrator of the**<br>**United States Small Business Administration,** | ) )<br>) )<br>) ) |
| **Defendants** | ) )<br>) |

## VERIFIED COMPLAINT

Plaintiffs—Jani-King International, Inc. ("Jani-King International" or "The JANI-KING®

Trademark Owner"), Jani-King Franchising, Inc. ("JKF" or "The JANI-KING® Franchisor"),

and Ohio Services–CLE, LLC d/b/a Jani-King of Cleveland ("Ohio Services" or "The JANI-

KING® Ohio Master Franchise")—by counsel, respectfully state as follows for their Verified

Complaint.  By way of their Verified Complaint, Plaintiffs seek temporary, preliminary, and

permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure; judicial

review pursuant to 7 U.S.C. §§ 701–706; and a declaratory judgment pursuant to the Declaratory

Judgment Act, 28 U.S.C. §§ 2201–02 against Defendants, the United States Small Business

Administration (the "Agency") and Jovita Carranza, in her official capacity as Administrator of

the United States Small Business Administration (the "Administrator") (collectively, the

"SBA").  This relief is necessary because the SBA is violating the Administrative Procedure Act,

5 U.S.C. §§ 501 *et seq.* (the "APA"), in implementing the Paycheck Protection Program ("PPP")

loan program (the "Temporary PPP Loan Program") established by the Coronavirus Aid, Relief,

and Economic Security Act, Public L. No. 116–136 §§ 1101–03, 1107, and 1104 (the "CARES

Act") and the pre-existing SBA loan guarantee program established by Section 7(a) of the Small

Business Administration Act, 15 U.S.C. § 636(a) (the "Section 7(a) SBA Loan Program").

## NATURE OF ACTION

1.      As enacted by Congress and signed by the President, the CARES Act established

the Temporary PPP Loan Program for the purpose of quickly providing emergency relief to

qualifying small businesses affected by the current COVID-19 pandemic and their employees.

The statutory language of the CARES Act is clear that PPP loans guaranteed by the SBA are

available to any qualifying small business, defined as a business with fewer than 500 employees.

2.      Ignoring the plain statutory language of the CARES Act, the SBA has

implemented the PPP in such a way that discriminates against any small business that operates

pursuant to an agreement that the SBA—which has no enforcement authority for any federal or

state franchise laws—has determined to be a "franchise" within the meaning of the FTC

Franchise Disclosure Rule, 16 C.F.R. Parts 436 and 437.  Notwithstanding its discriminatory

implementation of the PPP under the CARES Act, the SBA has permitted some small businesses

classified as "franchises" to qualify for PPP loans.  This has not been the case, however, in the

commercial cleaning industry in general and the JANI-KING® franchise system in particular.

3.      Rather than follow the law, the SBA has misapplied the Temporary PPP Loan Program and the Section 7(a) SBA Loan Program so that neither type of SBA loan is generally available to any member of the "JANI-KING® Franchise System."   The "JANI-KING® Franchise System" consists of (a) Plaintiff JKF, The JANI-KING® Franchisor, (b) "JANI-KING® Master Franchises" (such as Plaintiff Ohio Services, the Ohio JANI-KING® Master Franchise), and (c) "JANI-KING® Unit Franchisees," as those terms are defined herein.  Because of the SBA's misinterpretation of its statutory authority, the SBA generally will not guarantee— and lenders typically will not even submit—applications for such loans to:

a.      The JANI-KING® Franchisor, which has fewer than 500 employees and otherwise qualifies for a PPP loan under the criteria set forth in the CARES Act;

b.      87 JANI-KING® Master Franchises nationwide, including The JANI-KING® Ohio Master Franchise, each of which has fewer than 500 employees and otherwise qualifies for a PPP loan under the criteria set forth in the CARES Act; and

c.      approximately 5,600 JANI-KING® Unit Franchisees nationwide, each of which, as far as Plaintiffs know, has no more than 500 employees.

Plaintiffs are aware of only one instance in which the SBA did accept and agree to guarantee a PPP loan to a JANI-KING® Unit Franchisee.  Even then, the SBA later informed the lender— after the PPP loan had already closed and been funded—that the JANI-KING® Unit Franchisee would be ineligible for the loan forgiveness provisions of the Temporary PPP Loan Program that, under the CARES Act, are supposed to be available to any qualifying small business that meets the criteria set forth in the statute.

4.      The SBA's implementation of the Temporary PPP Loan Program has, in effect, amended the CARES Act in ways that are not supported by and indeed contrary to the stated

purpose and express provisions of the statute in a number of ways.  One way that the SBA has misapplied the statute is its refusal to guarantee a PPP loan to any small business that happens to be a "franchise" unless the franchise agreement pursuant to which it is operated has been approved by the SBA for listing in the SBA Franchise Directory that the SBA maintains at www.sba.gov/sba-franchise-directory (the "Directory").  Pursuant to the Section 7(a) SBA Loan Program, the SBA had previously revised its Standard Operating Procedures, SBA SOP 50 10 5 (J), Subpart B, Chapter 2, Paragraph II.D.8(b) (the "SOP") to make listing in the Directory the only way to obtain SBA approval for such a loan to a franchise.  Before 2018, listing in the Directory had simply been one method for pre-approval of a loan under the Section 7(a) SBA Loan Program.  Effective January 1, 2018—the SBA decreed in a revised SOP—if a franchise agreement was not listed in the Directory, a franchise's application could no longer be processed under the Section 7(a) SBA Loan Program.  The SOP was never the subject of a notice of proposed rulemaking, much less an actual SBA regulation, as required by the APA.

5.     Even if the SOP had been a valid exercise of the SBA's authority under the Section 7(a) Loan Program, the Temporary PPP Loan Program is a separate, emergency loan program with its own eligibility criteria and a short lifespan.  No provision of the CARES Act authorizes the SBA to limit eligibility under the Temporary PPP Loan Program to a "small business" that is also a "franchise" to a franchise operated pursuant to a franchise agreement that the SBA has approved for listing in the Directory.  To the contrary, the sole reference in the CARES Act to the Directory is a provision whereby a "franchise" listed in the Directory is automatically exempt from the SBA's so-called "affiliation" rules.  These "affiliation" rules guide the SBA's determination whether an applicant for a loan guaranteed by the SBA should be deemed to have more than 500 employees for purposes of eligibility.  Even if the requirement for

listing in the Directory were a valid prerequisite for obtaining a loan pursuant to the Section 7(a) SBA Loan Program, and even if the SBA's "affiliation" rules were consistent with federal law—both propositions that Plaintiffs dispute—the Temporary PPP Loan Program created by the CARES Act contains no such limitation.

