**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANI-KING INTERNATIONAL, INC., *et al.*, | ) )  ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| UNITED STATES SMALL BUSINESS ADMINISTRATION, *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

No. 1:20-cv-00989 (TNM)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

Dated:  April 22, 2020

JOSEPH H. HUNT
Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director

ERIC WOMACK
Assistant Director

JAMES J. GILLIGAN
Special Litigation Counsel

INDRANEEL SUR
Trial Attorney

Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883
Washington, D.C. 20044

Telephone:  (202) 514-3358
E-mail:     james.gilligan@usdoj.gov

*Counsel for Defendant*

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

The Small Business Administration .................................................................... 3

Franchises That Qualify as "Small" Businesses Under SBA Affiliation Rules ......................... 5

Ineligible Business Types Under 13 C.F.R. § 120.110 .............................................. 6

The Coronavirus Aid, Relief, and Economic Stimulus (CARES) Act ........................................ 7

Plaintiffs and Their Claims ............................................................................ 9

LEGAL STANDARDS ............................................................................................. 11

ARGUMENT ........................................................................................................ 12

I.   PLAINTIFFS HAVE NOT ESTABLISHED THEIR STANDING TO SEEK THE
     RELIEF DEMANDED ......................................................................................... 12

II.  PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS.............................. 14

III. PLAINTIFFS HAVE NOT ADDUCED SUFFICIENT EVIDENCE OF IMMINENT
     IRREPARABLE HARM, OR OF THEIR STANDING .................................................. 18

IV.  A PRELIMINARY INJUNCTION WOULD BE CONTRARY TO THE PUBLIC
     INTEREST ..................................................................................................... 22

CONCLUSION ...................................................................................................... 24

**INTRODUCTION**

The Small Business Administration ("SBA") has repeatedly advised the Jani-King organization, since 2015, that its franchisees do not qualify for SBA general small-business loans because of Jani-King's "passive income" model of doing business, not because its franchisees' affiliation with the larger Jani-King organization disqualifies them as "small" businesses who may receive agency-backed loans.  After SBA again made that point to Jani-King when it sought to make available for its franchises loans under the Paycheck Protection Program ("PPP") created by the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), Plaintiffs brought this suit.  The essential premise of Plaintiffs' application for emergency relief is their contention that the CARES Act made SBA-backed loans under the PPP available to *any* applicant that "employs not more than . . . 500 employees," so long as it can make a few straightforward certifications about its employees or independent contractors.  According to Plaintiffs, the statute directed SBA to cast aside pre-existing rules followed when making small-business loans, including the particular rules, and related procedures, that Plaintiffs here seek to invalidate:  SBA regulations determining when franchisees must be deemed affiliates of their franchisors for purposes of determining whether they qualify as "small" businesses to which SBA financial assistance is available, and SBA's maintenance of a comprehensive Franchise Directory for use by lenders as a means of identifying which franchises the SBA has determined not only meets its affiliation rules, but also are otherwise eligible to apply for, SBA-guaranteed loans.

But Plaintiffs' notion that the CARES Act, enacted to address the economic harm resulting from the COVID-19 pandemic, cast aside the SBA's rules, regulations, and procedures wholesale, including its franchise affiliation rules, is incorrect.  Indeed, it is roundly refuted by

1

the statute's plain language.  Furthermore, even apart from their failure to take pertinent statutory provisions into account, Plaintiffs have not provided the minimum evidence needed to support the extraordinary remedies they seek.  Their application for a temporary restraining order and a preliminary injunction fails, in four respects:

*First*, Plaintiffs have not established the traceability and redressability elements of Article III standing, warranting dismissal of their claims outright for lack of subject-matter jurisdiction. Their sole declarant attests that the SBA denied Jani-King's requests for access to agency-backed loans, including PPP covered loans, *not* because of the agency's franchise affiliation rules, but because Jani-King's business operates on a "passive income" model, a type of business that is categorically *ineligible* for SBA small-business loans irrespective of an applicant's size, or the SBA's *affiliation* rules.  Jani-King's passive-income failure explains its absence from the Directory.  The requested relief will not help Plaintiffs, therefore, because even if the SBA's affiliation rules were to be set aside, Plaintiffs' passive-income problem would remain.

*Second*, Plaintiffs have no likelihood of success on the merits, because the plain statutory language cannot be reconciled with the essential premise of their motion, that the CARES Act compels SBA to deem PPP loans available to Jani-King franchises.  The statute directs the SBA to make PPP loans under the same terms, conditions, and procedures applied in its pre-existing small-business loan program, except as the CARES Act itself provides otherwise.  And among those express exceptions is a provision instructing the SBA to waive its affiliation rules only for those franchises to which SBA has already assigned "franchise identification codes"—which are franchises SBA has placed on the Directory because the SBA has determined that they meet all of the agency's requirements for financial assistance.  Conversely, the statute contemplates application of the affiliation rules to franchises to which SBA has not assigned a code, and

2

continued use of the Directory as an administrative tool, so that lenders need only check the Directory to tell if SBA assistance is available to a franchise.

*Third*, Plaintiffs fail to present proof, rather than speculation, that they face irreparable harm from the challenged agency conduct. All that Plaintiffs offer are conclusory and unsubstantiated assertions of possible economic harm they might suffer, predicated on equally speculative harms to downstream franchisees that are not before this Court.

*Fourth*, given that the funds underlying SBA-backed loans are limited, the public interest weighs in favor of adherence to the CARES Act's terms, rather than diverting funds to Plaintiffs from the small-business firms that the PPP is intended to aid.

