**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JANI-KING INTERNATIONAL, INC.,** *et al.*, | ) |
| | ) |
| | ) |
| **Plaintiffs**, | ) |
| | ) **CASE NO.:  1:20-cv-00989 (TNM)** |
| **v.** | ) |
| | ) |
| **UNITED STATES SMALL BUSINESS** | ) |
| **ADMINISTRATION,** *et al.* | ) |
| | ) |
| | ) |
| **Defendants.** | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Michael J. Lockerby (D.C. Bar No. 502987)
Frank S. Murray, Jr. (D.C. Bar No. 452063)
Jack G. Haake (D.C. Bar No. 1024798)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Sixth Floor
Washington, D.C. 20007-5143
(202) 672-5300
(202) 672-5399 (fax)

Peter L. Loh (admitted *pro hac vice*)
FOLEY & LARDNER LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
(214) 999-3000
(214) 999-4667 (fax)

*Counsel for Plaintiffs,
Jani-King International, Inc.,
Jani-King Franchising, Inc.,
Ohio Services–CLE, LLC
dba Jani-King of Cleveland, and
A and A Enterprises dba Jani-King*

4830-5179-7435.2

## **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ........................................................................ 1

II.    PROCEDURAL STANDARDS ...................................................................... 4

    A.    Summary Judgment for Plaintiffs Is Proper Under Rule 56 If the Undisputed Material Facts Establish Their Entitlement to Judgment as a Matter of Law. ................................................................................................ 4

    B.    Summary Judgment is Proper to Determine Whether the SBA Was Arbitrary or Capricious, Abused Its Discretion, or Contrary to Law. ................... 5

III.    THE UNDISPUTED MATERIAL FACTS ..................................................... 5

IV.    THE LAW ...................................................................................................... 12

    A.    The SBA Cannot Require That JANI-KING® Franchise Agreements Be Listed in the Directory As a Prerequisite for Either Loan Program. .................... 12

    B.    Commercial Cleaning Businesses Operated By JANI-KING® Master and Unit Franchises Are Not "Passive" Businesses Ineligible for SBA Assistance. ........................................................................................................ 14

    C.    The Undisputed Material Facts Establish a "Case or Controversy" Sufficient For Article III Jurisdiction and a Declaratory Judgment. .................... 17

        1.    Plaintiffs have standing because of the injury with which they are threatened as a result of the SBA's violations of the APA. ............... 18

        2.    Subsequent events will not render Plaintiffs' claims resulting from the SBA's denial of PPP and Section 7(a) loans moot. ............................ 21

    D.    The Injunctive Relief Against the SBA Sought By Plaintiffs is Not Prohibited By Statute and Is Appropriate Under the Circumstances. ................... 23

V.    CONCLUSION ............................................................................................. 27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................4

*Appalachian Power Co. v. EPA*,
  208 F.3d 1015 (D.C. Cir. 2000) ............................................................................13

*Barker v. Conroy*,
  921 F.3d 1118 (D.C. Cir. 2019) ............................................................................20

*Bell Helicopter Textron, Inc. v. Airbus Helicopters*,
  78 F.Supp. 3d 253 (D.D.C. 2015) .........................................................................23

*Bryant v. Yellen*,
  447 U.S. 352 (1980) ..............................................................................................20

*California v. Trump*,
  No. CV 19-960 (RDM), 2020 WL 1643858 (D.D.C. Apr. 2, 2020) ......................18

*Canterbury Career Sch., Inc. v. Riley*,
  833 F. Supp. 1097 (D.N.J. 1993) ..........................................................................26

*Carpenters Indus. Council v. Zinke*,
  854 F.3d 1 (D.C. Cir. 2017) ..................................................................................20

*Cavalier Clothes, Inc., v. U.S.*,
  810 F.2d 1108 (Fed. Cir. 1987).............................................................................24

*CC Distributors, Inc. v. United States*,
  883 F.2d 146 (D.C. Cir. 1989) ..............................................................................19

*Comm. on Judiciary, U.S. House of Representatives v. Miers*,
  558 F. Supp. 2d 53 (D.D.C. 2008) ........................................................................17

*CSX Transp. v. Williams*,
  406 F.3d 667 (D.C. Cir. 2005) ..............................................................................23

*Dubrow v. Small Bus. Admin.*,
  345 F.Supp. 4 (C.D. Cal. 1972) ............................................................................26

*Eco Tour Adventures, Inc. v. Zinke*,
  249 F. Supp. 3d 360 (D.D.C. 2017).......................................................................23

4830-5179-7435.2

*Elk Assocs. Funding Corp. v. U.S. Small Bus. Admin.*,
  858 F. Supp. 2d 1 (D.D.C. 2012) ..................................................................25, 26

*Fla. Audubon Soc'y v. Bentsen*,
  94 F.3d 658 (D.C. Cir. 1996) (*en banc*)......................................................21

*Foretich v. United States*,
  351 F.3d 1198 (D.C. Cir. 2003) ....................................................................17

*Fund for Animals v. U.S. Bureau of Land Mgmt.*,
  460 F.3d 13 (D.C. Cir. 2006) ...........................................................................5

*Hardaway v. D.C. Hous. Auth.*,
  843 F.3d 973 (D.C. Cir. 2016) ......................................................................20

*Kisor v. Wilkie*,
  139 S.Ct. 2400 (2019).............................................................................14, 15

*League of Women Voters of U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ..........................................................................23

*Loma Linda Univ. Med. Ctr. v. Sebelius*,
  684 F. Supp. 2d 42 (D.D.C. 2010), *aff'd*, 408 F. App'x 383 (D.C. Cir. 2010)........................5

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992).................................................................................18, 21

*Mackie v. Mills*,
  No. 3:13-CV-2328-N-BK, 2014 WL 3395929 (N.D. Tex. July 11, 2014).............................25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)........................................................................................4

*Motor Vehicle Mfrs. Ass'n v. State Farm Auto Mut. Ins. Co.*,
  463 U.S. 29 (1983)........................................................................................17

*Nat. Res. Def. Council, Inc. v. United States Envtl. Prot. Agency*,
  383 F. Supp. 3d 1 (D.D.C. 2019) ..................................................................18

*Nat'l Mining Ass'n v. McCarthy*,
  758 F.3d 243 (D.C. Cir. 2014) ......................................................................13

*Phoenix Herpetological Soc'y, Inc. v. United States Fish & Wildlife Serv.*,
  No. 19-CV-00788 (APM), 2020 WL 2044000 (D.D.C. Apr. 28, 2020)................................22

*Pickus v. United States Bd. of Parole*,
  507 F.2d 1107 (D.C. Cir. 1974) ....................................................................13

iii

*Rancho Viejo Waste Mgmt., LLC v. City of Laredo*,
364 F. Supp. 3d 698 (S.D. Tex. 2019) ..................................................20

*Related Indus., Inc. v. U.S.*,
2 Cl. Ct. 517 (1983) ...........................................................................24

*Sierra Club v. Jackson*,
648 F.3d 848 (D.C. Cir. 2011) ............................................................17

*South Carolina v. Regan*,
465 U.S. 367 (1984) ............................................................................26

*Steele v. Schafer*,
535 F.3d 689 (D.C. Cir. 2008) .............................................................4

*Ulstein Mar., Ltd. v. United States*,
833 F.2d 1052 (1st Cir. 1987) .............................................................25

