**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JANI-KING INTERNATIONAL, INC.,** *et al.*, | )<br>)<br>) |
| **Plaintiffs,** | )<br>)  Case No.:  1:20-CV-00989 (TNM)<br>) |
| v. | )<br>) |
| **UNITED STATES SMALL BUSINESS ADMINISTRATION, et al.,** | )<br>)<br>) |
| **Defendants** | )<br>)<br>) |

**STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. 56 and LCvR 7(h), Plaintiffs —Jani-King International, Inc. ("Jani-King International" or "The JANI-KING® Trademark Owner"), Jani-King Franchising, Inc. ("JKF" or "The JANI-KING® Franchisor"), Ohio Services–CLE, LLC d/b/a Jani-King of Cleveland ("Ohio Services" or "The Ohio JANI-KING® Master Franchise"), and A and A Enterprises, LLC ("A and A Enterprises" or "The Tri-State JANI-KING® Unit Franchisee")— by counsel, respectfully submit this statement of undisputed material facts in support of their motion for summary judgment.

*The Small Business Administration*

1. The United States Small Business Administration (the "Agency") is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633 *et seq*.

2. Jovita Carranza is the Administrator of the Agency (the "SBA Administrator," together with the Agency, the "SBA").  As the Administrator, Ms. Carranza holds a Cabinet-level position.

3. The regulations pursuant to which the SBA implements its statutory authority are published in the Federal Register and codified in Title 13 of the Code of Federal Regulations.

4832-4473-5675.4

4. The SBA also issues guidance documents for compliance with its regulations and the programs that it administers. These guidance documents include publicly available internal SBA Standard Operating Procedures, Policy Notices, Procedural Notices, and other general guidance.

5. As a federal agency, the SBA is governed by the Administrative Procedure Act, 5 U.S.C. § 501 *et seq.* (the "APA").

### *The Section 7(a) SBA Loan Program*

6. Before enactment of the CARES Act, as defined below, the SBA's primary program for providing financial assistance to small businesses was through its authorization to provide loan assistance to small business concerns under Sections 7(a) and 7(b) of the Small Business Act, 15 U.S.C. § 636(a) (the "Section 7(a) SBA Loan Program").

7. The Section 7(a) SBA Loan Program provides financing for general business purposes. To qualify for Section 7(a) SBA Loan Program loans, an applicant must: (a) be an operating business organized for profit that is located in the United States (13 C.F.R. § 120.100(a)-(c)); (b) meet the size standards for a "small" business set forth under the statute and SBA rules, usually stated in terms of number of employees, or average annual receipts (15 U.S.C. § 632(a)(2); 13 C.F.R. § 120.100(d); 13 C.F.R. Part 121); and (c) demonstrate that the desired credit is not available elsewhere on reasonable terms. 15 U.S.C. § 632(h); 13 C.F.R. §§ 120.100(e), 120.101.

8. The SBA's implementing regulations designate eighteen discrete categories of businesses as ineligible for SBA business loans. 13 C.F.R. § 120.110. Examples of ineligible businesses include, among others, financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors; businesses that derive more than one-

third of gross annual revenue from legal gambling activities (*i.e.*, casinos); and government-owned entities.  13 C.F.R. § 120.110 (b), (g), and (j).  The discrete categories of "ineligible businesses" also include "[p]assive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except Eligible Passive Companies under § 120.111)."  13 C.F.R. § 120.110(c).

### *The SBA's Guidelines Relating to Franchised Businesses*

9.  In assessing the size of a business concern, the SBA has long applied so-called "affiliation" rules that determine whether the size of its "affiliates" should be considered when assessing whether the business concern and its affiliates collectively satisfy the relevant size standard.  The governing affiliation principles applicable to franchised businesses seeking a loan pursuant to the Section 7(a) SBA Loan Program are set forth in 13 C.F.R. § 121.301(f)(5), entitled "Affiliation based on franchise and license agreements."  It states as follows:

> The restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee has the right to profit from its efforts and bears the risk or loss commensurate with ownership.  SBA will only consider the franchise or license agreements of the applicant concern.