6.      For many franchise systems, the SBA's requirement that the franchise agreement be listed in the Directory has merely delayed their eligibility for PPP loans by imposing a requirement that is nowhere to be found in the statute.  For the JANI-KING® Franchise System, however, the SBA's discriminatory determination as to whether a franchise can be listed in the Directory has, by and large, operated as an absolute bar to eligibility for PPP loans.  Both before and after enactment of the CARES Act, the SBA has found members of the JANI-KING® Franchise System to be ineligible for listing in the Directory based on a determination that the franchisor and every single franchisee in the JANI-KING® Franchise System should—in effect—be treated as a single entity that, collectively, has more than the 500 employees necessary to qualify as a "small business" under the Temporary PPP Loan Program and the Section 7(a) SBA Loan Program.

7.      Like every franchise system, the JANI-KING® franchise system consists of one or more franchisors and franchisees.  The JANI-KING® Franchisor licenses trademarks (the "Proprietary JANI-KING® Trademarks") and other intellectual property owned by The JANI-KING® Trademark Owner to 87 master franchises nationwide ("JANI-KING® Master Franchises").  Of the JANI-KING® Master Franchises, 71 are independently owned and 16 are wholly-owned subsidiaries of Jani-King, Inc. (which is itself a wholly-owned subsidiary of Plaintiff Jani-King International, The JANI-KING® Trademark Owner).  The JANI-KING® Master Franchises include Plaintiff Ohio Services, The JANI-KING® Ohio Master Franchise.

Ohio Services is owned by a husband and wife, **not** The JANI-KING® Trademark Owner or The JANI-KING® Franchisor.  Nor is Ohio Services otherwise "affiliated" with any member of the JANI-KING® Franchise System as the term "affiliated" is commonly understood.  Each JANI-KING® Master Franchise, including The JANI-KING® Ohio Master Franchise, is a franchisee within the exclusive territory to which it purchased the rights.  In its exclusive territory, each JANI-KING® Master Franchise is also a franchisor of independently owned commercial cleaning service companies (the "JANI-KING® Unit Franchisees") to which it sublicenses the Proprietary JANI-KING® Trademarks for operation of their franchised businesses.  In the U.S., the JANI-KING® Franchise System includes approximately 5,600 JANI-KING® Unit Franchisees.

8.     Nationwide, the JANI-KING® Franchise System thus consists of approximately 5,688 separate entities: The JANI-KING® Franchisor, 87 JANI-KING® Master Franchises, and approximately 5,600 JANI-KING® Unit Franchisees.  Each member of the JANI-KING® Franchise System—The JANI-KING® Franchisor, the 87 JANI-KING® Master Franchises, and the approximately 5,600 JANI-KING® Unit Franchisees—has fewer than 500 employees.  Each is therefore eligible to apply for and, if otherwise qualified, receive a PPP loan under the CARES Act as enacted by Congress and signed by the President.  The SBA has effectively rewritten the CARES Act so that The JANI-KING® Franchisor, JANI-KING® Master Franchises, and JANI-KING® Unit Franchisees are not allowed to participate in the Temporary PPP Loan Program in accordance with the statute.

9.     Both before and after passage of the CARES Act, the SBA has refused to include in the Directory any franchise agreement to which any member of the JANI-KING® Franchise System is a party.  To the extent that the SBA has articulated any rationale for its refusal to list any such franchise agreements in the Directory, it has been the SBA's opinion that the JANI-

KING® Franchisor, JANI-KING® Master Franchises, and JANI-KING® Unit Franchisees are "affiliates" of one another and therefore should be viewed as the equivalent of a single entity that—collectively—has more than the 500 employee threshold necessary to qualify as a "small business."

10.     Since passage of the CARES Act, the SBA has treated PPP loan applications submitted by members of the JANI-KING® Franchise System in ways that are discriminatory compared to PPP loan applications of other franchise systems at least outside the commercial cleaning industry.  By and large, the SBA has refused to accept—much less approve—PPP loan applications submitted by JANI-KING® Master Franchises (including The JANI-KING® Ohio Master Franchise) and JANI-KING® Unit Franchisees, with limited exceptions.  On April 9, 2020, one JANI-KING® Unit Franchisee did manage to obtain a PPP loan.  After the closing, however, the SBA notified the lender that the SBA would deny forgiveness of the loan under the Temporary PPP Loan Program because the JANI-KING® Unit Franchisee's franchise agreement is not listed in the Directory—a position that finds no support in the CARES Act.  More recently, on April 13, 2020, Plaintiff Jani-King International (The JANI-KING® Trademark Owner) did receive funding for a loan under the Temporary PPP Loan Program.  The SBA presumably will deny eligibility for forgiveness of that loan under the Temporary PPP Loan Program as it did with a JANI-KING® Unit Franchisee.

11.     The SBA's discriminatory treatment of the JANI-KING® Franchise System under the Temporary PPP Loan Program and the Section 7(a) SBA Loan Program finds no support in, and is indeed contrary to, the plain language of the statutes by which these programs were established.  As a small business with fewer than 500 employees, each member of the JANI-KING® Franchise System—The JANI-KING® Franchisor, each JANI-KING® Master Franchise

(including The JANI-KING® Ohio Master Franchise), and each JANI-KING® Unit Franchisee—
is the type of recipient of such assistance that Congress and the President intended to aid on the
same terms as any other small business. The fact that the cleaning and disinfecting services
provided by the JANI-KING® franchise system are part of the "front line" battle against COVID-
19 adds insult to injury. To prevent further injury to the JANI-KING® franchise system that
would be irreparable, Plaintiffs seek temporary and preliminary injunctive relief.

## PARTIES

### (Plaintiffs)

### The JANI-KING® Trademark Owner

12.    Plaintiff Jani-King International, Inc. ("Jani-King International" or "The JANI-
KING® Trademark Owner") is a corporation organized under the laws of the State of Texas with
its principal place of business at 16885 Dallas Parkway, Addison, Texas 75001.

### The JANI-KING® Franchisor

13.    Plaintiff Jani-King Franchising, Inc. ("JKF" or "The JANI-KING® Franchisor") is
a corporation organized under the laws of the State of Texas with its principal place of business
at 16885 Dallas Parkway, Addison, Texas 75001.

### The JANI-KING® Ohio Master Franchise

14.    Plaintiff Ohio Services–CLE, LLC, d/b/a Jani-King of Cleveland ("Ohio
Services" or "The JANI-KING® Ohio Master Franchise") is a limited liability company
organized under the laws of the State of Ohio with its principal place of business located at 9075
Town Centre Drive, Suite 20, Broadview Heights, Ohio 44147.