In sum, the Court should reject Plaintiffs' request to interject itself in the SBA's administration of the PPP, just as it did only yesterday in *Am. Ass'n of Political Consultants v. U.S. SBA*, No. 20-cv-970 (ECF 21) (D.D.C. Apr. 21, 2020) (denying TRO and PI motions) ("*AAPC*") (Exhibit **1**, hereto). As in *AAPC*, Plaintiffs' request for preliminary injunctive relief in this case should be denied.

## BACKGROUND

### The Small Business Administration

The declared policy of the Government under the Small Business Act, 15 U.S.C. § 631 *et seq.*, is to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns," and thereby to preserve the free enterprise system "essential" to national economic well-being and security. 15 U.S.C. § 631(a). To promote that important national objective, Congress created the Small Business Administration ("SBA"), under the management of a single Administrator, *id*. § 633(a), (b)(1), who is given "extraordinarily broad powers" under section 7(a) of the Act, 15 U.S.C. § 636(a), to provide a wide variety of technical, managerial, and

financial assistance to small-business concerns. *See SBA v. McClellan*, 364 U.S. 446, 447 (1960); *see generally* 15 U.S.C. § 636(a) (describing numerous varieties of general small-business loans the Administrator is "authorized" and "empowered" to make); 13 C.F.R. § 120.1. In performing those functions, the Administrator is further empowered to "make such rules and regulations as [she] deems necessary to carry out the authority vested in [her]," and in addition to "take any and all actions … [that] [she] determines … are necessary or desirable in making … loans." *Id.* § 634(b)(6), (7).

Under the terms of the Act, SBA financial assistance to a small business under section 7(a) may take the form of a direct loan, an immediate participation (joint) loan with a lender, or a deferred participation (guaranteed) loan initiated by a lender but a portion of which the SBA will purchase from the lender in the event of a borrower default. 13 C.F.R. § 120.2(a); *see Valley Nat'l Bank v. Abdnor*, 918 F.2d 128, 129 (10th Cir. 1990); *California Pac. Bank v. SBA*, 557 F.2d 218, 219 (9th Cir. 1977). In practice, however, the SBA ordinarily guarantees loans made by private lenders rather than disbursing funds directly to borrowers. *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 719 (1979). That pares "risk for lenders … mak[ing] it easier for them to access capital," and "mak[ing] it easier for small business to get loans." *See https://www.sba.gov/funding-programs/loans*.

Ordinarily, to qualify for an SBA general business loan an applicant must be an operating business organized for profit that is located in the United States, 13 C.F.R. § 120.100(a)-(c); meet the size standards for a "small" business set forth under the statute and SBA rules (usually stated in terms of number of employees, or average annual receipts), *see* 15 U.S.C. § 632(a)(2); 13 C.F.R. § 120.100(d); 13 C.F.R. Part 121; and demonstrate that the desired credit is not available elsewhere on reasonable terms, 15 U.S.C. § 632(h); 13 C.F.R. §§ 120.100(e), 120.101.

In addition, an applicant must meet SBA standards of creditworthiness, *see* 13 C.F.R. 121.50, and comply with all other Loan Program Requirements.

### Franchises That Qualify as "Small" Businesses Under SBA Affiliation Rules

SBA is "charged with the responsibility for making determinations about whether a business constitutes a 'small-business concern,'" thus qualifying for the agency's "financial assistance." *See Dani Enters., Inc. v. U.S. SBA*, 757 F. Supp. 99, 100 (D.D.C. 1991) (citing 15 U.S.C. § 632(a)). "The Administrator of SBA is responsible for making detailed definitions of 'small business concerns' and making whatever rules are necessary to carry out the SBA's determinations." *Id.* These include affiliation rules that determine when the affiliation between an applicant and another business entity is so controlling that the two are properly regarded as a single, larger entity (in terms of number of employees, or revenues). *See* 13 C.F.R. Part 121.

At issue here is the agency's response to the situation where the affiliation between a franchisor and a franchisee may not only include a unified, trademarked brand name (such as a hotel or restaurant chain), but may, depending on case-specific circumstances, reach the point where the two must be considered a single business concern—one that is no longer "small" enough for the agency's financial assistance. *Cf.* Verified Complaint ("Compl.") ¶ 27 (ECF 1) (describing hotels and restaurants as franchisee-franchisor examples). Because of the fact-intensive nature of the inquiry, SBA has adopted rules and procedures for streamlining the process by which lenders can ascertain which franchisees qualify as "small" and which do not. *See* 13 C.F.R. § 121.301(f)(5) (SBA regulation on "[a]ffiliation based on franchise agreements").

In October 2017, aiming to "improve consistency and certainty" for lenders, franchisees, and agency personnel (among others), SBA publicly announced that it was revising its franchise loan review process effective January 1, 2018, through Standard Operating Procedure 50-10-5(J).

*See* SBA Information Notice, Control No. 5000-17009, at 1 (Oct. 13, 2017) (Exhibit **2**, hereto).

Its principal achievement was to eliminate the need for lenders to "review franchise or other

brand documentation for affiliation or eligibility." *Id.* Instead, lenders could rely on a single

source, the SBA Franchise Directory (the "Directory") maintained on the SBA website. If a loan

applicant's "brand meets the [Federal Trade Commission] definition of a franchise," *see* 16

C.F.R. § 436.1(h), *and* the applicant's business satisfies the SBA's *other* eligibility requirements,

then the franchise is placed on the Directory, and that franchise "must be on the Directory" for

the franchisee "to obtain SBA financing." *See id.* "The SBA Franchise Directory," the agency

noted, "will include new *SBA Franchise Identifier Codes* for each brand." *Id.* at 2 n.2.