*Washington v. United States Dep't of State*,
No. 2:20-CV-00111-RAJ, 2020 WL 1083720 (W.D. Wash. Mar. 6, 2020)...........................19

*WildEarth Guardians v. U.S. E.P.A.*,
759 F.3d 1196 (10th Cir. 2014) ..........................................................19

## Statutes

5 U.S.C. § 553...................................................................................13

5 U.S.C. § 706(2)(A)............................................................................5

5 U.S.C. § 706(2)(C)............................................................................5

15 U.S.C. § 632(a)(2)...........................................................................5

15 U.S.C. § 632(h)...............................................................................6

15 U.S.C. § 634(b)..............................................................................26

15 U.S.C. § 634(b)(1)..............................................................23, 24, 25, 26

15 U.S.C. § 636(a)(36) 36.......................................................................8

28 U.S.C. § 2201(a).............................................................................17

## Other Authorities

13 C.F.R. 120.110(g) ..........................................................................16

13 C.F.R. 121.301(f)(5) ........................................................................14

iv

13 C.F.R. Part 121 ................................................................................................................6

13 C.F.R. § 120.100(a)-(c) .....................................................................................................5

13 C.F.R. § 120.100(d) ..........................................................................................................6

13 C.F.R. §§ 120.100(e), 120.101 .........................................................................................6

13 C.F.R. § 120.110 .................................................................................................6, 12, 15, 16

13 C.F.R. § 120.110(c) ...........................................................................................3, 10, 14, 15, 16

13 C.F.R. § 120.110(c), (g), and (j) .......................................................................................6

13 C.F.R. § 120.110(g) and (j) ...........................................................................................3, 15

13 C.F.R. § 120.110(j) ..........................................................................................................15

13 C.F.R. §121.301(f)(5) ..................................................................................................2, 6, 7, 13

13 C.F.R. 120.110(g) .............................................................................................................8

13 C.F.R. 120.110(j) ..............................................................................................................8

85 Fed. Reg. 7622 (Feb. 10, 2020) .....................................................................................2, 6, 7

85 Fed. Reg. 23430 at 7 (Apr. 28, 2020) ..............................................................................8

85 Fed. Reg. 23450, 23451 (April 28, 2020) ........................................................................3

85 Fed. Reg. 23450, 23451 (Apr. 28, 2020) .........................................................................15

Fed. R. Civ. P. 56(a) ..............................................................................................................4

v

Plaintiffs,[1] by counsel, respectfully state that Rule 56 entitles them to summary judgment because the undisputed material facts[2] establish as a matter of law that the SBA[3] is violating the Administrative Procedure Act, 5 U.S.C. § 501 *et seq.* (the "APA") in implementing both the Temporary PPP Loan Program established by the CARES Act[4] and the Section 7(a) SBA Loan Program.[5]

## I.   **PRELIMINARY STATEMENT**

On April 22, 2020, the SBA told the Court that—because of pre-existing regulations issued pursuant to the Section 7(a) SBA Loan Program—no franchised business was eligible for PPP loan unless its franchise agreement was listed in the SBA Franchise Directory.[6]  (Dkt. #11) As it turns out, this purported requirement was anything but clear and unequivocal.  On its face, the SBA regulation in question was equally consistent with the SBA's previous practice (until recently) whereby the Directory listing was one way—but not the only way—for lenders to

---

[1] Plaintiffs—each of which is a member of the "JANI-KING® Franchise System" as that term is defined in the Amended Complaint—are Jani-King International, Inc. ("Jani-King International" or "The JANI-KING® Trademark Owner"), Jani-King Franchising, Inc. ("JKF" or "The JANI-KING® Franchisor"),  Ohio Services–CLE, LLC dba Jani-King of Cleveland ("Ohio Services" or "The Ohio JANI-KING® Master Franchise"), and A and A Enterprises, LLC dba Jani-King ("A and A Enterprises" or "The Tri-State JANI-KING® Unit Franchisee").

[2] The undisputed material facts are set forth in Plaintiffs' accompanying Statement of Undisputed Materials Facts (cited by paragraph number as "PSUMF") being filed contemporaneously herewith.

[3] The "SBA" refers collectively to both Defendants, the United States Small Business Administration (the "Agency") and Jovita Carranza, in her official capacity as Administrator of the United States Small Business Administration (the "Administrator").

[4] The "CARES Act" is the Coronavirus Aid, Relief, and Economic Security Act, Public L. No. 116–136 §§ 1101–03, 1107, and 1104.  The term "PPP" is an acronym for the Paycheck Protection Program established by the CARES Act.

[5] The "Section 7(a) SBA Loan Program" refers to the pre-existing SBA loan guarantee program established by Section 7(a) of the Small Business Act, 15 U.S.C. § 636(a).

[6] The SBA maintains this directory (the "Directory") at www.sba.gov/sba-franchise-directory.

determine whether a franchised business applying for SBA assistance is "affiliated" with another entity (such as its franchisor).  13 C.F.R. §121.301(f)(5).  The regulation certainly did not enshrine the SBA's more recent "my way or the highway" edict that a franchise agreement must be listed in the Directory for a franchised business to be eligible for assistance under either the Temporary PPP Loan Program or the Section 7(a) SBA Loan Program.

Even if the regulation in fact said what the SBA now says it said, it would not be material for at least two reasons.  First, the Temporary PPP Loan Program—which is in effect only from April 3, 2020 through June 30, 2020—has its own, separate eligibility criteria.  The PPP eligibility criteria established by the CARES Act are certainly different from the eligibility criteria for loans under the Section 7(a) SBA loan program.  There is a second and more important reason, however, that the SBA regulation at issue—to which the Amended Complaint refers as the "Revoked Affiliation Rule"—is not material in this case.  Section 1102(e) of the CARES Act says, in no uncertain terms, that the regulation purporting to impose the Directory listing requirement "is permanently rescinded and shall have no force or effect."  The only purpose for which the CARES Act permits the SBA to use its Directory to determine eligibility for PPP loans is to *expand* rather than narrow the criteria.  The CARES Act thus provides that, if a franchise agreement is listed in the Directory, the franchised business applicant is automatically exempt from the SBA's "affiliation" rules.  As a result, if a franchisee owns or is owned by another entity and the two entities combined have more than 500 employees, the applicant is nevertheless eligible for a loan under the Temporary PPP Loan Program even though it would be ineligible under the Section 7(a) SBA Loan Program.  In short, the fact—assuming it is still a fact—that the JANI-KING® Franchise Agreements were not listed in the Directory would not be grounds for denying PPP loans to members of the JANI-KING® Franchise System even if a

2

Directory listing were valid grounds for denying assistance under the Section 7(a) SBA Loan Program.

The SBA's effort to justify its denial of PPP loans to members of the JANI-KING® Franchise System is a result in search of a rationale. The SBA claims that JANI-KING® Master Franchises are "passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds" and therefore ineligible pursuant to 13 C.F.R. § 120.110(c). One of the many problems with this excuse is that—by definition— PPP loan proceeds are to be used for payroll costs, not to acquire or improve real estate. Nor is any Plaintiff a developer or landlord by any stretch of the SBA's imagination. And even if the actual activities of JANI-KING® Master Franchises could—contrary to the undisputed material facts—be characterized as "passive," the SBA has cited the same rationale in support of its refusal to approve JANI-KING® Unit Franchisees for funding under either the Temporary PPP Loan and the Section 7(a) SBA Loan Program alike.