13 C.F.R. § 121.301(f)(5).

10.  On February 10, 2020, the SBA published an interim final rule at 85 Fed. Reg. 7622 (Feb. 10, 2020) (the "Revoked Affiliation Rule").  The Revoked Affiliation Rule moved the language in subsection 121.301(f)(5) to 121.301(f)(7) and added the following language after the above-quoted language that had previously appeared at 121.301(f)(5): "SBA will maintain a centralized list of franchise and other similar agreements that are eligible for SBA financial

assistance, which will identify any additional documentation necessary to resolve any eligibility or affiliation issues between the franchisor and the small business applicant."

11. On March 27, 2020, Congress passed and President Trump signed the Coronavirus Aid, Relief, and Economic Security Act, Public L. No. 116–136 §§ 1101–03, 1107, and 1104 (the "CARES Act"). The CARES Act includes the Paycheck Protection Program ("PPP") loan program (the "Temporary PPP Loan Program"). The purpose of the Temporary PPP Loan Program is to provide emergency relief to qualifying small businesses affected by the current COVID-19 pandemic and their employees.

12. Section 1102(e) of the CARES Act, a subsection within the provision that established the Temporary PPP Loan Program itself, stated as follows with respect to the Revoked Affiliation Rule:

> On and after the date of enactment of this Act, the interim final rule published by the Administrator entitled 'Express Loan Programs: Affiliation Standards' (85 Fed. Reg. 7622 (February 10, 2020)) is ***permanently rescinded and shall have no force or effect***.

(emphasis added).

13. Because the interim final rule at 85 Fed. Reg. 7622 was permanently rescinded upon enactment of the CARES Act, the operative regulation governing affiliation based on franchise agreements for applicants for SBA-guaranteed business loans is the regulation at 13 C.F.R. § 121.301(f)(5) as set forth above.

### *The SBA Franchise Directory*

14. The SBA's publicly available internal guidelines include the SBA Standard Operating Procedures Section 50, No. 10, entitled "Lender and Development Company Loan Programs" (the "SOP"). The current version of the SOP is Revision 5(K). The SOP is an

internal SBA procedure, originated by the SBA's Office of Capital Access, addressed to "All SBA Employees." The SOP has not been published in the Federal Register. Revisions to the SOP do not undergo notice and comment under the APA because the SOP is an internal SBA procedure.

15.  To facilitate franchise loan applications under the Section 7(a) SBA Loan Program, the SBA established the SBA Franchise Directory that the SBA maintains at [www.sba.gov/sba-franchise-directory](www.sba.gov/sba-franchise-directory) (the "Directory"). Generally, when a franchise brand is included in the Directory, it receives a Franchise Identifier Code. Effective January 1, 2018, the SBA incorporated into the SOP a requirement that business concerns operating as franchises must have their franchise "brand" listed in the Directory to be eligible to receive a Section 7(a) SBA Loan Program loan.

16.  The SOP relevant to the Section 7(a) SBA Loan Program specifically states: "If the Applicant's brand meets the FTC definition of a franchise, it must be on the Directory in order to obtain SBA financing." *See* franchise sections of SBA SOP 50 10 5(K) (Subpart B, Chapter 2, Paragraph II.D.8.b).

17.  Before the Revoked Affiliation Rule, the reference to the Directory had never before appeared in SBA regulations published through notice-and-comment rulemaking.

### *The CARES Act and Paycheck Protection Program*

18.  The CARES Act amended 15 U.S.C. § 636(a) to establish the Temporary PPP Loan Program to assist small businesses nationwide adversely affected by the COVID-19 emergency. The Temporary PPP Loan Program permits the SBA—on a one-time basis during the period April 3, 2020 through June 30, 2020—to guarantee and forgive 100 percent of loans made by SBA approved lenders pursuant to the program if certain eligibility requirements are

5

met.  The eligibility requirements for PPP loans set forth in the CARES Act are: (a) having fewer than 500 employees; (b) being in operation on February 15, 2020; and (c) having employees or independent contractors that the employer paid.  15 U.S.C. § 636(a)(36) 36)(D)(i), (F)(ii)(II).