**(Defendants)**

## The SBA

15.     Defendant United States Small Business Administration (the "Agency") is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633, *et seq.* The SBA maintains its office at 409 Third Street, S.W., Suite 7000, Washington, D.C. 20024-3212.

## The SBA Administrator

16.     Defendant Jovita Carranza (the "SBA Administrator," together with the Agency, the "SBA") is the Administrator of the Agency, a Cabinet-level position. The SBA Administrator is being sued in her official capacity only, as the Administrator of the Agency. Plaintiffs have authority to sue the SBA Administrator pursuant to 15 U.S.C. § 634(b).

## JURISDICTION AND VENUE

### (Subject Matter Jurisdiction)

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the Constitution, laws, or treaties of the United States. This action seeks judicial review and invalidation under APA §§ 702-704 and 706 of certain aspects of the SBA's implementation of the Temporary PPP Loan Program and the Section 7(a) SBA Loan Program as inconsistent with the statutes that the SBA is responsible for administering and the SBA's governing regulations. The conduct of the SBA at issue is arbitrary, capricious, and contrary to law.

18.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1346 because the named Defendants include the Agency, a federal agency of the United States, making this a "civil action or claims against the United States…founded upon…any Act of Congress, or any regulation of an executive department" within the meaning of the statute.

19.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1361 because Plaintiffs'

claims against the Administrator are "in the nature of a mandamus to compel an officer or

employee of the United States or any agency thereof to perform a duty owed to" Plaintiffs.

20.     This Court has authority for judicial review of Agency action pursuant to 5 U.S.C.

§ 702, which states:

> A person suffering legal wrong because of agency action, or adversely
> affected or aggrieved by agency actin within the meaning of a relevant
> statute, is entitled to judicial review thereof.  An action in a court of the
> United States seeking relief other than money damages and stating a claim
> that an agency or an officer or employee thereof acted or failed to act in an
> official capacity or under color of legal authority shall not be dismissed
> nor relief therein be denied on the ground that it is against the United
> States or that the United States is an indispensable party.  The United
> States may be named as a defendant in any such action, and a judgment or
> decree may be entered against the United States; *Provided,* that any
> mandatory or injunctive decree shall specify the Federal officer or officers
> (by name or by title), and their successors in office, personally responsible
> for compliance.  Nothing herein (1) affects other limitations on judicial
> review or the power or duty of the court to dismiss any action or deny
> relief on any other appropriate legal or equitable ground; or (2) confers
> authority to grant relief if any other statute that grants consent to suit
> expressly or impliedly forbids the relief which is sought.

21.     The declaratory relief sought by Plaintiffs is authorized by Rule 57 of the Federal

Rules of Civil Procedure and the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides

that "any court of the United States, upon the filing of an appropriate pleading, may declare the

rights and other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought."

22.     The injunctive relief sought by Plaintiffs is authorized by Rule 65 of the Federal

Rules of Civil Procedure and the Declaratory Judgment Act, 28 U.S.C. § 2202, which provides

that "[f]urther necessary or proper relief on a declaratory judgment or decree may be granted,

after reasonable notice and hearing, against any adverse party whose rights have been determined

by such judgment."

23.     No action, civil or criminal, is pending in any state court involving the Plaintiffs regarding the activities and events at issue in this case.

24.     Venue in this Court is proper under 28 U.S.C. § 1391(e) because Defendants, an agency of the United States and its administrator, reside or are deemed to reside in this district.

## FACTUAL AND LEGAL BACKGROUND

**(The JANI-KING® Franchise System and Proprietary Trademarks)**

25.     The JANI-KING® Franchise System—consisting of more than 6,000 franchisees worldwide with more than 120 support offices in ten countries—is the largest commercial cleaning franchise system in the world.  The types of customers to which the JANI-KING® Franchise delivers commercial cleaning services include office buildings, hospitals, hotels, sporting venues, universities, restaurants, and manufacturing facilities, among others.

26.     In the United States, the franchise relationship between the JANI-KING® Franchisor and each JANI-KING® Master Franchise is the subject of a standard form written agreement (the "JANI-KING® Master Franchise Agreement").  Similarly, the franchise relationship between each JANI-KING® Master Franchise in the United States and its JANI-KING® Unit Franchisees is the subject of a standard form written agreement (the "JANI-KING® Unit Franchise Agreement").  Like the franchise agreements of other franchisors, the JANI-KING® Master Franchise Agreements and the JANI-KING® Unit Franchise Agreements (collectively, the "JANI-KING® Franchise Agreements") require each franchisee to comply with the brand standards of the JANI-KING® Trademark Owner (Jani-King International) for the right to be licensed to use the Proprietary JANI-KING® Trademarks and other intellectual property, including trade secrets, upon which the JANI-KING® Franchise System is based (the "JANI-KING® Brand Standards").  The JANI-KING® Brand Standards are set forth in each

JANI-KING® Franchise Agreement and the JANI-KING® Policy and Procedures Manual incorporated by reference in each JANI-KING® Franchise Agreement.

27.     In exchange for the royalty payments that the franchisees are required to pay, The JANI-KING® Franchisor provides valuable services to each JANI-KING® Master Franchise, and each JANI-KING® Master Franchise provides valuable services to its JANI-KING® Unit Franchisees.  The provision of such services by the franchisor is common in franchising.  For example, in the hospitality industry, hotel franchisors operate reservation systems on behalf of all of the franchisees and require individual hotel operators to honor the reservations made through the franchisor's reservation system.  Similarly, in the restaurant industry, franchisors control the supply of key ingredients used by their franchisees while mandating the use of certain recipes, standard menus, and sometimes even pricing strategies.

28.     In the JANI-KING® Franchise System, The JANI-KING® Franchisor provides support services necessary to ensure that the JANI-KING® Master Franchises and each of their JANI-KING® Unit Franchisees operate their commercial cleaning franchises in accordance with the JANI-KING® Brand Standards.  The support services that the JANI-KING® Master Franchise Agreements obligate The JANI-KING® Franchisor to provide to the JANI-KING® Master Franchises include the following: (a) registering and maintaining trademarks and service marks, (b) providing initial training on how to operate a JANI-KING® Master Franchise, (c) providing branded supplies and marketing materials, manuals, and training aids, (d) offering technical assistance and support services, and (e) advertising and marketing the JANI-KING® brand.  The support services that the JANI-KING® Unit Franchise Agreements obligate the JANI-KING® Master Franchises to provide to the JANI-KING® Unit Franchisees include provision of: (a) confidential manuals, training aids, and other pertinent information concerning

the JANI-KING® Brand Standards, (b) initial and ongoing training, recommendations, and advice regarding operation of their commercial cleaning franchises in accordance with the JANI-KING® Brand Standards, and (c) promotional materials, sales and service manuals, equipment, and other materials necessary to operate their commercial cleaning franchises in accordance with the JANI-KING® Brand Standards.