In a proposed rule later in 2018, the SBA again sought to clarify that its regulatory

definition of "franchise" for purposes of its affiliation rules would take the meaning given by the

FTC. And the SBA also described the functions and procedural requirements of its Directory.

*See* Proposed Rule, 83 Fed. Reg. 49001, 49010 (Sept. 28, 2018). The SBA explained in that

preamble that the Directory would contain, among other things, the SBA "Franchise Identifier

Code." *See id.*

### Ineligible Business Types Under 13 C.F.R. § 120.110

Separate from the question whether a franchisee must be considered an affiliate of its

franchisor for purposes of making SBA size determinations (13 C.F.R. § 121.301(f)(5)), is the

question whether the business is ineligible for SBA general loans, regardless of size or

affiliation, because of the nature of its activities or its structure. The SBA, in the exercise of its

rulemaking authority under the Small Business Act, has determined that certain types of

businesses should be deemed categorically ineligible for general small-business loans, such as,

for example, non-profit businesses, other lenders, businesses in which the lender owns an equity

6

interest, and businesses that have previously defaulted on federal or federally assisted loans

resulting in a loss to the Government.  The types of business concerns deemed ineligible for SBA

section 7(a) loans (18 in all) are listed at 13 C.F.R. § 120.110, and include, as relevant here,

"[p]assive businesses owned by developers and landlords that do not actively use or occupy the

assets acquired or improved with the loan proceeds (except Eligible Passive Companies under

§ 120.111)."  13 C.F.R. § 120.110(c).  In other words, the SBA conserves its limited federal

funds for assistance that supports "active[] use" of assets; for example, when an applicant is in

the business of maintaining and renting space to other businesses, or when its business model

resembles such a firm, the applicant is not eligible for an SBA guaranty.

### The Coronavirus Aid, Relief, and Economic Stimulus (CARES) Act

On March 27, 2020, President Trump signed into law the CARES Act, enacted by

Congress to provide an unprecedented package of emergency economic assistance and other

support to help individuals, families, businesses, and health care providers cope with the

enormous economic and public health crises triggered by the worldwide coronavirus (COVID-

19) pandemic.  *See AAPC* (slip op.), at 2-3; *see also, e.g.*, 166 Cong. Rec. H1732-01, 1820-24

(Mar. 27, 2020); (statements of Reps. Neal, Davis, and Mitchell); 166 Cong. Rec. S2059-01

(Mar. 25, 2020) (statement of Sen. Schumer); 166 Cong. Rec. S1862-02 (Mar. 20, 2020)

(statement of Sen. McConnell).  Among the numerous measures taken by the CARES Act to

address the COVID-19 crisis, of principal concern here is the Paycheck Protection Program

("PPP"), CARES Act. § 1102, enacted to extend relief to small businesses nationwide

experiencing economic hardship as a result of the public health measures being taken to

minimize the public's exposure to the COVID-19 virus.  *See generally* Interim Final Rule,

Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811 (Apr. 15, 2020).

In particular, section 1102(a)(2) of the CARES Act adds a new paragraph (36) to section 7(a) of the Small Business Act, 15 U.S.C. § 636(a)(36), stating:  "*[e]xcept as otherwise provided in this paragraph*, the [SBA] may guarantee [PPP] covered loans"—not make loans directly, however—"under the same terms, conditions, and processes as a loan made under this subsection," *i.e.*, section 7(a).  *Id.* § 636(a)(36)(B) (emphasis added).  The PPP then sets forth in extensive detail the precise ways in which PPP covered loans *differ* from other section 7(a) loans. *Id.* § 636(a)(36)(D)-(R).

Among these differences, the PPP authorizes the SBA to make covered loans to various non-profit organizations, independent contractors, and self-employed individuals, as well as to small business concerns, *id.* § 636(a)(36)(D)(i), (ii); and relaxes size limitations to allow businesses with as many as 500 employees (or more, depending on the industry in which they operate) to receive assistance, *id.* § 636(a)(36)(D)(i)(I).

Most importantly here, the PPP selectively waives certain of the SBA's affiliation rules used to make small business "size" determinations, *id.* § 636(a)(36)(D)(iv); *see* 13 C.F.R. Part 121.  In particular, Subparagraph D (captioned "Increased eligibility for certain small businesses and organizations") contains a Fourth Clause (captioned "Waiver of affiliation rules"), under which the SBA's affiliation regulations "are waived with respect to eligibility for a covered loan for," among other things, "any business concern operating as a franchise that is *assigned a franchise identifier code* by" SBA.  15 U.S.C. § 636(a)(36)(D)(iv)(II) (emphasis added).

Congress initially authorized the SBA to guarantee up to $349 billion-worth of loans to small businesses under this new program.  CARES Act § 1102(b)(1).