On April 22, 2020, the SBA told the Court that it was duty bound to apply the same restrictions to PPP loans that it applies to Section 7(a) loans. Two days later, the SBA apparently thought better of that argument. On April 28, 2020, the SBA simply decreed that two categories of businesses ineligible for Section 7(a) loans (casinos and government-owned entities) under 13 C.F.R. § 120.110(g) and (j) were suddenly eligible after all in view of "the purposes of the CARES Act." 85 Fed. Reg. 23450, 23451 (April 28, 2020).

Within the past week, as set forth in the declarations cited in and attached to Plaintiffs' Statement of Undisputed Facts, the SBA has taken a series of contradictory and mutually inconsistent positions as to whether members of the JANI-KING® Franchise System are eligible for PPP loans. To be sure, some of these abrupt instances of "about face" on the part of the SBA

3

may appear to benefit at least some Plaintiffs, for now.  But they do not resolve the question of whether members of the JANI-KING® Franchise System are eligible for PPP loans on a non-discriminatory basis—much less the issue of eligibility under the Section 7(a) SBA Loan Program.  The dizzying speed with which the SBA continues to reverse and contradict itself on issues that should be spelled out in black and white simply underscores that it is acting arbitrarily and capriciously, abusing its discretion, and otherwise acting contrary to law.

## II.     PROCEDURAL STANDARDS

### A.     Summary Judgment for Plaintiffs Is Proper Under Rule 56 If the Undisputed Material Facts Establish Their Entitlement to Judgment as a Matter of Law.

Rule 56 permits summary judgment in favor of Plaintiffs if "there is no genuine dispute as to any material fact" and Plaintiffs are "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

To defeat Plaintiffs' motion for summary judgment, the SBA "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The SBA "must set forth specific facts showing that there [are] genuine issue[s] for trial." *Anderson*, 477 U.S. at 248.  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position ... [is] insufficient" to withstand a motion for summary judgment; rather, "there must be [some] evidence on which the jury could reasonably find for the [SBA]."  *Id*. at 252.

4

**B.      Summary Judgment is Proper to Determine Whether the SBA Was <u>Arbitrary or Capricious, Abused Its Discretion, or Contrary to Law</u>.**

The APA provides a "cause of action to a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." *Fund for Animals v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006). "Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review." *Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F. Supp. 2d 42, 52 (D.D.C. 2010), *aff'd*, 408 F. App'x 383 (D.C. Cir. 2010).

The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The same is true for actions by the SBA that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.* § 706(2)(C).

### III.      <u>THE UNDISPUTED MATERIAL FACTS</u>

Like any other federal agency, the SBA is subject to the APA.  (PSUMF ¶¶ 1-6).  As a result, the SBA's implementation of the Temporary PPP Loan Program and the Section 7(a) SBA Loan Program can be set aside if it violates 5 U.S.C. § 706(2)(A) or 5 U.S.C. § 706(2)(C).

Before enactment of the CARES Act, the SBA's primary program for providing financial assistance to small businesses was the Section 7(a) SBA Loan Program.  (PSUMF ¶ 6).  The eligibility criteria for the Section 7(a) SBA Loan Program precede the CARES Act and are not the same as the eligibility criteria for PPP loans under the CARES Act.[7] The regulations whereby

---

[7] To qualify for assistance under the Section 7(a) SBA Loan Program, an applicant must: (i) be an operating business organized for profit that is located in the United States (13 C.F.R. § 120.100(a)-(c)); (ii) meet the size standards for a "small" business set forth under the statute and SBA rules, usually stated in terms of number of employees, or average annual receipts (15

the SBA implements the Section 7(a) SBA Loan Program designate eighteen discrete categories of businesses as ineligible. 13 C.F.R. § 120.110. The discrete categories of "ineligible businesses" include those that derive more than one-third of gross annual revenue from legal gambling activities (*i.e.*, casinos), government-owned entities, and "[p]assive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except Eligible Passive Companies under § 120.111)." 13 C.F.R. § 120.110(c), (g), and (j). (PSUMF ¶ 8).

To determine whether an applicant for SBA assistance is in fact "small" enough to be eligible, the SBA applies so-called "affiliation" rules that determine whether the size of "affiliates" should be considered when assessing whether the applicant satisfies the relevant size standard.

> The governing affiliation principles applicable to franchised businesses seeking a loan pursuant to the Section 7(a) SBA Loan Program state as "[t]he restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee has the right to profit from its efforts and bears the risk or loss commensurate with ownership. SBA will only consider the franchise or license agreements of the applicant concern.

13 C.F.R. § 121.301(f)(5). (PSUMF ¶ 9).

On February 10, 2020, the SBA published an interim final rule at 85 Fed. Reg. 7622 (Feb. 10, 2020) (the "Revoked Affiliation Rule"), which stated: "SBA will maintain a centralized list of franchise and other similar agreements that are eligible for SBA financial

---

U.S.C. § 632(a)(2); 13 C.F.R. § 120.100(d); 13 C.F.R. Part 121); and (iii) demonstrate that the desired credit is not available elsewhere on reasonable terms. 15 U.S.C. § 632(h); 13 C.F.R. §§ 120.100(e), 120.101.

assistance, which will identify any additional documentation necessary to resolve any eligibility or affiliation issues between the franchisor and the small business applicant."  (PSUMF ¶10). The CARES Act, however, stated that the Revoked Affiliation Rule is "permanently rescinded and shall have no force or effect."  (PSUMF ¶ 12)  As a result, the operative regulation governing affiliation based on franchise agreements for applicants for SBA-guaranteed business loans is the regulation at 13 C.F.R. § 121.301(f)(5) as set forth above.  (PSUMF ¶ 13).

In addition to various regulations published in the Federal Register, the SBA has developed internal guidelines, which are publicly available.  These include the SBA Standard Operating Procedures Section 50, No. 10, entitled "Lender and Development Company Loan Programs" (the "SOP").  The SOP has not been published in the Federal Register.  Revisions to the SOP do not undergo notice and comment under the APA because the SOP is an internal SBA procedure. (PSUMF ¶ 14).  Effective January 1, 2018, the SBA changed the SOP to purportedly make listing of a franchise in the Directory an eligibility requirement under the Section 7(a) SBA Loan Program.[8]  The SOP has never been the subject of SBA regulations published through notice-and-comment rulemaking.  (PSUMF ¶¶ 15-17).

The Temporary PPP Loan Program established by the CARES ACT permits the SBA— on a one-time basis during the period April 3, 2020 through June 30, 2020—to guarantee and forgive 100 percent of loans made by SBA approved lenders to small businesses—including franchised businesses—that with fewer than 500 employees that were in operation on February

---

[8] The SOP relevant to the Section 7(a) SBA Loan Program specifically states: "If the Applicant's brand meets the FTC definition of a franchise, it must be on the Directory in order to obtain SBA financing."  *See* franchise sections of SBA SOP 50 10 5(K) (Subpart B, Chapter 2, Paragraph II.D.8.b).

15, 2020, had employees or independent contractors that the employer paid.   15 U.S.C. § 636(a)(36) 36)(D)(i), (F)(ii)(II).  (PSUMF ¶¶ 18).