19. Since enactment of the CARES Act, the SBA has issued several interim rules to implement the Temporary PPP Loan Program, as well as informal guidance to borrowers and lenders regarding the program.  The SBA issued its first interim rule on April 1, 2020 (the "First PPP Rule").  The First PPP Rule was subsequently published in the Federal Register on April 15, 2020.  85 Fed. Reg. 20811 (Apr. 15, 2020).  In the First PPP Rule, the SBA confirmed that the Temporary PPP Loan Program would be implemented on a "first come, first served basis" until funds are exhausted.  *Id.* at 20813.

20. On April 28, 2020, the SBA promulgated the Interim Final Rule entitled "Business Loan Program Temporary Changes; Paycheck Protection Program-Requirements Promissory Notes, Authorizations, Affiliation, and Eligibility," 85 Fed. Reg. 23450 (Apr. 28, 2020) (the "April 28 Interim Rule").  Before its publication in the Federal Register, the SBA had posted a pre-publication version of the April 28 Interim Rule on April 24, 2020 at https://home.treasury.gov/policy-issues/cares/assistance-for-small-businesses.

21. The April 28 Interim Rule states that the policy objective of the Temporary PPP Loan Program is to make "PPP loans available to a broad segment of U.S. businesses." *Id*. at 7.  In keeping with this understanding, the SBA stated that a "business that is otherwise eligible for a PPP Loan is not rendered ineligible due to its receipt of legal gaming revenues, and 13 CFR 120.110(g) is inapplicable to PPP loans." *Id*.  Similarly, the SBA determined that declaring the general ineligibility of government-owned entities under 13 CFR 120.110(j) to be "inapplicable to PPP loans" is "appropriate to effectuate the purposes of the CARES Act."  *Id*.

*The JANI-KING® Franchise System*

22.     The "JANI-KING® Franchise System" is a commercial cleaning service that consists of three tiers: (a) Plaintiff JKF, The JANI-KING® Franchisor, (b) JANI-KING® Master Franchises (such as Plaintiff Ohio Services, The Ohio JANI-KING® Master Franchise), and (c) approximately 5,600 "JANI-KING® Unit Franchisees" (such as Plaintiff A and A Enterprises, The Tri-State JANI-KING® Unit Franchisee). (Declaration of Paul Meister ("Meister Decl.") ¶ 2). The JANI-KING® Franchisor licenses trademarks (the "Proprietary JANI-KING® Trademarks") and other intellectual property owned by The JANI-KING® Trademark Owner to 87 JANI-KING® Master Franchises nationwide pursuant to a standard form JANI-KING® Master Franchise Agreement. (Declaration of Sean Ayres ("Ayres Decl.") ¶ 3, Ex. A).

23.     The franchise relationship between each JANI-KING® Master Franchise in the United States and its JANI-KING® Unit Franchisees is the subject of a standard form written agreement (the "JANI-KING® Unit Franchise Agreement"). (Ayres Decl. ¶ 5, Ex. B; Second Declaration of Joseph S. Carollo ("2d Carollo Decl.") ¶ 4, Ex. 1); Declaration of Jerry A. Snyder ("Snyder Decl.") ¶ 3, Ex. A).

24.     The JANI-KING® Master Franchise Agreements and the JANI-KING® Unit Franchise Agreements (collectively, the "JANI-KING® Franchise Agreements") require each franchisee to comply with the brand standards of the JANI-KING® Trademark Owner (Plaintiff Jani-King International) for the right to be licensed to use the Proprietary JANI-KING® Trademarks and other intellectual property, including trade secrets, upon which the JANI-KING® Franchise System is based (the "JANI-KING® Brand Standards"). (Ayres Decl. ¶ 7; 2d Carollo Decl. ¶ 5, Ex. 1).

7

25. Each JANI-KING® Master Franchise, including The Ohio JANI-KING® Master Franchise, is a franchisee within the exclusive territory to which it purchased the rights. In its exclusive territory, each JANI-KING® Master Franchise is also a franchisor of independently owned commercial cleaning service companies (the JANI-KING® Unit Franchisees) to which it sublicenses certain proprietary JANI-KING® Trademarks for operation of their franchised businesses. (Ayres Decl. ¶ 8; 2d Carollo Decl. ¶ 1, Ex. 1).