29.     Pursuant to the JANI-KING® Master Franchise Agreements, each JANI-KING® Master Franchise handles the billing and collection of accounts for which the JANI-KING® Unit Franchisees perform commercial cleaning services and remits such collections to each franchisee, minus a deduction for any royalties or other charges that the franchisee owes to the JANI-KING® Master Franchise.  This arrangement improves the cash flow of the JANI-KING® Unit Franchisees because they actually receive payment from the JANI-KING® Master Franchise once the account payments are due—before many of the invoices are even collected. Ultimately, most JANI-KING® Unit Franchisees bear the risk of non-payment because most JANI-KING® Master Franchises "charge back" the franchisees for previously advanced payments if the customer has not paid the invoiced amount within a certain period of time. Pursuant to a program developed by The JANI-KING® Franchisor, however, some JANI-KING® Master Franchises offer the JANI-KING® Unit Franchisees a "no charge back" guarantee—effectively, a form of insurance—in exchange for payment of a premium.  Under the "no charge back" guarantee, JANI-KING® Master Franchises thus act as the insurer that individual customers will not pay amounts invoiced on behalf of the JANI-KING® Unit Franchisees.  Individual JANI-KING® Unit Franchisees without such "insurance" bear the risk of loss of non-payment.

30.     With or without a "no charge back" guarantee, the JANI-KING® Franchise System seeks to ensure that franchisees have the wherewithal to comply and in fact do comply with the JANI-KING® Brand Standards that The JANI-KING® Trademark Owner seeks to have associated with the Proprietary JANI-KING® Trademarks.   The Proprietary JANI-KING® Trademarks that are sub-licensed to JANI-KING® Master Franchises and JANI-KING® Unit Franchisees include the following trademarks that Jani-King International, The JANI-KING® Trademark Owner, has registered on the Principal Register of the United States Patent and Trademark Office:

    a.      the JANI-KING logo or design mark, Registration No. 1,399,797, registered on July 1, 1986;

    b.      the JANI-KING word mark, Registration No. 1,472,588, registered on January 12, 1988; and

    c.      THE KING OF CLEAN, Registration No. 2,599,370, registered on July 23, 2002.

31.     The fact that all of the JANI-KING® Franchise Agreements include a license to use the Proprietary JANI-KING® Trademarks establishes one of the three essential definitional elements of a "franchise" within the meaning of the FTC Franchise Disclosure Rule: a license to use, or an association with, a franchisor's trademark.   Section 45 of the federal trademark statute, the Lanham Act, permits franchisors to control the quality of the goods and services provided by their franchisees.[1]   In fact, the Lanham Act not only gives licensors the *right* to control the quality of goods and services sold under their marks, it also imposes an affirmative *duty* on

---

[1] 15 U.S.C. § 1127; *Mid-State Aftermarket Body Parts, Inc. v. MQVP, Inc.*, 466 F.3d 630, 634 (8th Cir. 2006); *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 108 (4th Cir. 1991).

licensors to control, supervise, and ensure the quality of goods and services sold under their marks by licensees.[2]  A licensor that fails to discharge this duty forfeits its rights to the mark.[3]

32.      Not only does Section 45 of the Lanham Act permit and indeed require the control over use of the Proprietary JANI-KING® Trademarks set forth in the JANI-KING® Franchise Agreements, such control is essential to the success of the JANI-KING® franchise system, as federal courts have long recognized.  In the words of one district court, "the cornerstone of a franchise system must be the trademark or trade name of a product," and "[u]niformity of product and control of its quality and distribution . . . causes the public to turn to franchise stores for the product."[4]  The Fourth Circuit has similarly recognized that the benefits of being part of a franchise or other branded distribution system include "the right to use a trademark" and "the right to become a part of a system whose business methods virtually guarantee . . . success" because the franchised business "is identified with a network of stores whose very uniformity and predictability attracts customers."[5]  In that case, which involved the McDonald's franchise system, the Fourth Circuit observed that a franchisee benefits from the uniformity and predictability that results from "pervasive franchisor supervision" over "all facets of the business, from the design of the menu board to the amount of catsup on the hamburgers, nothing is left to chance."[6]

---

[2] *See, e.g., Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 387 (5th Cir. 1977); *Dawn Donut Co., Inc. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 367 (2d Cir. 1959).

[3] *See generally Kentucky Fried Chicken Corp.*, 549 F.2d at 387.

[4] *Susser v. Carvel Corp.*, 206 F. Supp. 636, 640 (S.D.N.Y 1962), *aff'd*, 332 F.2d 505 (2d Cir. 1964).

[5] *Principe v. McDonald's Corp.*, 631 F.2d 303, 309 (4th Cir. 1980).

[6] *Id.*

33.     In other words, control over use of the JANI-KING® Proprietary Marks by JANI-KING® Master Franchises and JANI-KING® Unit Franchisees shows merely that the franchisor is exercising its rights and responsibilities under Section 45 of the Lanham Act to ensure that the JANI-KING® Proprietary Marks are used only in accordance with the JANI-KING® Brand Standards.  It does not establish that the JANI-KING® Franchisor, the JANI-KING® Master Franchises, and the JANI-KING® Unit Franchisees are "affiliates" of one another.  Under the federal trademark statute, the control that a trademark licensor is entitled to exercise includes the absolute discretion whether to license or approve the assignment of a license to another person or entity.[7]  Yet according to the SOP—which does not even have the force of an Agency regulation—a franchise agreement that allows the franchisor to exercise its "sole discretion" whether to approve a sale or transfer, or even a franchise agreement that is silent on the standard for consent, makes the franchisor and franchisee "affiliates" of one another.  (SBA SOP 50 10 5 (K), Subpart B, Chapter 2, Paragraph II.D.8(f)).  This provision in particular and the SOP in general are thus contrary to federal trademark law.  The SOP has never been the subject of any valid Agency regulation that would make it binding on the public.  And the SOP is not consistent with the provisions of any statute authorizing the SBA to enforce either the Section 7(a) SBA Loan Program or the Temporary PPP Loan Program established by the CARES Act.