**Plaintiffs and Their Claims**

Plaintiffs are (1) Jani-King International, a Texas corporation that allegedly operates "the largest commercial cleaning franchise system in the world," under its registered JANI-KING trade name; (2) Jani-King Franchising, Inc., which licenses use of the JANI-KING trademark and other intellectual property owned by Jani-King International to 87 "master" franchises nationwide, under a standard JANI-KING Master Franchise Agreement; and (3) Ohio Services-CLE, LLC (doing business as Jani-King of Cleveland), one of the Jani-King system's master franchises.  Compl. ¶¶ 7-8, 12-14, 25-26.  Within their exclusive territories Jani-King master franchises themselves act as franchisors of "independently owned" commercial cleaning services known as Jani-King unit franchises, under a standard Jani-King Unit Franchise Agreement.  Compl. ¶¶ 7, 26.  According to Plaintiffs, there are approximately 5,600 Jani-King unit franchises nationwide.  Compl. ¶ 8.  (None is a plaintiff in this case.)  Plaintiffs allege that Jani-King Franchising and each of the 87 master franchises and 5,600 unit franchises has fewer than 500 employees, *id.*, the maximum generally allowed to qualify as a small business under the PPP, 15 U.S.C. § 636(a)(36) (D)(i).  Plaintiffs deny that the franchise agreements among Jani-King Franchising, Jani-King's master franchises, and its unit franchises, establish an affiliate relationship among them.  Compl. ¶ 33.

In 2015, SBA rejected an effort by Jani-King to qualify for listing in the Franchise Directory, and "[s]ubsequent efforts by JKF" to be listed also "were unsuccessful."  Compl. ¶ 57.  Most recently, "the SBA's Chief Franchise Counsel" allegedly summarized on an April 7, 2020 conference call the agency's view that "the business model of commercial cleaning franchises generally, specifically including the JANI-KING® Franchise System," is "ineligible . . . for assistance" under the PPP.  Compl. ¶ 63.  The next day, the "SBA's Chief Franchise Counsel

notified [an] individual" who had made a listing request on behalf of "the JANI-KING® D.C.

Master Franchise" that it would not be listed and that "its JANI-KING® Unit Franchisees were

ineligible for loans under the Temporary PPP Loan Program."  Compl. ¶ 65.

　　　　Plaintiffs' declarant in support of their application for preliminary relief, Joseph S.

Carollo, President of Ohio Services-CLE, explains the reason for SBA's determination of Jani-

King's ineligibility.  Specifically, he states that he "received word" on April 8, 2020, that the

ground for SBA's conclusion that Jani-King franchisees could not receive PPP loans was that

"the SBA considers JANI-KING® master franchises to be 'passive' operations."  Decl. of Joseph

S. Carollo ("Carollo Decl. ") ¶ 15 (ECF 6-3).  As noted above, "passive" business operations are

categorically ineligible for SBA general-business loans, under 13 C.FR. § 120.110(c), regardless

of their size or affiliation.

　　　　Plaintiffs allege that "[b]oth before and after passage of the CARES Act, the SBA has

refused to include in the [SBA Franchise] Directory any franchise agreement to which any

member of the JANI-KING® Franchise System is a party."  Compl. ¶ 9.  The Complaint alleges

that the SBA's refusal is predicated on an allegedly incorrect determination that the terms of

Jani-King's standard master and unit franchise agreements render Jani-King Franchising, the

Jani-King master franchises, and the Jani-King unit franchises all "affiliates" of one another.

According to Plaintiffs, SBA has erred in viewing them "as the equivalent of a single entity" that

employs more than the 500 employees, which cannot qualify as a "small business" under the

PPP.  *See* Compl. ¶ 9.  As a result, the SBA allegedly has refused, "[b]y and large, . . . to

accept—much less approve—PPP loan applications submitted" by Jani-King master franchises

(including plaintiff Ohio Services-CLE) and Jani-King unit franchises.  Compl. ¶ 10.

Plaintiffs maintain that the SBA's actions violate the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*., because the SBA purportedly lacks authority under the CARES Act to "preclud[e] lenders from accepting loan applications from franchises not listed in the Directory." Compl. (Count One), ¶¶ 72-73.  Plaintiffs ask for various forms of relief, including a declaration that SOP 50-10-5(K) (excerpted in part as Exhibit **3** hereto), which Plaintiff allege "mandate[es] that the JANI-KING® Franchise System be listed in the Directory to apply for a PPP loan," is void and unenforceable, and an injunction prohibiting the "the SBA from enforcing the SOP to the extent that it precludes the Plaintiffs from applying for a PPP loan[.]"  Compl. (Count Two) ¶ 78.

## LEGAL STANDARDS

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right," *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008), and "may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.  *Id.* at 20.  The last two factors "merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The "first and most important factor" is whether the moving party has "established a likelihood of success on the merits."  *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014).  "When a plaintiff has not shown a likelihood of success on the merits," the court need not "consider the other factors."  *Greater New Orleans Fair Hous. Action Ctr. v. HUD*, 639 F.3d 1078, 1088 (D.C. Cir. 2011).  "[T]he 'merits' on which [a] plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction," which

therefore requires that the plaintiff demonstrate a "substantial likelihood of standing." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Commerce*, 928 F.3d 95, 104 (D.C. Cir. 2019).

Furthermore, speculative or possible injury cannot suffice to support a preliminary injunction. Rather, the movant must establish that irreparable harm is "*likely* in the absence of an injunction." *Winter*, 555 U.S at 22.[1]

For the reasons that follow, Plaintiffs have not carried these heavy burdens.