Following enactment of the CARES Act, the SBA has issued several interim rules to implement the Temporary PPP Loan Program, as well as informal guidance to borrowers and lenders regarding the program.  (PSUMF ¶¶ 19).  These include the April 28, 2020 Interim Final Rule stating the policy objective of the Temporary PPP Loan Program is to make "PPP loans available to a broad segment of U.S. businesses," that a "business that is otherwise eligible for a PPP Loan is not rendered ineligible due to its receipt of legal gaming revenues, and 13 CFR 120.110(g) is inapplicable to PPP loans," and declaring the general ineligibility of government-owned entities under 13 CFR 120.110(j) to be "inapplicable to PPP loans" is "appropriate to effectuate the purposes of the CARES Act."  85 Fed. Reg. 23430 at 7 (Apr. 28, 2020).  (PSUMF ¶¶ 20, 21).

Since at least 2015, the SBA has refused to list JANI-KING® Franchise Agreements in the Directory and has denied funding under the Section 7(a) SBA Loan Program to members of the JANI-KING® Franchise System.  (PSUMF ¶¶ 29-30).  The JANI-KING® Franchise System is a commercial cleaning service franchise system that consists of three tiers.  Plaintiff JKF is the franchisor of JANI-KING® Master Franchises, such as Plaintiff Ohio Services.  The JANI-KING® Master Franchises are the franchisor of approximately 5,600 JANI-KING® Unit Franchisees nationwide.  One such franchisee is Plaintiff A and A Enterprises.  Each tier of the JANI-KING® Franchise System is licensed to use trademarks owned by Jani-King International (the "Proprietary JANI-KING® Trademarks") in exchange for commitments to comply with the JANI-KING® Trademark Owner's brand standards (the "JANI-KING® Brand Standards").  (PSUMF ¶¶ 22-25).  Each member of the JANI-KING® Franchise System has fewer than 500

8

employees, has the right to profit from its efforts, and bears the risk of loss commensurate with ownership.  (PSUMF ¶¶ 26)

The JANI-KING® Franchisor provides support services to ensure that the JANI-KING® Master Franchises and each of their JANI-KING® Unit Franchisees operate their commercial cleaning franchises in accordance with the JANI-KING® Brand Standards.  Each JANI-KING® Master Franchise Agreements similarly provides support services to ensure that its JANI-KING® Unit Franchisees also operate their commercial cleaning franchises in accordance with the JANI-KING® Standards.  (PSUMF ¶ 27).  Pursuant to the JANI-KING® Master Franchise Agreements, each JANI-KING® Master Franchise handles the billing and collection of accounts for which the JANI-KING® Unit Franchisees perform commercial cleaning services and remits such collections to each franchisee, minus a deduction for any royalties or other charges that the franchisee owes to the JANI-KING® Master Franchise.[9]

The reasons for the SBA's refusal to list the JANI-KING® Franchise Agreements in the Directory have not been clearly articulated to Plaintiffs.  Nevertheless, Plaintiffs understand that one reason for the SBA refusal to list JANI-KING® Franchise Agreements in the Directory is

_____

[9] This arrangement improves the cash flow of the JANI-KING® Unit Franchisees because they actually receive payment from the JANI-KING® Master Franchise once the account payments are due—before many of the invoices are even collected.  Ultimately, most JANI-KING® Unit Franchisees bear the risk of non-payment because most JANI-KING® Master Franchises "charge back" the franchisees for previously advanced payments if the customer has not paid the invoiced amount within a certain period of time.  Pursuant to a program developed by The JANI-KING® Franchisor, however, some JANI-KING® Master Franchises offer the JANI-KING® Unit Franchisees a "no charge back" guarantee—effectively, a form of insurance—in exchange for payment of a premium.  Under the "no charge back" guarantee, JANI-KING® Master Franchises thus act as the insurer that individual customers will not pay amounts invoiced on behalf of the JANI-KING® Unit Franchisees.  JANI-KING® Unit Franchisees with this form of "insurance" mitigate, but do not eliminate, their risk of loss.  Individual JANI-KING® Unit Franchisees without such "insurance" bear the risk of loss of non-payment.  (PSUMF ¶ 28).

that the SBA considers members of the JANI-KING® Franchise System to be "passive businesses" ineligible for the Section 7(a) SBA Loan Program under 13 C.F.R. § 120.110(c). Another possibility is that the SBA considers members of the JANI-KING® Franchise System to be "affiliated" with one another.  (PSUMF ¶¶ 29-30).  Whatever the stated rationale, the undisputed material facts demonstrate that no member of the JANI-KING® Franchise System is "passive" and that Plaintiffs are not "affiliates" of one another as that term is commonly understood or under the SBA's own regulations.

Plaintiff Ohio Services is a JANI-KING® Master Franchise with 18 full-time employees owned 51% by Pamela Carollo and 49% by her husband, Joe Carollo, President of Ohio Services.  On April 3, 2020, Ohio Services submitted an application for a PPP loan to a local lender with which Ohio Services has a longstanding banking relationship, Erie Bank.  Ohio Services' lender would not submit Ohio Services' PPP loan application to the SBA because its JANI-KING® Franchise Agreements were not listed in the Directory.  (PSUMF ¶¶ 31-33).  On April 24, 2020, Ohio Services resubmitted its previously rejected application for a PPP loan. On April 29, 2020 Ohio Services was notified by its lender that its PPP loan application had been approved and would be funded the week of May 4, 2020.  Ohio Services has received no indication from its lender as to whether the SBA will take the position that its PPP loan will be ineligible for loan forgiveness.  (PSUMF ¶¶ 34-35).

Plaintiff A and A Enterprises is owned by Jerry A. Snyder and operates seven different JANI-KING® Unit Franchises in Louisiana, Mississippi, and Alabama.  On April 3, 2020, on behalf of A and A Enterprises, Mr. Snyder submitted a Borrower Application Form under the Temporary PPP Loan Program to Community Bank of Mississippi, a lender approved by the SBA.  If its application for a PPP loan was approved, A and A Enterprises intended to use the

proceeds to keep its employees paid at the amounts they were paid before the pandemic. (PSUMF ¶¶ 36-37). A and A Enterprises' application for a PPP loan was initially approved, closed, and was funded by the lender on April 9. 2020. A and A Enterprises received a loan disbursement in the amount of $143,000 on April 17, 2020. After the closing, however, a representative of the lender told A and A Enterprises that the SBA had notified it that the SBA would deny forgiveness of the loan under the Temporary PPP Loan Program because the JANI-KING® Franchise Agreement is not listed in the Directory. Based on this conversation and fearful of being accused of having wrongfully received the funds, A and A Enterprises returned the much needed funds to the lender. After returning the funds, A and A Enterprises continued funding payroll costs with Mr. Snyder's personal funds. (PSUMF ¶¶ 38). On April 28, 2020, A and A Enterprises resubmitted its PPP loan application. Thereafter, A and A Enterprises told the SBA local representatives that a JANI-KING® Unit Franchise Agreement similar in form and content to its franchise agreement had recently been approved for listing in the SBA Franchise Directory. On April 29, 2020, A and A Enterprises was notified by its lender that its PPP loan application had been approved, and A and A Enterprises received funding on April 30, 2020. On May 1, 2020, however, A and A Enterprises was notified by its lender that the SBA was taking the position that the PPP loan was ineligible for loan forgiveness. (PSUMF ¶¶ 39-40). On May 2, 2020, the JANI-KING® Master Franchise that appointed A and A Enterprises—Jani-King Gulf Coast—was notified by the SBA that A and A Enterprises' JANI-KING® Unit Franchise Agreements had been listed in the Directory.