26. Each member of the JANI-KING® Franchise System—The JANI-KING® Franchisor, the 87 JANI-KING® Master Franchises, and the approximately 5,600 JANI-KING® Unit Franchisees—has fewer than 500 employees, has the right to profit from its efforts, and bears the risk of loss commensurate with ownership. (Ayres Decl. ¶ 9; 2d Carollo Decl. ¶ 1, Ex. 1; Snyder Decl. ¶ 5, Ex. A).

27. In the JANI-KING® Franchise System, The JANI-KING® Franchisor provides support services necessary to ensure that the JANI-KING® Master Franchises and each of their JANI-KING® Unit Franchisees operate their commercial cleaning franchises in accordance with the JANI-KING® Brand Standards. The support services that the JANI-KING® Master Franchise Agreements obligate The JANI-KING® Franchisor to provide to the JANI-KING® Master Franchises include the following: (a) registering and maintaining trademarks and service marks, (b) providing initial training on how to operate a JANI-KING® Master Franchise, (c) providing branded supplies and marketing materials, manuals, and training aids, (d) offering technical assistance and support services, and (e) advertising and marketing the JANI-KING® brand. (Ayres Decl. ¶ 10, Ex. A). The support services that the JANI-KING® Unit Franchise Agreements obligate the JANI-KING® Master Franchises to provide to the JANI-KING® Unit Franchisees include provision of: (a) confidential manuals, training aids, and other pertinent

8

information concerning the JANI-KING® Brand Standards, (b) initial and ongoing training, recommendations, and advice regarding operation of their commercial cleaning franchises in accordance with the JANI-KING® Brand Standards, and (c) promotional materials, sales and service manuals, equipment, and other materials necessary to operate their commercial cleaning franchises in accordance with the JANI-KING® Brand Standards. (Ayres Decl. ¶ 10; 2d Carollo Decl. ¶ 7, Ex. 1; Snyder Decl. ¶ 3, Ex. A).

28. Pursuant to the JANI-KING® Master Franchise Agreements, each JANI-KING® Master Franchise handles the billing and collection of accounts for which the JANI-KING® Unit Franchisees perform commercial cleaning services and remits such collections to each franchisee, minus a deduction for any royalties or other charges that the franchisee owes to the JANI-KING® Master Franchise. This arrangement improves the cash flow of the JANI-KING® Unit Franchisees because they actually receive payment from the JANI-KING® Master Franchise once the account payments are due—before many of the invoices are even collected. Ultimately, most JANI-KING® Unit Franchisees bear the risk of non-payment because most JANI-KING® Master Franchises "charge back" the franchisees for previously advanced payments if the customer has not paid the invoiced amount within a certain period of time. Pursuant to a program developed by The JANI-KING® Franchisor, however, some JANI-KING® Master Franchises offer the JANI-KING® Unit Franchisees a "no charge back" guarantee—effectively, a form of insurance—in exchange for payment of a premium. Under the "no charge back" guarantee, JANI-KING® Master Franchises thus act as the insurer that individual customers will not pay amounts invoiced on behalf of the JANI-KING® Unit Franchisees. JANI-KING® Unit Franchisees with this form of "insurance" mitigate, but do not

eliminate, their risk of loss.  Individual JANI-KING® Unit Franchisees without such "insurance" bear the risk of loss of non-payment.  (Ayres Decl. ¶ 11; 2d Carollo Decl. ¶ 8, Ex. 1).

### *The SBA's Prior Refusals to List JANI-KING® Franchise Agreements in the Directory*

29.     The SBA rejected listing the JANI-KING® Franchise Agreements in the Directory in 2015 and denied subsequent attempts by members of the JANI-KING® Franchise System to list JANI-KING® Franchise Agreements in the Directory.  (Ayres Decl. ¶ 12).

30.     Plaintiffs understand that the SBA rejected the JANI-KING® Franchise Agreements for listing in the Directory either because the SBA considers members of the JANI-KING® Franchise System to be "passive businesses" ineligible for the Section 7(a) SBA Loan Program under 13 C.F.R. § 120.110(c) or because the SBA considers members of the JANI-KING® Franchise System to be "affiliated" with one another.  (Ayres Decl. ¶ 13).