---

[7] Because trademark licenses are considered "personal," they cannot be sublicensed or assigned without the consent of the trademark holder.  *In re: XMH Corp.*, 647 F.3d 690, 695-96 (7th Cir. 2011).  *See also In re: N.C.P. Mktg. Group, Inc.*, 337 B.R. 230, 236-37 (D. Nev. 2005); *Miller v. Glenn Miller Prods.*, 318 F. Supp. 2d 923, 933 (C.D. Cal. 2004); *Tap Publications, Inc. v. Chinese Yellow Pages (N.Y.) Inc.*, 925 F. Supp. 212, 218 (S.D.N.Y. 1996).  Federal courts thus recognize that "intangible factors" rightly play an important role in the decision to license a trademark to a particular franchisee.  *Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842, 854 (8th Cir. 2002).  "[S]ince the licensor-trademark owner has the duty to control the quality of goods sold under its mark, it must have the right to pass upon the abilities of new potential licensees."  *Tap Publications, Inc. v. Chinese Yellow Pages (N.Y.) Inc.*, 925 F. Supp. 212, 218 (S.D.N.Y. 1996) (quotation omitted).

**(The Statutes Governing the SBA's Administration of
the Section 7(a) SBA Loan and Temporary PPP Loan Programs)**

34.     The SBA's primary source of its authority is the Small Business Act, 15 U.S.C.

§ 631, *et seq*.  The regulations by which the SBA implements its statutory authority are codified

in the Federal Register.  The SBA also issues guidance documents for compliance with its

regulations and the programs that it administers.  These guidance documents include publicly

available Standard Operating Procedures (including the SOP), Policy Notices, Procedural

Notices, and other general guidance.

35.     Before the enactment of the CARES Act, the SBA's primary program for

providing financial assistance to small businesses was through its authorization to provide loan

assistance to small business concerns under Sections 7(a) and 7(b) of the Small Business Act, 15

U.S.C. § 636(a).  The CARES Act simply amended Section 7(a) of the Small Business Act to

establish the Temporary PPP Loan Program on a short-term, emergency basis.

36.     The Section 7(a) SBA Loan Program provides financing for general business

purposes.  The SBA guarantees a loan made by a lender to the small business applicant that has

fulfilled the "credit elsewhere" test demonstrating that the desired credit is not otherwise

available on reasonable terms from non-governmental sources.

37.     The Small Business Act defines a "small-business concern" as "one which is

independently owned and operated and which is not dominant in its field of operation."   15

U.S.C. § 632(a)(1).  The statute authorizes the Administrator to establish "size standards" to

determine whether a business is a "small business concern."  *See id.* § 632(a)(2)(A) ("In addition

to the criteria specified in paragraph (1), the Administrator may specify detailed definitions or

standards by which a business concern may be determined to be a small business concern for the

purposes of this chapter or any other Act.").  Such standards "may utilize number of employees,

dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors." *Id.* § 632(a)(2)(B).

38.     Before passage of the CARES Act, the SBA issued so-called "affiliation" rules that require an entity to aggregate its separately-organized, commonly-controlled business concerns when calculating, among other things, how many employees it has for purposes of Section 7(a) loan consideration.  In considering "affiliation" as to Section 7(a) loan applicants generally, the SBA considers factors such as ownership and the ability to control an affiliate. *See* 13 C.F.R. § 121.301.

39.     In the case of applicants under the Section 7(a) SBA Loan Program, the SBA developed special "affiliation" rules for "franchises."  These were first established on January 31, 1996 and have undergone a number of changes over the years.  Before July 27, 2016, the SBA's "affiliation" rules did not treat "franchises" differently from other small businesses.  From July 27, 2016 until February 10, 2020, the SBA "affiliation" rules governing "franchises" were found in 13 C.F.R. § 121.301(f)(5), which stated as follows:

> The restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee has the right to profit from its efforts and bears the risk of loss commensurate with ownership.  SBA will only consider the franchise or license agreements of the applicant concern.

Effective March 11, 2020, the SBA amended its "affiliation" rules with respect to franchise agreements. *See* 13 C.F.R. § 121.301(f):

> (i) The restraints imposed on a franchisee by its franchise agreement generally will not be considered in determining whether the franchisor is affiliated with an applicant franchisee provided the applicant franchisee has the right to profit from its efforts and bears the risk of loss commensurate with ownership.  SBA will only consider the franchise agreements of the applicant concerned.  SBA will maintain a centralized list of franchise and other similar agreements that are eligible for SBA financial assistance, which will identify any additional

documentation necessary to resolve any eligibility or affiliation issues between the franchisor and the small business applicant.

(ii) For purposes of this section, "franchise" means any continuing commercial relationship or arrangement, whatever it may be called, that meets the Federal Trade Commission definition of "franchise" in 16 CFR part 436.

13 C.F.R. § 121.301(f)(7) (Amended on Feb. 10, 2020, 85 Fed. Reg. 7651).

40.     In short, no regulation of the SBA has ever mandated that a "franchise" be listed in the Directory to qualify for any SBA loan—not under the Section 7(a) SBA Loan Program and certainly not under the Temporary PPP Loan Program.

41.     For purposes of determining whether small businesses that are "franchises" are eligible borrowers under the Section 7(a) SBA Loan Program, the SBA maintains the "Directory" and issues a "franchise identifier code" for franchises listed in the Directory.   13 C.F.R. § 121.301(f).  The SBA Directory includes only business models that the SBA determines are eligible under the SBA's affiliation rules and other eligibility criteria.  Lenders participating in the Section 7(a) SBA Loan Program are able to rely on the Directory and are not required to review franchise or other brand documentation for affiliation or eligibility.

42.     Inclusion of a franchise in the Directory requires the submission of the franchise agreement, franchise disclosure document, if applicable, and other documents that the franchisor requires the franchisee to sign to become part of the franchise system.  The SBA then subjects these documents to an affiliation and eligibility determination.[8]  The franchisor also has the option to limit the SBA to an eligibility review if it agrees to use the SBA Addendum Form 2462 to Franchise Agreement (the "SBA Addendum").  *See* franchise sections of SBA SOP 50 10 5 (K) (Subpart B, Chapter 2, Paragraph II.D.8).  Upon completion of the SBA's review and a

---

[8] See an overview of the application process at https://www.sba.gov/sba-franchise-directory.

determination by SBA that the agreement is eligible, it lists the agreement in the Directory and will assign an SBA franchise identifier code.

43.     Before January 1, 2018, having a franchise agreement listed in the Directory was not necessary to obtain a loan under the Section 7(a) SBA Loan Program.  Parties to a franchise agreement listed in the Directory, however, received expedited treatment.  Accordingly, lenders authorized to make loans to franchisees did not need to undertake affiliation and eligibility determinations for franchise agreements listed in the Directory.

44.     Effective January 1, 2018, the SBA revised the SOP to make what had been a permissive path for pre-approval to make it the sole and mandatory path for franchises to obtain a loan under the Section 7(a) SBA Loan Program.  Starting in 2018, if a franchise system was not in the Directory, a franchise's application for SBA financing would no longer be processed by a lender.  This mandate finds ***no support*** in either the statute or the regulations pursuant to which the SOP was issued.