## ARGUMENT

### I.   PLAINTIFFS HAVE NOT ESTABLISHED THEIR STANDING TO SEEK THE RELIEF DEMANDED

To begin with, the Court should dismiss this case for lack of subject-matter jurisdiction, because Plaintiffs have not established their Article III standing. In particular, they have not established a causal connection between their purported injury—which they attribute to the SBA's alleged misapplication of 13 C.F.R. § 121.301(f)(5), the SBA regulation on "[a]ffiliation based on franchise agreements"—and the admitted fact that the SBA rejected Plaintiffs' request for PPP assistance because "the SBA considers JANI-KING® master franchises to be 'passive' operations"), *i.e.*, in violation of the agency's rule against passive-income arrangements, at 13

---

[1] In *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011), the Court of Appeals noted that *Winter* called into question the "sliding-scale approach" to consideration of the preliminary injunction factors that had been the law of this Circuit. The Court read "*Winter* at least to suggest if not to hold that a likelihood of success is an independent, free-standing requirement for a preliminary injunction" such that a "movant cannot obtain a preliminary injunction without showing both a likelihood of success and a likelihood of irreparable harm." *Id.* at 393; *see BHM Healthcare Sols., Inc. v. URAC, Inc.*, 320 F. Supp. 3d 1, 7 (D.D.C. 2018). Noting a split among the circuits on the interpretation of *Winter*, the Court of Appeals held that it did not need to resolve the question because the movant in *Sherley* failed to establish an entitlement to a preliminary injunction under the "less demanding sliding-scale" approach. *Id.* This Court need not address this issue here, as Plaintiffs' claims for relief fail under either standard.

C.F.R. § 120.110(c).  *Compare* Compl. ¶ 9 (regarding affiliation under franchise rule) *with* Carollo Decl. ¶ 15 (regarding passive income rule).

Plaintiffs fail to meet the Article III requirements of traceability and redressability (even assuming, without deciding, that Plaintiffs have alleged an injury-in-fact).  *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992); *Allen v. Wright*, 468 U.S. 737, 751 (1984).  Plaintiffs have alleged that SBA erred in classifying all Jani-King franchisees are "affiliates" and treating them accordingly as a single, very large firm that could not qualify for PPP financial assistance.  *See, e.g.*, Memo. ISO Preliminary Inj. 7 (ECF 6-2) ("Mem.") 7 (citing Compl. ¶¶ 9, 33).  But Plaintiffs' alleged injury is not traceable to the challenged SBA policies concerning franchise affiliation, or use of the Directory as a related administrative tool.  Rather, according to Plaintiffs' own declarant, Jani-King's franchisees were deemed ineligible for PPP loans because of SBA's conclusion that the Jani-King business model involves impermissible "passive" income, violating the eligibility requirement in 13 C.F.R. § 120.110(c).  *See* Carollo Decl. ¶ 15.  Plaintiffs also have a corresponding and insurmountable redressability problem:  They seek judicial relief invalidating SBA's purported "position that a franchised business must have its franchise agreement listed in the Directory to apply for a PPP loan" (Mem. 12), but even if a court order were to require the agency to ignore the Directory or SBA's *affiliation* rules, SBA would not be obligated to deem PPP loans available to Plaintiffs, because Plaintiffs' business structure would remain contrary to the *eligibility* rule against "passive" income arrangements.

The glaring discrepancy between Plaintiffs' challenge and Mr. Carollo's statement regarding the basis for the agency's rejection of Plaintiffs' requests to participate in the PPP is not a technicality—it reveals a failure to establish standing at the threshold.

## II.     PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

A preliminary injunction must also be denied here because Plaintiffs fail to satisfy the

"first and most important" requirement of that relief:  Their statutory bid for a dramatic

expansion of the exceptions to SBA's ordinary rules and procedures cannot be reconciled with

the plain language of the CARES Act, and therefore has no prospect of success on the merits.

*See Aamer*, 742 F.3d at 1038.

Plaintiffs contend that SBA "deviate[d] from the plain language of the CARES Act"

(Mem. 11) and acted "[i]n defiance of [its] plain language" (Mem. 5), when the agency adhered,

in administering the PPP, to its pre-existing requirement that financial assistance is available

only to franchises in the Directory (which are all the franchises that, the agency has determined,

satisfy affiliation rules *and* other eligibility rules).  The CARES Act, according to Plaintiffs,

makes eligible *any* applicant that "employs not more than . . . 500 employees" and that can make

the specified certifications as to ongoing business operations, payment of salaries and payroll

taxes, or payment of independent contractors—even those, Plaintiffs contend, that are franchises

not listed in the Directory.  Mem. 3, 11 (quoting § 636(a)(36)(D)(i)(I)).  In other words, Plaintiffs

insist that the "plain language of the CARES Act" requires that PPP loans be made available to

them, even though they do not comply with the "requirement of a Directory listing" (Mem. 6).

But that contention is meritless, because it is Plaintiffs who largely ignore or relegate to a

footnote (Mem. 11 n.16) the plain language of the CARES Act.

The CARES Act does not make an SBA loan available to every applicant that "employs

not more than . . . 500 employees."  The provision cited by Plaintiffs, 15 U.S.C.

636(a)(36)(D)(i), simply relaxes the applicant size limitation for PPP loans.  It does not itself

alter the manner in which the size determination is made under SBA rules.  To the contrary, the

statute provides that "*[e]xcept as otherwise provided in this paragraph*, the [SBA] may

guarantee [PPP] covered loans . . . under the same terms, conditions, and processes as a loan

made under this subsection," *i.e.*, section 7(a) of the Small Business Act.  *Id*. § 636(a)(36)(B)

(emphasis added).  The clear import of that subparagraph is to allow, through the permissive

"may," the SBA to apply its usual terms and conditions and follow its ordinary processes for

loans issued under the PPP just as for those under section 7(a), "*[e]xcept*" as specifically

provided in the CARES Act itself.