On April 2, 2020, the JANI-KING® Master Franchise in the Washington, D.C. area— Jani-King of Washington, D.C., Inc. ("The D.C. JANI-KING® Master Franchise")—sought to have the JANI-KING® Franchise Agreement that it uses with its JANI-KING® Unit Franchisees

listed in the Directory.  The JANI-KING® Unit Franchise Agreement used by The D.C. JANI-KING® Master Franchise is materially the same form that all JANI-KING® Master Franchises nationwide use with their JANI-KING® Unit Franchisees.  On April 8, 2020, the SBA's Chief Franchise Counsel notified the individual who had submitted the listing request on behalf of The D.C. JANI-KING® Master Franchise that its agreement was ineligible to be listed in the Directory and that its JANI-KING® Unit Franchisees were ineligible for loans under the Temporary PPP Loan Program.  On April 27, 2020, the SBA sent an email stating that the JANI-KING® Unit Franchise Agreement submitted by The D.C. JANI-KING® Master Franchise would be listed in the Directory for purposes of the Temporary PPP Loan Program only. (PSUMF ¶¶ 41-43).

At this juncture, it is uncertain whether all eligible members of the JANI-KING® Franchise System that apply for PPP loans will be approved by the SBA or whether the SBA will deny loan forgiveness to any PPP loans that are approved.  Either outcome jeopardizes the viability of the entire JANI-KING® Franchise System, including Plaintiffs, as detailed in the various declarations accompanying Plaintiffs' Statement of Undisputed Material Facts.  (PSUMF ¶¶ 44-47).

## IV.  THE LAW

### A.  The SBA Cannot Require That JANI-KING® Franchise Agreements Be Listed in the Directory As a Prerequisite for Either Loan Program.

The SBA's adoption of a policy prohibiting franchised small businesses from participating in the Temporary PPP Loan Program or the Section 7(a) SBA Loan Program unless its franchise "brand" is listed in the Directory imposes a new and stricter eligibility threshold for franchises that is not grounded in—and in fact contravenes—the SBA's regulations governing these programs.  SBA regulations identify eighteen discrete categories of businesses that are

12

ineligible for business loans.  13 C.F.R. § 120.110.  These eighteen categories of ineligible businesses do *not* include franchised businesses operating pursuant to an agreement that is not listed in the Directory.  In addition, the SBA's duly promulgated regulations preclude a finding of affiliation between a franchisee and its franchisor based on the contents of its franchise agreement if the franchisee has the right to profit from its efforts and retains the risk of loss commensurate with ownership.  13 C.F.R. § 121.301(f)(5) (February 7, 2020 version).

Unlike the SBA's requirement of a Directory listing for franchised businesses, the SBA's regulations were adopted through notice-and-comment rulemaking under 5 U.S.C. § 553 and therefore have the force and effect of law.  The SBA therefore lacks discretion to adopt a new, franchise-specific ineligibility category that has not undergone the same notice-and-comment procedure.  *See, e.g., Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1020, (D.C. Cir. 2000) ("Only 'legislative rules' have the force and effect of law ... A 'legislative rule' is one the agency has duly promulgated in compliance with the procedures laid down in the statute or in the Administrative Procedure Act."); *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 250 (D.C. Cir. 2014) ("Legislative rules have the 'force and effect of law' and may be promulgated only after public notice and comment.").  The SBA cannot simply create, through bureaucratic fiat, new categories of "ineligible businesses" or new preconditions on eligibility for franchised small businesses to receive business loans without adhering to the APA's rulemaking procedures. *Pickus v. United States Bd. of Parole*, 507 F.2d 1107, 1113-14 (D.C. Cir. 1974) ("This category [of 'interpretive rules'] … should not be deemed to include any action which goes beyond formality and substantially affects the rights of those over whom the agency exercises authority.").

13

The SBA, however, has done precisely that—imposing on small businesses operating as franchises new and stricter eligibility requirements found nowhere in the governing statutes or regulations.  These restrictions are found only in internal "standard operating procedures" that the SBA has issued as guidance for implementation of its business loan program.  The SOP makes no attempt to reconcile its new policy foreclosing financial assistance to such franchisees with the terms of 13 C.F.R. 121.301(f)(5).  The SBA has thus attempted attempt to apply a new substantive eligibility requirement that would deny much-needed financial assistance to franchised small businesses on a basis that is articulated nowhere within the governing SBA regulations themselves.  This violates the APA because it is arbitrary, capricious, and contrary to law.  In decreeing that a franchised small businesses is to be denied financial assistance unless its franchise agreement is listed in the Directory, the SBA has ignored and effectively overridden the unambiguous provisions of the "affiliation based on franchise and license agreements" subsection within the operative SBA regulation governing eligibility for business loans.[10]

### B. Commercial Cleaning Businesses Operated By JANI-KING® Master and Unit Franchises Are Not "Passive" Businesses Ineligible for SBA Assistance.

The SBA has similarly violated the APA—and has acted arbitrarily, capriciously, and contrary to law and regulation—by inaccurately categorizing JANI-KING® Master Franchises as "passive businesses" ineligible to receive loans under either the Temporary PPP Loan Program or the Section 7(a) SBA Loan Program.  The "passive business" category of businesses

---

[10] Moreover, because the "affiliation based on franchise and license agreement" provision is unambiguous with respect to the two considerations that the SBA is to take into account when assessing whether a franchise agreement gives rise to affiliation, the SBA cannot seek refuge by seeking deference to the SOP as the agency's interpretation of those regulations.  *See Kisor v. Wilkie,* 139 S.Ct. 2400, 2415 (2019) ("First and foremost, a court should not afford *Auer* deference unless the regulation is genuinely ambiguous.  If uncertainty does not exist, there is no plausible reason for deference.  The regulation then just means what it means—and the court must give it effect.") (internal citation omitted).

ineligible for business loans is defined in the SBA's regulations at 13 C.F.R. § 120.110(c).  That provision unambiguously identifies, as the only type of business covered by that category of ineligibility, "[p]assive businesses *owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds*."  13 C.F.R. § 120.110(c) (emphasis added).  A JANI-KING® Master Franchise does not fall within that unambiguous definition.  A JANI-KING® Master Franchise is not owned by a developer or landlord, and it engages in regular business activity that supports the efforts of the unit franchises within its geographic region.  The SBA's effort to stretch the definition of "passive business" contained in interpretation of 13 C.F.R. § 120.110(c) to reach a JANI-KING® Master Franchise is arbitrary and capricious and entitled to no deference by this Court.  *See Kisor*, 139 S.Ct. at 2415 (no deference to agency interpretation of unambiguous regulatory language; even where genuine ambiguity remains, "the agency's reading must still be 'reasonable'").

Even if the SBA could support its expansive interpretation of 13 C.F.R. § 120.110(c) well beyond the plain language of the regulation itself, the SBA has acknowledged in a recent interim rule that the broad remedial purpose of the CARES Act to benefit small businesses affected by the economic disruption caused by the COVID-19 pandemic overrides and renders "inapplicable"— in the context of the Temporary PPP Loan Program—the general ineligibility of a small business under 13 C.F.R. § 120.110.  Two of the eighteen categories of businesses that are unambiguously designated, by regulation, as ineligible to receive SBA business loans are (1) businesses deriving more than one-third of gross annual revenue from legal gambling activities (*e.g.*, casinos) (2) and government-owned entities.  13 C.F.R. § 120.110(g), (j).  In implementing the Temporary PPP Loan Program, the SBA has acknowledged that "the purposes of the CARES Act" warrant disregarding the regulatory ineligibility of government-owned entities in 13 C.F.R.