### *Ohio Services PPP Loan Application*

31.     Plaintiff Ohio Services is a JANI-KING® Master Franchise with 18 full-time employees owned 51% by Pamela Carollo and 49% by her husband, Joe Carollo, President of Ohio Services.  (2d Carollo Decl. ¶ 1).  On April 3, 2020, Ohio Services submitted an application for a PPP loan to a local lender with which Ohio Services has a longstanding banking relationship, Erie Bank.  (2d Carollo Decl. ¶ 13, Ex. 3).

32.     In response to Ohio Services' PPP loan application, on April 6, 2020, Mr. Carollo received an email from Wes Gillespie, President of Erie Bank, stating as follows:

> Joe, please call me first thing in the morning.  I believe we have a problem with your PPP application.  The lender's application ask[]s if the business is a Franchise, if so it must be registered and listed in the SBA Franchise Directory with a Franchise Identification code, if the answer is no, the business may be ineligible for the PPP program.  Is Jani-King listed in the SBA Franchise directory?

(2d Carollo Decl. ¶ 14, Ex. A).

33.     The following day, April 7, 2020, Mr. Carollo spoke with Mr. Gillespie about Ohio Services' PPP loan application.  During that conversation, Mr. Carollo informed Mr. Gillespie that the JANI-KING® franchise agreement was not listed in the SBA Franchise Directory but that JKF was seeking to have it listed.  Shortly thereafter, Mr. Carollo received an email from Mr. Gillespie stating in part:

> Joe, I am sorry, both our 3rd party processor as well as SBA told us that as the current program is written, you would have to be on the SBA Franchise list or we can't submit the application.  I'm really sorry, but it's out of my control on my end because it's right on the lender's certified application that we have to submit for the loan guarantee.  I'm trying to figure out a way to do it, but don't see an option right now.  I would have called you but on a Zoom meeting right now, I can call you later.

(2d Carollo Decl. ¶ 15, Ex. 5).

34.     On April 24, 2020, Ohio Services resubmitted its previously rejected application for a PPP loan.  (2d Carollo Decl. ¶ 16).

35.     On April 29, 2020 Ohio Services was notified by its lender that its PPP loan application had been approved and would be funded the week of May 4, 2020.  Ohio Services has received no indication from its lender as to whether the SBA will take the position that its PPP loan will be ineligible for loan forgiveness.  (2d Carollo Decl. ¶ 16).

### *The Tri-State JANI-KING® Unit Franchisee's PPP Loan Application*

36.     Plaintiff A and A Enterprises, The Tri-State JANI-KING® Unit Franchisee, owns seven different JANI-KING® Unit Franchises in Louisiana, Mississippi, and Alabama.  Jerry A. Snyder, President of The Tri-State JANI-KING® Unit Franchisee, was concerned about not laying off any of the franchisee's approximately 20 full-time and 80 part-time employees.  The loss of an employee would harm the employee during this time of increasing unemployment and would also harm The Tri-State JANI-KING® Unit Franchisee because of the costs associated

with training people and the loss of trusted employees. The Tri-State JANI-KING® Unit Franchisee has experienced a 35 to 40 percent decrease in hours worked during the COVID-19 pandemic. Because there is not enough work to keep its employees paid, Mr. Snyder has funded approximately $20,000 of payroll costs out of his own pocket. (Snyder Decl. ¶¶ 5-8).

37. On April 3, 2020, Mr. Snyder submitted a Borrower Application Form under the Temporary PPP Loan Program to Community Bank of Mississippi, a lender approved by the SBA. If its application for a PPP loan was approved, The Tri-State JANI-KING® Unit Franchisee intended to use the proceeds to keep its employees paid at the amounts they were paid before the pandemic. (Snyder Decl.¶ 10).

38. The Tri-State JANI-KING® Unit Franchisee's application for a PPP loan closed and was funded by the lender on April 9. 2020. The Tri-State JANI-KING® Unit Franchisee received a loan of $143,000 on April 17, 2020. After the closing, however, a representative of the lender told The Tri-State JANI-KING® Unit Franchisee's that the SBA had notified it that the SBA would deny forgiveness of the loan under the Temporary PPP Loan Program because The Tri-State JANI-KING® Unit Franchisee's franchise agreement is not listed in the Directory. Based on this conversation and fearful of being accused of having wrongfully received the funds, the Tri-State JANI-KING® Unit Franchisee returned the much needed funds to the lender. After returning the funds, The Tri-State JANI-KING® Unit Franchisee continued funding payroll costs with Mr. Snyder's personal funds. (Snyder Decl. ¶ 11).