45.     The CARES Act was signed into law on March 27, 2020.  Title I, Section 1102 of the CARES Act amends the Small Business Act to establish the Temporary PPP Loan Program and allows such loans to any qualifying small business.  The portions of the CARES Act that establish the Temporary PPP Loan Program are attached as **Exhibit A**.

46.     The CARES Act instructs the SBA to promulgate rules to implement the Temporary PPP Loan Program and makes the SBA responsible for administering the Temporary PPP Loan Program.  15 U.S.C. § 636(a)(36)(F)(ii).

47.     Under the Temporary PPP Loan Program established by the CARES Act, "any business concern . . . shall be eligible to receive a covered loan if the business concern . . . employs not more than . . . 500 employees."  15 U.S.C. § 636(a)(36)(D)(i).  Under the CARES

Act, eligibility for a loan under the Temporary PPP Loan Program does **not** require a "franchise" to be listed in the Directory.

48.     The sole reference to the Directory in the CARES Act is that it automatically waives affiliation rules for a loan under the Temporary PPP Loan Program to "any business concern operating as a franchise that is assigned a franchise identifier code" by the SBA.   15 U.S.C. § 636(a)(36)(D)(iv).   The CARES Act does not require any eligible small business, regardless of whether it is a "franchise," to be listed in the Directory to qualify for a loan under the Temporary PPP Loan Program.

49.     In evaluating the eligibility of a borrower for a PPP loan, a lender is to consider whether the borrower: (1) was in operation on February 15, 2020; (2) had employees for whom the borrower paid salaries and payroll taxes; or (3) paid independent contractors.   15 U.S.C. § 636(a)(36)(F)(ii)(II).

50.     The CARES Act provides that an eligible recipient applying for a covered loan certify:

> (I) that the uncertainty of current economic conditions makes necessary the loan request to support the ongoing operations of the eligible recipient;
>
> (II) that funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments;
>
> (III) that the eligible recipient does not have an application pending for a loan under this subsection for the same purpose and duplicative of amounts applied for or received under a covered loan; and
>
> (IV) during the period beginning on February 15, 2020 and ending on December 31, 2020, that the eligible recipient has not received amounts under this subsection for the same purpose and duplicative of amounts applied for or received under a covered loan.

15 U.S.C. § 636.

51.     On April 1, 2020, the SBA promulgated regulations pursuant to the PPP Loan Program Provisions of the CARES Act.  A copy of Business Loan Program Temporary Changes; Paycheck Protection Program, RIN 3245-AH34 (Interim Final Rule Apr. 1, 2020) ("SBA 3245"), as promulgated by the SBA, is attached as **Exhibit B**.

52.     SBA 3245 provides that PPP loans will be provided on a first-come, first-served basis until funds are exhausted.  The PPP has a total monetary limit of $349 billion which is expected to be exhausted by the end of this week unless additional funds are appropriated.

53.     The SBA's position that it is mandatory for a franchise business to be listed in the Directory to apply for a PPP Loan is unsupported by the CARES Act and its implementing regulation.  Indeed, the pertinent language in the regulation merely states:  "SBA will maintain a centralized list of franchise and other similar agreements that are eligible for SBA financial assistance, which will identify any additional documentation necessary to resolve any eligibility or affiliation issues between the franchisor and the small business applicant."   13 C.F.R. § 121.301(f)(7)(i).  The SBA has acknowledged that this requirement is not in its regulations. *See* 83 Fed. Reg. 49010 ("Although not included in the regulations, SBA is providing below a description of the franchise procedures currently in effect for lending to franchisees in the Business Loan Programs.").  Before January 1, 2018, the SBA allowed franchise businesses to choose between applying for SBA financing and going through the eligibility and affiliation analysis on a business-by-business basis or to apply to be on the Directory.  However, after January 1, 2018, the SBA made what had been a permissive route for review the sole and mandatory route.   The SBA did this without notice and without following rulemaking procedures.

54.     The SBA has promulgated regulations for its Business Loan Program, 60 Fed. Reg. 64356 *et seq.* (proposed Dec. 15, 1995; codified at 13 C.F.R. §§ 120.1 *et seq.*) (the "Regulations"), 13 C.F.R. § 121.301 attached as **<u>Exhibit C</u>**.

55.     The SBA has also promulgated the "SOP" (Apr. 1, 2019), attached as **<u>Exhibit D</u>**. The SOP specifically states: "If the Applicant's brand meets the FTC definition of a franchise, it must be on the Directory in order to obtain SBA financing."  *See* franchise sections of SBA SOP 50 10 5 (K) for 7(a) (Subpart B, Chapter 2, Paragraph II.D.8.b).  Again, the foregoing provision of the SOP finds no support in any statute or regulation.

56.     The SBA does have an appeal process whereby an applicant can appeal the SBA's decision not to list its franchise agreement in the Directory.  The SBA has previously denied such appeals and has made clear since establishment of the Temporary PPP Loan Program— funding for which is likely to be exhausted soon—that the JANI-KING® Franchise Agreements are ineligible for listing in the Directory.  At this juncture, further appeal would therefore be futile.

**(The SBA's Repeated Refusals to List JANI-KING® Franchise Agreements in the Directory and Denials of PPP Loans to Members of the JANI-KING® Franchise System)**

57.     In 2015, efforts to secure listing of the JANI-KING® Franchise Agreements in the Directory were rejected by the SBA.  Subsequent efforts by JKF to secure such a listing were unsuccessful.  At the time, listing in the Directory was not a prerequisite for lending under the Section 7(a) SBA Loan Program.  That relatively recent requirement did not present significant problems for the JANI-KING® Franchise System before the COVID-19 pandemic.  It did not become an issue until last week, when the SBA announced that listing in the Directory would be a prerequisite for assistance under the Temporary PPP Loan Program established by the CARES Act, that the JANI-KING® Franchise Agreements were ineligible for listing in the Directory,

23

and that members of the JANI-KING® Franchise System could not participate in the Temporary PPP Loan Program.

58.  On April 3, 2020, lenders began accepting applications under the Temporary PPP Loan Program.  To the best of JKF's knowledge, every application for a loan under the Temporary PPP Loan Program submitted by a JANI-KING® Unit Franchisee has been rejected altogether—with one exception that also reflects discriminatory treatment of the JANI-KING® Franchise System by the SBA.