That subparagraph logically directs attention to the exceptions specified, one of which

holds particular force here:  § 636(a)(36)(D)(iv), which waives certain SBA affiliation rules used

to make small business "size" determinations under 13 C.F.R. Part 121.  In particular, under

Clause (D)(iv), the affiliation regulations "are waived with respect to eligibility for a covered

loan for," among other things, "any business concern operating as a franchise that is *assigned a*

*franchise identifier code* by" SBA.  § 636(a)(36)(D)(iv)(II) (emphasis added).  The import is

clear.  Clause (D)(iv) expressly instructs the agency to waive its affiliation rules when facing

franchises that have been assigned franchise identifier codes.  But the affiliation rules are *not*

waived, therefore, when SBA faces franchises that have not been assigned identifier codes.

The statute thereby sustains continued agency reliance on the SBA Franchise Directory,

which is the location of the SBA's identifier codes.  Even Plaintiffs acknowledge that point.  In a

tersely worded footnote (Mem. 11 n.16), Plaintiffs state that the statute's "sole reference to the

Directory is that it automatically waives affiliation rules for a loan under the Temporary PPP

Loan Program to 'any business concern operating as a franchise that is assigned a franchise

identifier code' by the SBA."  *Accord* Compl. ¶¶ 5, 48.   Plaintiffs tellingly do not provide any

explanation of their concession that the statutory phrase "franchise identifier code" is a reference to the Directory.

To reiterate:  15 U.S.C. § 636(a)(36)(B) permits SBA to rely on its pre-existing terms, conditions, and processes when issuing loan guarantees under the PPP, "[e]xcept" as statutorily specified.  One of those exceptions, § 636(a)(36)(D)(iv)(II), waives SBA affiliation rules for franchises with "franchise identifier code[s]"—which the agency told the public as long ago as October 2017 would be found in the Directory.  *See* Control No. 5000-17009, at 2 n.2.  The statute makes no such exception for franchises that do not qualify for a code (which are franchises that have not met *all* of SBA's requirements, and so are not included in the Directory). The plain language of the CARES Act thus preserves the SBA's authority to apply its affiliation and other rules to franchises to which SBA has *not* assigned codes.  In that way, the statute contemplates that the SBA will continue to use the Directory as a means of communicating to lenders which franchises may apply for loans, and which may not.

Interpreting the CARES Act to permit continued application of SBA's affiliation rules to franchises not assigned a code, and SBA's use of the Directory as an administrative tool in the loan application process, correctly hews to the statutory text by properly reading related provisions together rather than in isolation.  *See, e.g.*, *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004).  Such an interpretation also respects the "familiar principle" that, when the legislature establishes several express exceptions to a general rule, no other exceptions can properly be implied.  *See, e.g.*, *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517 (1992) (citing the "familiar principle of *expressio unius est exclusio alterius*," which cautions that, when Congress enacts a provision explicitly defining the reach of a statute, it implies that matters not specifically defined are not within the statute's reach); *TRW Inc. v. Andrews*, 534 U.S. 19, 28

16

(2001) ("Congress implicitly excluded a general discovery rule by explicitly including a more limited one.").

Plaintiffs would disregard that principle: They want this Court to infer an exception barring the application of SBA affiliation rules in circumstances other than those in which Congress expressly instructed the SBA to waive those rules. Even as a general matter, under the *expressio unius* canon, a court should be careful to avoid such an unwritten exception. Here, where Congress has stated that PPP covered loans should be made under the same terms, conditions, and procedures as section 7(a) loans except as the CARES Act expressly provides, no such exception can be inferred without disregarding the plain meaning of the statute.

In short, because the statute, read as a whole, confers on SBA discretion to apply its affiliation rules to franchises not previously assigned a code, and hence to rely on its Directory in administering PPP loans, Plaintiffs have no likelihood of success on the merits, and on that ground, first and foremost, their motion should be denied.

In addition to the fatal shortcomings of Plaintiffs' statutory contention, Plaintiffs are also unlikely to succeed on the merits because Congress has restricted the availability of injunctive relief against the SBA. That statute provides that the SBA may

> sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; *but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the [agency] or [its] property[.]*

15 U.S.C. § 634(b)(1) (emphasis added). Numerous courts have interpreted this statute to "preclude [ ] injunctive or any similar relief against the SBA itself. *See, e.g.*, *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1290 (5th Cir.1994) ("The Small Business Act ... precludes injunctive relief against the SBA."); *Driskill, Inc. v. Abdnor*, 901 F.2d 383, 386 (4th Cir.1990) (explaining that "courts have no jurisdiction to award injunctive relief against the SBA"); *Mar v. Kleppe*, 520

F.2d 867, 869 (10th Cir.1975); *Romeo v. United States*, 462 F.2d 1036, 1038 (5th Cir.1972);

*Little v. United States*, 489 F. Supp. 1012, 1016 (C.D.Ill.1980).  *But see Digital Mgmt., Inc. v.*

*Contreras-Sweet*, 2015 WL 10458834, at *3 (D.D.C. Dec. 11, 2015); Wright & Miller, 14 Fed.

Prac. & Proc. Juris. § 3656 (4th ed.).  Thus, even if a complete reading of the statute could

somehow sustain Plaintiffs' interpretation, preliminary injunctive relief of any kind against

Defendants would remain barred by the Small Business Act.  *Cf. AAPC* (slip op.), at 11.