15

§ 120.110(j) to permit government-owned hospitals to apply for and receive PPP loans.  85 Fed. Reg. 23450, 23451 (Apr. 28, 2020).

The SBA has likewise amended its rules implementing the Temporary PPP Loan Program specifically to permit casinos—businesses that derive more than one-third of their gross revenue from legal gambling activities—to be eligible for PPP loans, notwithstanding their ineligibility for SBA business loans under the SBA's governing regulations.  Specifically, the SBA amended its rules for the Temporary PPP Loan Program to state that "13 C.F.R. 120.110(g) is inapplicable to PPP loans," based on the Administrator's belief that "this approach is more consistent with the policy aim of making PPP loans available to a broad segment of U.S. businesses."  *Id.*

In waiving two of the eighteen categories of regulatory ineligibility for SBA business loans to allow casinos and government-owned hospitals to benefit from the Temporary PPP Loan Program, the SBA offered no explanation or rationale for continuing to deny participation in the Temporary PPP Loan Program to commercial cleaning franchises that the SBA contends may be ineligible under 13 C.F.R. § 120.110(c).  The rationale articulated by the Administrator in the April 28 Interim Rule—"the policy aim of making PPP loans available to a broad segment of U.S. businesses"—would equally support a determination that 13 C.F.R. § 120.110*(c)* "is inapplicable to PPP loans."  The SBA lacks a rational basis on the administrative record before this Court to defend its insistence that JANI-KING Master Franchises are ineligible to receive PPP loans based on an alleged regulatory ineligibility under 13 C.F.R § 120.110(c), while simultaneously acknowledging that the broad remedial purpose of the CARES Act renders regulatory ineligibility "inapplicable" for other businesses that seek PPP loans.  Accordingly, to the extent the SBA defends its denial of participation in the Temporary PPP Loan Program based

16

on regulatory ineligibility under 13 C.F.R. § 120.110, the SBA's recognition that the broad

remedial purpose of the CARES Act overrides that regulatory ineligibility renders the SBA's

position with respect to members of the JANI-KING® Franchise System arbitrary, capricious

and an abuse of discretion.  *See Motor Vehicle Mfrs. Ass'n v. State Farm Auto Mut. Ins. Co.*, 463

U.S. 29, 43 (1983) (articulating standard for finding an agency decision arbitrary and capricious).

> C.      **The Undisputed Material Facts Establish a "Case or Controversy"**
>         **Sufficient For Article III Jurisdiction and a Declaratory Judgment.**

Plaintiffs are entitled to declaratory relief under the Declaratory Judgment Act[11] because

(1) their dispute with the SBA involves an actual case or controversy within the meaning of

Article III of the Constitution; (2) the issue is actual and adversarial; and (3) the action is not

merely a medium for securing an advisory opinion.  *Comm. on Judiciary, U.S. House of*

*Representatives v. Miers*, 558 F. Supp. 2d 53, 82 (D.D.C. 2008) (citing *Coffman v. Breeze Corp.*,

323 U.S. 316 (1945)).  The Declaratory Judgment Act "should be liberally construed to achieve

the objectives of the declaratory remedy."  *Id*. at 82 (citation omitted).  The Article III

requirement of a case or controversy "gives rise to the doctrines of standing and mootness."

*Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003); *see Sierra Club v. Jackson*, 648

F.3d 848, 852 (D.C. Cir. 2011) ("Article III of the Constitution limits the federal courts to

adjudication of actual, ongoing controversies.").  Here, an Article III case or controversy

---

[11] The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction, . . . any court
> of the United States, upon the filing of an appropriate pleading,
> may declare the rights and other legal relations of any interested
> party seeking such declaration, whether or not further relief is or
> could be sought.

28 U.S.C. § 2201(a).

requirement is present because Plaintiffs have standing to seek the relief set forth in their Amended Complaint and their claim is not moot.

### 1. Plaintiffs have standing because of the injury with which they are threatened as a result of the SBA's violations of the APA.

To establish Article III standing, Plaintiffs must show a "concrete and particularized" injury that is "actual or imminent," that the injury is caused by the challenged conduct of the defendant, and that the requested relief is likely to redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation mark and citations omitted). Plaintiffs fulfill each of these requirements.

First, Plaintiffs have already suffered and—without the declaratory relief that they seek—are likely to continue suffering—a concrete and actual injury in fact. This requirement serves to distinguish those with a direct stake in the outcome of the litigation from those with a mere interest. An "identifiable trifle" suffices for an injury. *Nat. Res. Def. Council, Inc. v. United States Envtl. Prot. Agency*, 383 F. Supp. 3d 1, 11 (D.D.C. 2019) (citing *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669 (1973)).

The injury faced by Plaintiffs certainly includes—but is by no means limited to—so-called "procedural injury" of the type that was recently before this Court in the case of *California v. Trump*, No. CV 19-960 (RDM), 2020 WL 1643858, at *6 (D.D.C. Apr. 2, 2020):

> In a procedural injury case, the plaintiff must establish that "(1) the government violated its procedural rights designed to protect a threatened, concrete interest, and (2) the violation resulted in injury to that concrete, particularized interest." *New Hampshire v. Holder*, 293 F.R.D. 1, 6 (D.D.C. 2013) (three-judge court) (citing *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005)). "[T]he procedural standing doctrine 'does not—and cannot—eliminate any of the "irreducible" elements of standing[.]' " *Id.* (quoting *Fla. Audubon Soc'y*, 94 F.3d at 664). It does, however, "relax[ ] the immediacy and redressability requirements." *Id.*; *see also Massachusetts*, 549 U.S. at 517–18 (quoting *Lujan*, 504 U.S. at 572 n.7) (internal citation omitted). As a result, in a

4830-5179-7435.2

procedural injury case, the "litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Id.*; *see also Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 94–95 (D.C. Cir. 2002) (requiring that plaintiffs alleging procedural injuries "show that the procedural step was connected to the substantive result"). The injury-in-fact and causation requirements, in contrast, are not relaxed and apply just as they would in any other case.

Failure to provide notice and comment is one form of a procedural injury. For example, in the recent case of *Washington v. United States Dep't of State*, No. 2:20-CV-00111-RAJ, 2020 WL 1083720, at *4 (W.D. Wash. Mar. 6, 2020), the court observed that "claims resting on a procedural injury, including failure to provide notice and comment, relax some standing requirements" and held that an agency's failure to follow notice and comment procedures was sufficient to establish sufficient injury for purposes of Article III standing.

Here, the undisputed facts establish that the SBA has imposed requirements for assistance under the Temporary PPP Loan Program and the Section 7(a) SBA Loan Program that are not authorized by—and indeed are contrary to—the governing statutes and regulations. To show the injury in fact required for standing based on "procedural injury," Plaintiffs need not establish with certainty that the SBA's adherence to procedures would necessarily change the Agency's ultimate decision. Rather, it suffices for Article III purposes that the procedures violated by the SBA are designed to protect some threatened concrete interest of Plaintiffs that is the ultimate basis for standing. *WildEarth Guardians v. U.S. E.P.A.*, 759 F.3d 1196 (10th Cir. 2014) ("For a procedural injury, the requirements for Article III standing are somewhat relaxed, or at least conceptually expanded.") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. at 572 n. 7).