39. On April 28, 2020, The Tri-State JANI-KING® Unit Franchisee resubmitted its PPP loan application. Thereafter, The Tri-State JANI-KING® Unit Franchisee told the SBA local representatives that a JANI-KING® Unit Franchise Agreement similar in form and content to its franchise agreement had recently been approved for listing in the SBA Franchise Directory.

On April 30, 2020, The Tri-State JANI-KING® Unit Franchisee was notified by its lender that its PPP loan application had been approved, and The Tri-State JANI-KING® Unit Franchisee received funding on April 30, 2020. (Snyder Decl. ¶ 12).

40. That following day, May 1, 2020, The Tri-State JANI-KING® Unit Franchisee was notified by its lender that the SBA was taking the position that the PPP loan was ineligible for loan forgiveness. (Snyder Decl. ¶ 13).

### *The D.C. JANI-KING® Master Franchise's PPP Loan Application*

41. On April 2, 2020, the JANI-KING® Master Franchise in the Washington, D.C. area—Jani-King of Washington, D.C., Inc. ("The D.C. JANI-KING® Master Franchise")—sought to have the JANI-KING® Franchise Agreement that it uses with its JANI-KING® Unit Franchisees listed in the Directory. The JANI-KING® Unit Franchise Agreement used by The D.C. JANI-KING® Master Franchise is the same form that all JANI-KING® Master Franchises nationwide use with their JANI-KING® Unit Franchisees. (Ayres Decl. ¶ 14).

42. On April 8, 2020, the SBA's Chief Franchise Counsel notified the individual who had submitted the listing request on behalf of The D.C. JANI-KING® Master Franchise that its agreement was ineligible to be listed in the Directory and that its JANI-KING® Unit Franchisees were ineligible for loans under the Temporary PPP Loan Program. (Ayres Decl. ¶ 15).

43. On April 27, 2020, the SBA sent an email stating the JANI-KING® Unit Franchise Agreement submitted by The D.C. JANI-KING® Master Franchise would be listed in the Directory for purposes of the Temporary PPP Loan Program only. (Ayres Decl. ¶ 16, Ex. C).

### *Harm to Plaintiffs and the JANI-KING® Franchise System*

44. The SBA's administration of the Temporary PPP Loan Program and the Section 7(a) SBA Loan Program threatens Jani-King International and the entire JANI-KING® Franchise System with irreparable harm. (Meister Decl. ¶¶ 5-6).

13

45. The SBA's administration of the Temporary PPP Loan Program and the Section 7(a) SBA Loan Program threatens JKF and the entire JANI-KING® Franchise System with irreparable harm.  (Ayres Decl. ¶¶ 17-18).

46. The SBA's conduct threatens Plaintiff Ohio Services with irreparable harm. (Carollo Decl. ¶¶ 19-20).

47. The SBA's conduct threatens Plaintiff A and A Enterprises with irreparable harm, including potential closure of one or more of its locations.  (Snyder Decl. ¶¶ 14-17).

Dated:  May 4, 2020

Respectfully submitted,

By: */s/ Michael J. Lockerby*
      Counsel

Michael J. Lockerby (D.C. Bar No. 502987)
Frank S. Murray, Jr. (D.C. Bar No. 452063)
Jack G. Haake (D.C. Bar No. 1024798)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Sixth Floor
Washington, D.C. 20007-5143
(202) 672-5300
(202) 672-5399 (fax)

Peter L. Loh (admitted *pro hac vice*)
FOLEY & LARDNER LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
(214) 999-3000
(214) 999-4667 (fax)

*Counsel for Plaintiffs,*
*Jani-King International, Inc.,*
*Jani-King Franchising, Inc.,*
*Ohio Services–CLE, LLC*
*dba Jani-King of Cleveland, and*
*A and A Enterprises dba Jani-King*