### Mississippi JANI-KING® Unit Franchisee

59.  On April 3, 2020, a JANI-KING® Unit Franchisee in Pass Christian, Mississippi—MA and A Enterprises d/b/a Jani-King (the "Mississippi JANI-KING® Unit Franchisee")—submitted a Borrower Application Form under the Temporary PPP Loan Program to Community Bank of Mississippi, a lender approved by the SBA.  One of the benefits of participating in the Temporary PPP Loan Program as set forth in the CARES Act is that, if the loan proceeds are used for a discrete group of costs during an eight-week period following the loan, the PPP loan can be forgiven.  The Mississippi JANI-KING® Unit Franchisee's application for a PPP loan closed and was funded by the lender on April 9. 2020.  After the closing, however, the SBA notified the lender that the SBA would deny forgiveness of the loan under the Temporary PPP Loan Program because the Mississippi JANI-KING® Unit Franchisee's franchise agreement is not listed in the Directory.

## The JANI-KING® Ohio Master Franchise

60.     On April 3, 2020, Plaintiff Ohio Services submitted an application for a PPP loan to a local lender with which Ohio Services has a longstanding banking relationship, Erie Bank. A copy of Ohio Services' PPP loan application to Erie Bank is attached as **Exhibit E**.

61.     In response to Ohio Services' PPP loan application, on April 6, 2020, Joe Carollo, President of Ohio Services, received the email attached as **Exhibit F** from Wes Gillespie, President of Erie Bank, stating:

> Joe, please call me first thing in the morning.  I believe we have a problem with your PPP application.  The lender's application ask[]s if the business is a Franchise, if so it must be registered and listed in the SBA Franchise Directory with a Franchise Identification code, if the answer is no, the business may be ineligible for the PPP program.  Is Jani-King listed in the SBA Franchise directory?

62.     The following day, April 7, 2020, Mr. Carollo spoke with Mr. Gillespie about Ohio Services' PPP loan application.  During that conversation, Mr. Carollo informed Mr. Gillespie that the JANI-KING® franchise agreement was not listed in the SBA Franchise Directory but that JKF was seeking to have it listed.  Shortly thereafter, Mr. Carollo received the email from Mr. Gillespie attached as **Exhibit G** stating in part:

> Joe, I am sorry, both our 3rd party processor as well as SBA told us that as the current program is written, you would have to be on the SBA Franchise list or we can't submit the application.  I'm really sorry, but it's out of my control on my end because it's right on the lender's certified application that we have to submit for the loan guarantee.  I'm trying to figure out a way to do it, but don't see an option right now.  I would have called you but on a Zoom meeting right now, I can call you later.

## JKF's Communications With the SBA's Chief Franchise Counsel

63.     On April 7, 2020, Plaintiff JKF participated in a conference call through the International Franchise Association ("IFA") with Stephen Olear, the SBA's Chief Franchise Counsel.  During that call, Mr. Olear confirmed that the SBA would not consider applications

under the Temporary PPP Loan Program for any "franchise" not listed in the Directory.  Mr. Olear has since stated that the business model of commercial cleaning franchises generally, specifically including the JANI-KING® Franchise System, makes them ineligible for listing in the Directory and for assistance under the Temporary PPP Loan Program.

64.     Previously, on April 2, 2020, the JANI-KING® Master Franchise in the Washington, D.C. area—Jani-King of Washington, D.C., Inc. (the "JANI-KING® D.C. Master Franchise"—sought to have the JANI-KING® Franchise Agreement that it uses with its JANI-KING® Unit Franchisees listed in the Directory.  The JANI-KING® Unit Franchise Agreement used by the JANI-KING® D.C. Master Franchise is the same form that all JANI-KING® Master Franchises nationwide use with their JANI-KING® Unit Franchisees.

65.     On April 8, 2020, the SBA's Chief Franchise Counsel notified the individual who had submitted the listing request on behalf of the JANI-KING® D.C. Master Franchise that its agreement was ineligible to be listed in the Directory and that its JANI-KING® Unit Franchisees were ineligible for loans under the Temporary PPP Loan Program.

66.     Previously, on April 5, 2020, Plaintiff Jani-King International—which has fewer than 500 employees—applied for a loan under the Temporary PPP Loan Program.  Much to the surprise of Jani-King International in view of prior communications with the SBA and the fate of applications submitted by other members of the JANI-KING® Franchise System, Jani-King International's loan was funded on April 13, 2020.  Presumably the funding will be subject to the same advance determination by the SBA that the loan is not eligible for the forgiveness provisions of the Temporary PPP Loan Program regardless of what the CARES Act says.

**Irreparable Harm Faced By the JANI-KING® Franchise System**

67.     The SBA's refusal to list JANI-KING® Franchise Agreements in the Directory and to approve virtually all Temporary PPP Loan Program applications on behalf of members of

the JANI-KING® Franchise System threatens Plaintiffs and indeed the entire JANI-KING® Franchise system with irreparable harm.  In the case of at least some JANI-KING® Master Franchises and JANI-KING® Unit Franchisees, the potential consequences may include the very closures of their businesses and layoffs of employees that the CARES Act in general and the Temporary PPP Loan Program in particular were intended to avoid.

68.    Because of the COVID-19 pandemic, the risk that customers of the JANI-KING® Unit Franchisees will not pay their bills has already increased and is likely to increase even further the longer that many businesses are shut down.  Some types of customers (such as hospitals and grocery stores) are using more cleaning services now than previously.  Overall, however, demand for commercial cleaning services has decreased as many types of businesses— such as shopping malls, office buildings, movie theaters, bowling alleys, hotels, and sit-down restaurants, among others—have shut down.  Some businesses that have heretofore been open during the pandemic, such as car dealerships, may well shut down as sales plummet.  For many customers that typically use commercial cleaning services, the longer they are shut down, the more likely it is that the closures will become permanent and/or result in bankruptcy filings. Already, various members of the JANI-KING® Franchise System have seen a significant increase in the age of their accounts receivable.  Even businesses that remain open are finding it increasingly difficult to pay their bills.

69.    Without healthy JANI-KING® Unit Franchisees, JANI-KING® Master Franchises would be severely damaged and may not remain viable.  Without viable JANI-KING® Master Franchises, the very survival of Jani-King International and JKF is in jeopardy.

70.    Because the funds available under the Temporary PPP Loan Program are for a finite amount, each day that Plaintiffs and other members of the JANI-KING® Franchise System

27

are barred from participating in the Temporary PPP Loan Program on a non-discriminatory basis threatens them with irreparable harm.

## COUNT ONE

### (Violation of Administrative Procedure Act)

71.     Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

72.     The SBA's promulgation of 83 Fed. Reg. 49010 and the SOP directing SBA lenders not to accept PPP loan applications from small businesses such as JKF, Ohio Services and other JANI-KING® Master Franchises, and JANI-KING® Unit Franchisees because they are party to a franchise that is not listed in the Directory, constitute final agency action and violate the APA.  The APA provides that the action of each authority of the Government of the United States, including the SBA, is subject to judicial review except where there is a statutory prohibition on review or where agency action is committed to agency discretion by law.  In this case, there is no indication that Congress sought to prohibit or restrict judicial review of SBA actions.  Thus, a judicial review of the SBA's conduct is appropriate.