## III.   PLAINTIFFS HAVE NOT ADDUCED SUFFICIENT EVIDENCE OF IMMINENT IRREPARABLE HARM, OR OF THEIR STANDING

Plaintiffs' request for a preliminary injunction must also be denied because none of the

three Plaintiffs, Jani-King International, Jani-King Franchising, or Ohio Services-CLE, has

presented sufficient evidence to carry their burden of demonstrating irreparable harm.  *See AAPC*

(slip op.), at 11-12 (ruling for SBA on irreparable harm).

To obtain the extraordinary and drastic remedy of preliminary injunctive relief, a plaintiff

must "establish an injury that is 'both certain and great . . . actual and not theoretical.'"  *John*

*Doe Co. v. Consumer Fin'l Protection Bur.*, 849 F.3d 1129, 1134 (D.C. Cir. 2017) (quoting

*Wisc. Gas. Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  To meet this demanding standard,

"[t]he party seeking relief must show that the complained-of injury is so imminent that there is a

clear and present need for equitable relief."  *Dallas Safari Club v. Bernhardt*, --- F. Supp. 3d ---,

2020 WL 1809181, at *4 (D.D.C. Apr. 9, 2020) (citing *Wisc. Gas Co.*, 758 F.2d at 674).  That

requirement places the burden on the movant to substantiate its claims of irreparable injury with

"proof."  *Id.*  Neither "bare allegations of harm," *id.*, nor "unsubstantiated and conclusory

assertions," *John Doe Co.*, 849 F.3d at 1134, are enough.  The movant "must submit competent

evidence into the record that would permit the Court to assess whether [the movant], in fact,

faces irreparable harm" if an injunction is not issued.  *Guttenberg v. Emery*, 26 F. Supp. 3d 88,

102 (D.D.C. 2014) (cleaned up) (citing *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C.

2008)); *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21 (D.D.C. 2013) (same).

Plaintiffs' assertions of irreparable harm rely on a pyramid theory of injury in which the

"potential" economic consequences of the COVID-19 pandemic to Jani-King unit franchises

supposedly would redound to the detriment of Jani-King master franchises, and in turn to Jani-

King Franchising and Jani-King International.  Mem. 14-15.  The evidence Plaintiffs offer as

proof of that theory fails at every level, however, to support it.

Starting with the unit franchises, Plaintiffs assert that because of the COVID-19

pandemic, the "risk" that some customers of Jani-King unit franchises may not pay their bills has

"increased," *id.* at 14-15 (citing Compl. ¶ 68), and that the "potential consequences" "*may*

include the very closures of their businesses," *id.* at 14 (citing *id*. ¶ 67) (emphasis added).  Not

only is that claim of injury speculative and uncertain on its face—making it categorically

insufficient to warrant preliminary relief, *see Winter*, 555 U.S. at 22; *John Doe. Co.*, 849 F.3d at

1134—but it is also unsupported by competent evidence.  Plaintiffs rely on Mr. Carollo's

declaration, in which he attests that "many" of Ohio Services' unit franchises "have expressed

concern to [him] about their viability" in varying degrees.  Carollo Decl. ¶ 10.  But he offers no

details that would permit the Court to assess for itself whether the economic impact of the

COVID-19 pandemic on any Jani-King franchises is of such a nature and magnitude as to

imminently threaten their viability.  *See Guttenberg*, 26 F. Supp. 3d at 102; *Aviles-Wynkoop*, 978

F. Supp. 2d at 21.  In any event, because none of the Plaintiffs to this action is a Jani-King unit

franchise, these statements of "concern" are of no consequence.  No injury potentially suffered

by Jani-King unit franchises if they are denied PPP loans would itself be a basis for awarding

injunctive relief to the plaintiffs before the Court, who are, to repeat, Jani-King International,

Jani-King Franchising, and Ohio Services-CLE.

Moving up one level,  Plaintiffs similarly argue that the "potential consequences"

confronted by Jani-King master franchises, such as Ohio Services-CLE, "may include" closures

of their businesses.  Mem. 14.  On its face this claim of injury is just as speculative and

uncertain, and therefore as insufficient, *see Winter*, 555 U.S. at 22; *John Doe. Co.*, 849 F.3d at

1134, as the assertions of injury to Jani-King's unit franchises.   Compounding this defect, the

speculative claims of injury to the master franchises rest on the speculative claims of injury to

the unit franchises.  Plaintiffs offer no evidence that the economic injury to Jani-King unit

franchises is so severe, or that the number of severely injured unit franchises is so great, as to

immediately threaten the viability of any Jani-King master franchises, including Ohio Services-

CLE.  Mr. Carollo attests that "Ohio Services has seen a significant increase in the age of its

accounts receivable," and that "[w]ithout healthy unit franchises to generate revenue, Ohio

Services cannot remain in business very long."  Carollo Decl. ¶¶ 8, 10.  That may be true in the

abstract, but Mr. Carollo offers no details that would allow the Court to conclude that either the

assertedly "significant" but unspecified increase in the age of Ohio Services' accounts

receivable, or any deterioration in the health of its unit franchises, is of such magnitude as to

present an imminent threat to its ability to remain in business.  *Guttenberg*, 26 F. Supp. 3d at

102; *Aviles-Wynkoop*, 978 F. Supp. 2d at 21.