Loss of an opportunity to pursue or receive a government benefit—such as assistance under the Temporary PPP Loan Program and the Section 7(a) SBA Loan Program—may be injury in fact if it is not merely "illusory." *See, e.g., CC Distributors, Inc. v. United States*, 883

19

F.2d 146, 151 (D.C. Cir. 1989) (contractor had standing to challenge Department of Defense's decision to convert program to in-house operation because of a the loss of a statutorily conferred opportunity to compete for a contract); *Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 978 (D.C. Cir. 2016) (because plaintiffs "have long been empowered to challenge the rescission of government benefits in federal court," rescinding a statutory benefit was an injury in fact where an agency rescinded a claimed statutory entitlement to a live-in aide and two-bedroom voucher); *Barker v. Conroy*, 921 F.3d 1118, 1126 (D.C. Cir. 2019) (plaintiff's exclusion from a guest chaplain program qualified as a cognizable injury in fact); s*ee also Rancho Viejo Waste Mgmt., LLC v. City of Laredo*, 364 F. Supp. 3d 698, 704 (S.D. Tex. 2019) (gathering cases that involve a plaintiff who was denied an opportunity to pursue some benefit from government as the basis for injury in fact).

Prospective economic harm—such as that likely to result from denial of assistance under the Temporary PPP Loan Program and the Section 7(a) SBA Loan Program—has been held to constitute injury in fact.  *See, e.g., Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5-7 (D.C. Cir. 2017) (determining that available evidence adequately demonstrated economic harm and constituted injury in fact where decrease in timber supply would have adverse economic effects on lumber companies that were members of organization filing suit); *Bryant v. Yellen*, 447 U.S. 352, 365 (1980) (farmworkers residing in a valley had standing to challenge a rule limiting irrigation water deliveries from reclamation projects to 160 acres under single ownership in that valley because application of the rule would adversely affect the value of property that they may seek to purchase).

Here, Plaintiffs can easily demonstrate an injury in fact that is both actual and imminent because they have been barred and will in the future be barred from participating in the

Temporary PPP Loan Program and the Section 7(a) SBA Loan Program by the SBA's *ultra vires* actions.  These include the SBA's application of its internal "standard operating procedures" that have not undergone the rulemaking process required by the APA.  The exclusion of the JANI-KING® Franchise System from both programs denies them benefits to which—on the face of the statutes and regulations—they are clearly entitled.

The undisputed material facts establish causation and redressability, *i.e.*, an injury that is "fairly ... trace[able] to the challenged action of the defendant,"[12] and show that "the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged."  *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996) (*en banc*) (footnote omitted)

Here, but for the SBA's *ultra vires* application of its SOP to the Temporary PPP Loan Program and the Section 7(a) SBA Loan Program, Plaintiffs would have access to the benefits of both programs—as intended by Congress.  This injury can easily be redressed if the Court enters a declaratory judgment determining that the SBA has wrongfully barred members of the JANI-KING® Franchise System, including Plaintiffs from the Temporary PPP Loan Program and the Section 7(a) SBA Loan Program.

2. **Subsequent events will not render Plaintiffs' claims resulting from the SBA's denial of PPP and Section 7(a) loans moot.**

It is certainly possible that funding for the Temporary PPP Loan Program could run out (again) before the merits of Plaintiffs' claims are resolved.  IT is also possible that some or all members of the JANI-KING® Franchise System that have applied for PPP loans could ultimately receive them on non-discriminatory terms.  Neither development would render

---

[12] *Lujan v. Defenders of Wildlife*, 504 U.S. at 590 (internal quotation marks and citation omitted).

4830-5179-7435.2

Plaintiffs' claims moot—in part because such developments would not alter the SBA's longstanding refusal to allow members of the JANI-KING® Franchise System to participate in the Section 7(a) SBA Loan Program.  Even if they were otherwise moot, Plaintiffs' claims would be well within the recognized exception to the mootness doctrine because the claim is capable of repetition, yet evading review.  *Phoenix Herpetological Soc'y, Inc. v. United States Fish & Wildlife Serv.*, No. 19-CV-00788 (APM), 2020 WL 2044000, at *4 (D.D.C. Apr. 28, 2020) ("Where . . . a plaintiff challenges an isolated agency action, the mooting of the specific claim moots any claim for a declaratory judgment that the specific action was unlawful, unless the specific claim fits the exception for cases that are 'capable of repetition, yet evading review.'") (internal quotation marks omitted).

Here, Plaintiffs' claims against the SBA are not moot.  Plaintiffs have asserted two related, but distinct claims against the SBA.  First, Plaintiffs have asserted that the SBA has wrongfully denied Plaintiffs access to SBA financing because of the SBA's incorrect application of its implementing regulations and *ultra vires* application of internal guidelines that have not gone through the necessary rulemaking process to bind the public.  This asserted claim is ongoing and is not moot.  Plaintiffs have also asserted that the SBA has wrongfully denied Plaintiffs access to the Temporary PPP Loan Program.  Since the filing of Plaintiffs' Amended Complaint, the SBA has allowed certain members of the JANI-KING® Franchise System, including Plaintiffs, to be added to the Directory and to receive PPP loans.  However, this does not render Plaintiffs' claims moot for at least three reasons.  First, the SBA continues to maintain the position that at least some Plaintiffs are not entitled to loan forgiveness under the Temporary PPP Loan Program, unlike other eligible applicants.  Second, Plaintiffs' claim is capable of repetition yet evading review as other members of the JANI-KING® Franchise System will

likely apply for this short term program and can be denied benefits of the Temporary PPP Loan Program because of the SBA's implementation of its guidelines in violation of the APA.  Third, the SBA's incorrect administration of the Section 7(a) SBA Loan Program will not be corrected by the simple expedience of approving random PPP loans.  Only the Court can (or will) correct that error.

### D.      The Injunctive Relief Against the SBA Sought By Plaintiffs is Not Prohibited By Statute and Is Appropriate Under the Circumstances.

The declarations accompanying Plaintiffs' Statement of Undisputed Material Facts establish—in fact and as a matter of law—that Plaintiffs face irreparable injury that warrants injunctive relief against the SBA's approach to administration of the Temporary PPP Loan Program and the Section 7(a) SBA Loan Program.  This harm is not limited to harm to employees of members of the JANI-KING® Franchise System facing the very salary reductions or layoffs that the PPP was intended to prevent.  This harm includes threats to the viability of each link in the chain that constitutes the JANI-KING® Franchise System.  (PSUMF ¶¶ 44-47).

At the very least, such harm is irreparable because it is difficult to value.  *CSX Transp. v. Williams*, 406 F.3d 667, 673 (D.C. Cir. 2005); *Bell Helicopter Textron, Inc. v. Airbus Helicopters,* 78 F.Supp. 3d 253, 274-75 (D.D.C. 2015).  The harm faced by Plaintiffs is also irreparable because it cannot be redressed by any other means.  *See Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 386 (D.D.C. 2017) (failure to award disputed contract meant that company would not be treated as a preferred offeror in the future and plaintiff would be in a less favorable position, which was not able to be redressed); (*League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (organization's mission was harmed because "after the registration deadlines for the November election pass, there can be no do over and no redress" (internal quotations removed)).