73.     Because it is clear and unambiguous as to which businesses are eligible for PPP loans under the CARES Act, including members of the JANI-KING® Franchise System, the SBA lacked authority to implement agency guidance precluding lenders from accepting loan applications from franchises not listed in the Directory.

74.     As a direct and proximate result of the SBA's adoption and implementation of the SOP and the SBA's improper administration of the Temporary PPP Loan Program, members of the JANI-KING® Franchise System (including Plaintiffs) have been and will be excluded from PPP loans and will be unable to participate in the Temporary PPP Loan Program that Congress intended for all small businesses—including franchised businesses.

## COUNT TWO

### (Declaratory Judgment)

75.     Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

76.     The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes this Court to "declare the rights and other legal relations of any interested party" to a case or controversy over which the Court has subject matter jurisdiction.

77.     As a result of the SBA's implementation of the SOP, its refusal to permit franchised businesses to apply for a PPP loan if they are not listed in the Directory, and its refusal to allow the JANI-KING® Franchise System to participate in the PPP Loan Program, a case or controversy exists between Plaintiffs and Defendants.

78.     Accordingly, Plaintiffs respectfully request this Court to: (i) declare the SOP mandating that the JANI-KING® Franchise System be listed in the Directory to apply for a PPP loan under the CARES Act to be void and unenforceable; (ii) enjoin the SBA from enforcing the SOP to the extent that it precludes the Plaintiffs from applying for a PPP loan; (iii) order the SBA to remove the restriction requiring franchises to be listed in the Directory for participation in the Section 7(a) SBA Loan Program and the Temporary PPP Loan Program and advise all SBA lenders to accept loan applications from franchises regardless of whether they are currently listed in the Directory; (iv) determine that JKF and Ohio Services are eligible to receive funding and loan forgiveness under the Temporary PPP Loan Program; and (v) grant other relief to redress the SBA's arbitrary, capricious, and punitive actions toward Plaintiffs, the JANI-KING® Franchise System, and other franchised businesses—particularly in the commercial cleaning industry.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.      Issue orders granting a temporary restraining order, preliminary, and permanent injunction enjoining the SBA, and all persons bound by Fed. R. Civ. P. 65(d)(2), from enforcing or using SBA SOP 50 10 5(K) or any other rule or regulation to refuse to accept a PPP loan application from a franchise that is not listed in the Directory;

B.      As part of those orders, order the SBA, including all persons bound by Fed. R. Civ. P. 65(d)(2), to notify, as expeditiously as possible, all SBA lending banks to immediately discontinue using and implementing SBA SOP 50 10 5(K) to bar SBA lenders from accepting PPP loan applications from a franchise that is not listed in the Directory as criteria for determining PPP loan application acceptability and eligibility;

C.      Also as part of those orders, order the SBA to determine that members of the JANI-KING® Franchise System with fewer than 500 employees are eligible borrowers under the PPP Loan Program;

D.      Enter an award of attorneys' fees and costs against the SBA and in favor of Plaintiffs; and

E.      Enter such other and further relief as this Court may find to be warranted in these circumstances.

Dated:  April 15, 2020

Respectfully submitted,

JANI-KING INTERNATIONAL, INC.;
JANI-KING FRANCHISING, INC.;
and OHIO SERVICES–CLE, LLC
dba JANI-KING OF CLEVELAND


By: */s/ Michael J. Lockerby*
                          Counsel

Michael J. Lockerby (D.C. Bar No. 502987)
Frank S. Murray, Jr. (D.C. Bar No. 1142916)
Jack G. Haake (D.C. Bar No. 1024798)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Sixth Floor
Washington, D.C. 20007-5143
(202) 672-5300
(202) 672-5399 (fax)

Peter L. Loh (*pro hac vice* to be filed)
FOLEY & LARDNER LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
(214) 999-3000
(214) 999-4667 (fax)

*Counsel for Plaintiffs,*
*Jani-King International, Inc.,*
*Jani-King Franchising, Inc., and*
*Ohio Services–CLE, LLC*
*dba Jani-King of Cleveland*

## **VERIFICATION OF JANI-KING INTERNATIONAL, INC.**

I Paul Meister, having read the foregoing Verified Complaint and, pursuant to 28 U.S.C. § 1746, verify under penalty of perjury under the laws of the United States of America that the facts stated therein that relate to Jani-King International, Inc. are true and correct to the best of my knowledge, information, and belief.

Date: April 15, 2020

Paul Meister
Chief Financial Officer
Jani-King International, Inc.

## <u>VERIFICATION OF JANI-KING FRANCHISING, INC.</u>

I, Sean Ayres, having read the foregoing Verified Complaint and, pursuant to 28 U.S.C. § 1746, verify under penalty of perjury under the laws of the United States of America that the facts stated therein that relate to Jani-King Franchising, Inc. are true and correct to the best of my knowledge, information, and belief.

Date: April 15, 2020

Sean Ayres
Executive Vice President
Jani-King Franchising, Inc.

33

**VERIFICATION OF OHIO SERVICES–CLE, LLC
D/B/A JANI-KING OF CLEVELAND**

I, Joseph S. Carollo, President of Ohio Services–CLE, LLC, having read the foregoing

Verified Complaint and, pursuant to 28 U.S.C. § 1746, verify under penalty of perjury under the

laws of the United States of America that the facts stated therein that relate to Ohio Services–

CLE, LLC are true and correct to the best of my knowledge, information, and belief.

Date: April 14, 2010

_____
Joseph S. Carollo
President of Ohio Services–CLE, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of April, 2020, I caused a copy of the foregoing

VERIFIED COMPLAINT to be sent by email and by U. S. mail and to be delivered by hand to

the following:

> Hon. Timothy J. Shea,
> United States Attorney for the District of Columbia
> United States Attorney's Office for the District of Columbia
> 555 Fourth Street, N.W.
> Washington, D.C. 20530
> Email: timothy.shea@usdoj.gov
>
> Hon. William P. Barr,
> Attorney General of the United States
> United States Department of Justice
> 950 Pennsylvania Avenue, N.W.
> Washington, D.C. 20530
> Email: attorney.general@usdoj.gov
>
> Christopher Pilkerton,
> General Counsel
> United States Small Business Administration
> 409 Third Street, S.W., Suite 7000
> Washington, D.C. 20024-3212
> Email: christopher.pilkerton@sba.gov

By: */s/ Michael J. Lockerby*
Counsel for Plaintiffs