Reaching the apex of the pyramid, Plaintiffs maintain that without "viable" unit and

master franchises, "the very survival" of Plaintiffs Jani-King International and Jani-King

Franchising would be "in jeopardy."  Mem. 15 (citing Compl. ¶ 69).  That again is an entirely

speculative assertion of injury whose uncertainty is multiplied by not just one, but two layers of

unsubstantiated claims concerning unspecified injuries to unknown numbers of unidentified Jani-King unit and master franchises.  *See Dallas Safari Club*, 2020 WL 1809181, at *7 (citing *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 51-52 (D.D.C. 2011)).

Furthermore, Plaintiffs fail to make the requisite showing of causation, furnishing no actual proof "that the alleged harm will directly result from the action which the movant seeks to enjoin."  *Dallas Safari Club*, 2020 WL 1809181,  at *4 (quoting *Wisc. Gas Co.*, 758 F.2d at 674).  Plaintiffs presuppose that if SBA were enjoined from prohibiting PPP loans to franchises that are not listed in the Directory, then the Jani-King unit and master franchises that have been denied PPP loans would receive them.  They have not even alleged, however, much less submitted proof of any kind, that the lenders to whom these Jani-King franchises have applied, or wish to apply, for PPP loans are ready, willing, and able to issue these loans.  Moreover, as Mr. Carollo's own statement clarified (Carollo Decl. ¶ 15), and as explained above in regard to Plaintiffs' (lack of) standing, the ground on which SBA determined that Jani-King franchises could not obtain PPP loans was their reliance on a "passive income" arrangement, and there is no reason to believe that enjoining agency reliance on the Directory (or the underlying franchise affiliation rules on which it is based) could possibly change that determination.   Hence Plaintiffs also cannot establish that the various harms they anticipate are the direct result of the challenged SBA policies and procedures concerning franchises that they seek to enjoin.

Because Plaintiffs have not carried their burden of demonstrating irreparable harm attributable to the challenged action that is "certain and great"—"actual and not theoretical"—their request for entry of a preliminary injunction must be denied.  *Dallas Safari Club*, 2020 2020 WL 1809181, at *7.

## IV.    A PRELIMINARY INJUNCTION WOULD BE CONTRARY TO THE PUBLIC INTEREST

To obtain preliminary injunctive relief against the Government, Plaintiffs must show that the injunction they seek would be in the public interest.  *Nken*, 556 U.S. at 435.  Plaintiffs cannot make that showing, because Congress has already determined that the SBA, when administering the PPP, should continue to require that loan applicants operating as franchises are doing business as part of qualified franchises, under SBA affiliation rules, that are listed in the SBA Franchise Directory.  *See AAPC* (slip op.), at 12-13 (ruling for SBA on public interest).

As discussed above (Point II., *supra*), when Congress passed the CARES Act, it decided that PPP covered loans should be made under the same terms and conditions as other SBA section 7(a) loans, "[e]xcept as otherwise provided" in the PPP.  15 U.S.C. § 636(a)(36)(B).  The PPP sets forth in careful detail which provisions of section 7(a), and the SBA's implementing regulations, are waived or modified for purposes of making PPP covered loans.  *Id*. § 636(a)(36)(D)-(R).  In particular, Congress specified three and only three circumstances under which the SBA's affiliation rules must be waived for PPP purposes, including where the applicant "operate[s] as a franchised that is assigned a franchise identifier code by the [SBA.]"  15 U.S.C. § 636(a)(36)(D)(iv)(II).  Congress did not similarly require that SBA waive its affiliation for undesignated franchises, like Jani-King.  Thus, Congress *already* decided that the public interest in directing PPP covered loans to genuinely small businesses would best be served by continuing to apply SBA's affiliation rules to non-approved franchises, when determining whether applicants meet the size limitations, *id*. § 636(a)(36)(D)(i), on eligibility for PPP loans.

Plaintiffs offer no justification for disturbing that legislative judgment.  Plaintiffs contend (Mem. 21) that "[t]he irreparable harm faced by Plaintiffs far outweighs any harm that the SBA might claim to face" if injunctive relief were granted.  But the issue here is not injury to the

SBA; it is frustration of Congress's intentions.  As recent events illustrate, the funds available for PPP loans are substantial, but not unlimited, and the demand is great.  Plaintiffs have made no showing that their speculative and unsubstantiated claims of injury are so certain or great that "the largest commercial cleaning franchise system in the world," Compl. ¶ 25, should be entitled to government funding at the expense of others whom Congress intended to assist, and who are far more in need of the Government's economic assistance in this time of crisis than Plaintiffs have demonstrated themselves to be.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for a temporary restraining order and a preliminary injunction should be denied.

Dated:  April 22, 2020

>                                    JOSEPH H. HUNT
>                                    Assistant Attorney General
>
>                                    DAVID M. MORRELL
>                                    Deputy Assistant Attorney General
>
>                                    JOHN R. GRIFFITHS
>                                    Director
>
>                                    ERIC WOMACK
>                                    Assistant Director
>
>                                    JAMES J. GILLIGAN
>                                    Special Litigation Counsel
>
>                                    */s/ INDRANEEL SUR*
>                                    INDRANEEL SUR
>                                    Trial Attorney
>
>                                    Federal Programs Branch, Civil Division
>                                    United States Department of Justice
>                                    P.O. Box 883
>                                    Washington, D.C. 20044
>
>                                    Telephone:  (202) 514-3358
>                                    E-mail:      james.gilligan@usdoj.gov
>
>                                    *Counsel for Defendants*