23

Unable to refute Plaintiffs' claims of irreparable injury, the SBA claims absolute immunity from injunctive relief by virtue of 15 U.S.C. § 634(b)(1).   If the SBA truly believes that it is above the law, that would explain much if not all of the behavior of which Plaintiffs complain.  The SBA is not above the law, however, and the injunctive relief sought by Plaintiffs is not barred by 15 U.S.C. § 634(b)(1).   When § 634(b)(1) was enacted in 1953 and later amended in 1958, injunctive relief was generally not available against the federal government.  More recent decisions have made clear, however, that § 634(b)(1) was not intended to grant SBA any greater immunity from injunctive relief than any other agency.  *Cavalier Clothes, Inc., v. U.S.*, 810 F.2d 1108, 1112 (Fed. Cir. 1987) (reversing and remanding order denying injunctive relief for claims involving SBA).   In *Cavalier Clothes*, the court attempted to harmonize § 643(b)(1) with a later-enacted statute that specifically authorized injunctive relief against the government, reasoning as follows:

> That recent expression of Congress' purpose necessarily gives a new focus to the bare words of § 634(b)(1) with respect to such contract claims.
>
> In that connection, nothing either in the language or the legislative history of § 634 suggests that Congress intended to grant the SBA any greater immunity from injunctive relief than that possessed by other governmental agencies. At the time § 634 was originally adopted as part of the Small Business Act, injunctive relief was not available against the United States or Government entities acting in their governmental capacity; because the SBA was expressly made suable by the Small Business Act, Congress added the no-injunction provision to make sure that the "suable" clause did not permit specific relief against SBA, any more than the Tucker or Tort Claims Acts, though they allow suits for monetary relief, permit specific relief against the United States. Consequently, there is no basis for any inference that Congress intended to exclude the SBA when it later authorized injunctive relief against government agencies and departments generally on pre-award contract claims.

*Id.* at 1112.  *See also Related Indus., Inc. v. U.S.*, 2 Cl. Ct. 517, 522 (1983) (providing extensive discussion of § 643(b)(1) and its origin and ultimately determining injunctive relief was available

24

against SBA under a later statute, even though the later statute did not specifically name the SBA).

The Federal Circuit and Court of Claims are not alone in holding that § 634(b)(1) does not bar injunctive relief against SBA.  The First Circuit engaged in a similar analysis of § 634(b)(1) and ultimately reached the same conclusion, *i.e.*, that the statute protects the agency from interference with its internal workings by judicial orders attaching agency funds but does not provide blanket immunity from every type of injunction.  In particular, it should not be interpreted as a bar to judicial review of agency actions that exceed agency authority where the remedies would not interfere with internal agency operations.  *Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1057 (1st Cir. 1987) ("[N]othing in the language or the legislative history of § 634 suggests that Congress intended to grant the SBA any greater immunity from injunctive relief than that possessed by other governmental agencies.").

Closer to home, the D.C. Circuit has strongly intimated that injunctive relief is available when the SBA exceeds its statutory authority.  *See, e.g., Elk Assocs. Funding Corp. v. U.S. Small Bus. Admin.*, 858 F. Supp. 2d 1, 20 (D.D.C. 2012) ("Such a sweeping interpretation of Section 634(b)(1) [that injunctive relief against the SBA is absolutely foreclosed] has not taken hold in this Circuit, where courts have strongly intimated that injunctive relief is available, at a minimum, when the SBA exceeds its statutory authority.").  Indeed, accepting the SBA's argument at face value would lead to the absurd result that no court would be able to enjoin or prohibit illegal or even unconstitutional actions by the SBA.  *See Mackie v. Mills*, No. 3:13-CV-2328-N-BK, 2014 WL 3395929, at *4 (N.D. Tex. July 11, 2014) (the SBA's line of reasoning would lead to the "absurd result that any type of relief awarded against the SBA would be 'injunctive' because it has the effect of prohibiting the agency from pursuing some course.").

25

Other agencies claiming immunity under similar statutes have been enjoined where they have exceeded their statutory authority.  For example, a similar anti-injunction provision related to the Department of Education has been held not to preclude injunctive relief where the agency exceeded the bounds of its authority.  *See Canterbury Career Sch., Inc. v. Riley*, 833 F. Supp. 1097, 1102 (D.N.J. 1993) (granting injunctive relief despite anti-injunction provision and stating that "where it is determined that a federal officer has exceeded the bounds of his or her authority, there exists a recognized limitation upon the applicability of such an 'anti-injunction' provision").  Furthermore, a limitation on an anti-injunction provision exists where there is no adequate alternative forum to raise a unique claim.  *See South Carolina v. Regan*, 465 U.S. 367, 381 (1984) (plaintiff could bring a suit despite an anti-injunction provision where there would be no adequate alternative forum for the plaintiff to raise its unique claims).

On its face, the plain language of the statute does not shield the SBA from injunctive relief if it is acting outside the scope of its lawful authority.  Section 634(b)(1) is limited to those circumstances in which the Administrator is acting "[i]n the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter[.]"  The Administrator has no authority to act outside the scope of her legal authority.  She has no authority to engraft restrictions on PPP loan eligibility that are nowhere to be found in the CARES Act or to restrict eligibility for Section 7(a) loans in ways that find no support in any statute or regulation.  "It should be clear . . . that when the Administrator acts beyond the scope of his authority 15 U.S.C. § 634(b) does not preclude injunctive action."  *Dubrow v. Small Bus. Admin.*, 345 F.Supp. 4, 7 (C.D. Cal. 1972) (injunctive relief available if administrator acts outside scope of authority but determining actions were not outside authority); *see also Elk Assoc. Funding Corp. v. Small Bus. Admin.*, 858 F.Supp.2d at 22-3.

Last but not least, the text of § 634(b)(1) bars injunctive relief only "against the Administrator or his property"—not against the Agency or its property. The statute provides protection only to an individual serving as administrator of the SBA and that individual's property. In this case, the Administrator of the ABA is named as a defendant only in her official capacity. No statute prevents injunctive relief against the Agency or the Administrator named in an official capacity only.

## V.      CONCLUSION

The SBA cannot legitimately dispute that it has imposed eligibility requirements under the Temporary PPP Loan Program and the Section 7(a) SBA Loan Program that are not set forth in any statute or regulation. This indisputable fact, among others, entitles Plaintiffs to judgment as a matter of law. Plaintiffs therefore respectfully request that summary judgment be entered in their favor.

Dated:  May 4, 2020

Respectfully submitted,

JANI-KING INTERNATIONAL, INC.;
JANI-KING FRANCHISING, INC.;
OHIO SERVICES–CLE, LLC
dba JANI-KING OF CLEVELAND, and
A AND A ENTERPRISES dba JANI-KING

By: _/s/ Michael J. Lockerby_
                    Counsel

Michael J. Lockerby (D.C. Bar No. 502987)
Frank S. Murray, Jr. (D.C. Bar No. 452063)
Jack G. Haake (D.C. Bar No. 1024798)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Sixth Floor
Washington, D.C. 20007-5143
(202) 672-5300
(202) 672-5399 (fax)

Peter L. Loh (admitted _pro hac vice_)
FOLEY & LARDNER LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
(214) 999-3000
(214) 999-4667 (fax)

_Counsel for Plaintiffs,_
_Jani-King International, Inc.,_
_Jani-King Franchising, Inc.,_
_Ohio Services–CLE, LLC_
_dba Jani-King of Cleveland, and_
_A and A Enterprises dba Jani-King_