**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JANI-KING INTERNATIONAL, INC., *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:20-cv-0989 (TNM) |
| UNITED STATES SMALL BUSINESS ADMINISTRATION, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Dated:  May 11, 2020

JOSEPH H. HUNT
Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director

ERIC WOMACK
Assistant Director

JAMES J. GILLIGAN
Special Litigation Counsel

INDRANEEL SUR
CORMAC EARLY
Trial Attorneys

Federal Programs Branch,
Civil Division
United States Department of Justice
P.O. Box 883
Washington, D.C. 20044
Telephone:  (202) 616-8448
E-mail:      Indraneel.Sur@usdoj.gov

*Counsel for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 4

    I.     THIS ACTION DOES NOT PRESENT A LIVE CASE OR CONTROVERSY. ............. 4

         A.     Plaintiffs Have Received PPP Financing, and Are Suffering No Injury from
              Denials of PPP Loans. ........................................................................................... 4

         B.     Plaintiffs' Claims of Possible Future Injuries Due to the SBA's Administration of
              the PPP and Section 7(a) Loan Programs Are Too Speculative and Conjectural to
              Support Standing. ................................................................................................. 10

         C.     Plaintiffs' Claim of "Procedural Injury" Also Fails. ........................................... 14

    II.    PLAINTIFFS LACK A CAUSE OF ACTION ALLOWING THEM TO SUE ............. 14

         A.     The APA Does Not Allow Plaintiffs to Launch a Wholesale Attack on the SBA's
              Administration of Its Loan Programs. .................................................................. 15

         B.     The Declaratory Judgment Act Does Not Create a Cause of Action. .................... 16

    III.   PLAINTIFFS' CLAIMS FAIL ON THE MERITS. ......................................................... 17

         A.     The SBA's Use of the Directory as an Administrative Tool in the Loan
              Application Process Does Not Impose New Eligibility Requirements or Otherwise
              Constitute a Legislative Rule. .............................................................................. 17

         B.     SBA's Application to Jani-King Entities of Its Rule Against Loans to Passive
              Businesses Owned by Developers Properly Adheres To The Regulation's Text in
              Light of Its Context. ............................................................................................. 20

         C.     The APA Did Not Obligate SBA to Waive Its Pre-Existing Eligibility Rules
              Wholesale Rather Than Waiving Them Incrementally. ....................................... 25

    IV.   A PERMANENT INJUNCTION WOULD BE INAPPROPRIATE IN THIS CASE IN
         ANY EVENT. ........................................................................................................... 27

CONCLUSION ................................................................................................................. 28

# TABLE OF AUTHORITIES

## Other Authorities

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ............................................................................................... 8

*Ali v. Rumsfeld*,
   649 F.3d 762 (D.C. Cir. 2011) ............................................................................ 17

*Am. Hosp. Ass'n v. Bowen*,
   834 F.2d 1037 (D.C. Cir. 1987) .......................................................................... 18

*Am. Library Ass'n v. FCC*,
   401 F.3d 489 (D.C. Cir. 2005) ............................................................................ 12

*Am. Tunaboat Ass'n v. Ross*,
   391 F. Supp. 3d 98 (D.D.C. 2019) ...................................................................... 24

*Arizonans for Official English v. Arizona*,
   520 U.S. 43 (1997) ................................................................................................. 6

*Aulenback, Inc. v. Fed. Hwy. Admin.*,
   103 F.3d 156 (D.C. Cir. 1997) ............................................................................ 18

*Barker v. Conroy*,
   921 F.3d 1118 (D.C. Cir. 2019) .......................................................................... 12

*Bryant v. Yellen*,
   447 U.S. 352 (1980) ............................................................................................. 13

*C & E Servs., Inc. of Wash v. D.C. Water & Sewer Auth.*,
   310 F.3d 197 (D.C. Cir. 2002) ............................................................................ 17

*California v. Trump*,
   2020 WL 1643858 (D.D.C. Apr. 2, 2020) .......................................................... 14

*Carbon Sequestration Council v. EPA*,
   787 F.3d 1129 (D.C. Cir. 2015) .......................................................................... 11

*Carpenters Indus. Council v. Zinke*,
   854 F.3d 1 (D.C. Cir. 2017) ................................................................................ 13

*CC Distribs., Inc. v. United States*,
   883 F.2d 146 (D.C. Cir. 1989) ...................................................................... 10, 12

* *City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ............................................................................................... 28

*Columbia Rope Co. v. West*,
  142 F.3d 1313 (D.C. Cir. 1998) ................................................................. 8

\* *Conservation Force, Inc. v. Jewell*,
  733 F.3d 1200 (D.C. Cir. 2013) ................................................................. 6

*Council v. Babbitt*,
  181 F.3d 1333 (D.C. Cir. 1999) ................................................................. 11

*Davis v. Passman*,
  442 U.S. 228 (1979) ................................................................................... 16

*Deal v. United States*,
  508 U.S. 129 (1993) ................................................................................... 23

*Defenders of Wildlife*,
  505 U.S. ...................................................................................................... 11

\* *DSE, Inc. v. United States*,
  169 F.3d 21 (D.C. Cir. 1999) ............................................................... 24, 25

*F.T.C. v. Accusearch Inc.*,
  570 F.3d 1187 (10th Cir. 2009) ................................................................. 21

*F.T.C. v. Tarriff*,
  584 F.3d 1088 (D.C. Cir. 2009) ................................................................. 21

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) ................................................................................... 28

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) ................................................................... 10

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
  460 F.3d 13 (D.C. Cir. 2006) ..................................................................... 15

*Grunewald v. Jarvis*,
  776 F.3d 893 (D.C. Cir. 2015) ................................................................... 27

*Hardaway v. Dist. of Columbia Housing Auth.*,
  843 F.3d 973, (D.C. Cir. 2016) .................................................................. 12

*I.N.S. v. Orlando Ventura*,
  537 U.S. 12 (2002) ..................................................................................... 28

*In Re Sealed Case*,
  737 F.2d 94 (D.C. Cir. 1984) ..................................................................... 23

*Kisor v. Wilkie,*
139 S. Ct. 2400 (2019) ............................................................................ 23, 24

*Ks. Corp. Comm'n v. Fed. Energy Reg. Comm'n,*
881 F.3d 924 (D.C. Cir. 2018) ............................................................... 14

*Leonard v. U.S. Dep't of,*
Justice, 598 Fed. App'x 9 (D.C. Cir. 2015) ........................................ 8, 10

\* *Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ................................................................. 11, 12, 13

*Lujan v. Nat'l Wildlife Federation,*
497 U.S. 871 (1990) ............................................................................... 15

*MercExchange, LLC,*
547 U.S. 388 (2006) ............................................................................... 27

*Mobil Oil Exploration & Producing Se., Inc. v. United Distribution Cos.,*
498 U.S. 211 (1991) ............................................................................... 27

*Morton v. Ruiz,*
415 U.S. 199 (1974) ............................................................................... 26

*Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983) ........................................................................... 25, 26

*Nat'l Ass'n of Home Builders v. EPA,*
667 F.3d 6 (D.C. Cir. 2011) ................................................................. 14

*Nat'l Wildlife Fed'n v. United States,*
626 f.2d 917 (D.C. Cir. 1980) ............................................................... 8

*National Mining Association v. McCarthy,*
758 F.3d 243 (D.C. Cir. 2014) ............................................................. 19

*Norman v. Reed,*
502 U.S. 279 (1992) ............................................................................... 9

*Norton v. S. Utah Wilderness Alliance,*
542 U.S. 55 (2004) ................................................................................. 15

*Ord v. District of Columbia,*
587 F.3d 1136 (D.C. Cir. 2009) ............................................................. 8

*People for the Ethical Treatment of Animals v. Gittens,*
396 F.3d 416 (D.C. Cir. 2005) ............................................................... 8

\* *Pharmachemie B.V. v. Barr Labs., Inc.*,
   276 F.3d 627 (D.C. Cir. 2002) ............................................................... 6, 8, 9

*Pickus v. U.S. Bd. of Parole*,
   507 F.2d 1107 (D.C. Cir. 1974) ............................................................. 19, 20

*Planned Parenthood of Wisc., Inc. v. Azar*,
   942 F.3d 512 (D.C. Cir. 2019) ................................................................. 7, 8

*Saga Broad. Corp. v. FCC*,
   38 Fed. App'x 8 (D.C. Cir. 2002) ................................................................ 11

*Skelly Oil Co. v. Phillips Petroleum Co.*,
   339 U.S. 667 (1950) .................................................................................... 16

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) .............................................................................. 12, 14

*U.S. Dep't of the Interior*,
   410 F. Supp. 3d 39 (D.D.C. 2019) ............................................................. 23

*United States v. Imperial Irrigation Dist.*,
   595 F.2d 525 (9th Cir. 1979) ..................................................................... 13

*Utility Air Regulatory Grp. v. EPA*,
   573 U.S. 302 (2014) .................................................................................... 26

*Weinstein v. Bradford*,
   423 U.S. 147 (1975) ............................................................................... 7, 8, 9

*Worth v. Jackson*,
   451 F.3d 854 (D.C. Cir. 2006) ................................................................... 12

## **Statutes**

5 U.S.C. § 702 ................................................................................................ 15

5 U.S.C. § 704 ................................................................................................ 15

15 U.S.C. § 634(b) ...................................................................................... 4, 27

15 U.S.C. § 636 ................................................................................................ 5

28 U.S.C. § 2201 ....................................................................................... 15, 17

## **Regulations**

13 C.F. R. § 121.301(f)(5) ........................................................................ 18, 20

13 C.F.R. § 120.110 ............................................................................... *passim*

Interim Final Rule, *Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20811(Apr. 15, 2020) ........................................................................................ 10

**INTRODUCTION**

There is no denying that the Jani-King Franchise System and the Small Business Administration ("SBA" or "Agency") have had differences for some time over two matters of SBA loan administration and policy—first, the SBA's application of its affiliation rules, and second, the Agency's interpretation of its rule against loans to "[p]assive businesses owned by developers[.]"  But in attempting to bring these policy disputes before this Court for resolution, Plaintiffs forget that Article III tribunals are not roving commissions assigned to pronounce on what the law would be on hypothetical facts.  They have also disregarded the reality that the Administrative Procedure Act, the vehicle through which they purport to air their grievances against the SBA, does not allow them to seek wholesale changes to SBA loan program by judicial decree, rather than challenge particular SBA actions that have caused them harm.

Both of these fundamental principles are fatal to Plaintiffs' case.  Plaintiffs' own submissions in support of their motion for summary judgment make it even clearer now than before that they lack Article III standing to contest either the SBA's use of its Franchise Directory in the loan-administration process, or the Agency's interpretation of its rule against loans to passive businesses.  As Plaintiffs acknowledge, all three of the Plaintiffs who sought PPP loans have now received them.  They are suffering no denial of PPP financial assistance because of the challenged use of the Directory, or because of SBA's application of the passive-business rule.  Plaintiffs nevertheless claim to face an "imminent" economic injury of a different kind—denial of section 7(a) loans they may seek in the future.  But they do not describe any concrete plans of their own to seek section 7(a) loans at this time, and so the prospect that the SBA might deny them eligibility to apply for such loans in the indeterminate future is too remote and hypothetical to support a finding of "imminent" Article III injury.  And insofar as Plaintiffs

claim to suffer an indirect injury because of loan assistance the SBA has denied, or may deny, to other Jani-King business entities not parties to this case, Plaintiffs lack third-party standing to litigate the rights of these absent parties, as Defendants have already shown.

Even if Plaintiffs' lack of standing did not bar adjudication of their claims, they would still lack a valid cause of action through which to present them.  They purport principally to seek relief under the APA, but APA review is limited to discrete agency actions.  It does not permit a court to entertain broad programmatic attacks seeking wholesale changes to an agency program by decree.  Yet that is precisely what Plaintiffs seek here.  Now that the three Plaintiffs who applied for PPP loans have obtained them, Plaintiffs point to no specific denial of financial assistance to any one of them that they seek to rectify.  Instead they ask the Court to assume a supervisory role, directing the SBA how it should administer the loan application process, and how it should interpret its rules, when franchised businesses of any kind seek to apply for SBA small-business loans.  That is not a viable APA claim.  Plaintiffs also try, secondarily, to maintain suit under the Declaratory Judgment Act.  But the Declaratory Judgment Act furnishes only a remedy, not an independent cause of action in its own right.

Even if Plaintiffs could overcome Article III requirements, or state the elements of an APA claim, their contentions still fail on the merits, as Defendants have shown.  *See* Corrected Mem. of Pts. & Auths. in Support of Defs.' Mot. for Summ. J. at 25-40 (Doc. 19) ("Defs.' SJ Mem.").  Plaintiffs insist that the instructions for use of the Directory contained in SBA Standard Operating Procedure ("SOP") 50-10-5(K) are legislative rules, improperly issued without notice-and-comment procedures, because the SOP's instructions impose "new substantive eligibility requirements" on applicants seeking SBA loans.  But Plaintiffs never describe any such "new substantive eligibility requirements."  Rather, the Directory is no more than an efficient means of

2

communicating to lenders which franchises the SBA has determined are eligible to apply for section 7(a) and now PPP loans, under the same substantive criteria that the Agency would apply regardless of whether the SBA used the Directory to summarize and communicate those decisions or not.  Accordingly, the SOP's instructions regarding use of the Directory are valid procedural rules that the Agency could adopt without notice-and-comment procedures.

Plaintiffs' challenge to the SBA's construction of its rule against loans to passive businesses owned by developers, 13 C.F.R. § 120.110(c), also fails.  Plaintiffs maintain that the term "developer" as used in the rule can *only* be read to apply to real estate developers, not Jani-King master franchises, but they offer no support for that restrictive construction.  As Defendants have shown, the term developer applies in context to recruiters of new business units within a franchise system, an essential function of Jani-King master franchises.  Plaintiffs also contest the SBA's conclusion that Jani-King master franchises are "passive" businesses covered by the rule, citing certain services they provide to their unit franchises.  But all customer services offered under the Jani-King brand are performed by unit franchises, and master franchises earn their income from royalties and other fees paid by unit franchises.  Those features of the franchise at issue here confirm that the SBA's past determinations regarding the passive nature of Jani-King's master franchises were correct.  At the very least, the Agency's prior assessments were reasonable decisions consistent with its rule and implementing guidance, and cannot be discarded as arbitrary and capricious.  Nor did the Administrative Procedure Act (APA) require the SBA to waive application of 13 C.F.R. § 120.110(c) under the PPP simply because it waived application of the exclusions for other categories of businesses under subsections 120.110(g) and (j).

In any event, Plaintiffs are not entitled to injunctive relief. There is no need at this stage of the case to address the prohibition on such relief in 15 U.S.C. § 634(b)(1), because Plaintiffs have not met the traditional criteria for permanent injunctive relief, nor shown why relief should not be limited here to a remand to the Agency, the ordinary relief accorded under the APA.

For these and the reasons discussed below, and the reasons stated in Defendants' initial summary judgment brief, Plaintiffs' motion for summary judgment should be denied, Defendants' motion granted, and judgment entered for Defendants as a matter of law.

## ARGUMENT

## I.   THIS ACTION DOES NOT PRESENT A LIVE CASE OR CONTROVERSY.

### A.   Plaintiffs Have Received PPP Financing, and Are Suffering No Injury from Denials of PPP Loans.

Defendants have already shown that none of the Plaintiffs to this case is suffering an injury in fact attributable to the SBA's use of the Directory in administering the PPP loan process, or to the agency's interpretation or application of its passive-business rule under 13 C.F.R. § 120.110(c). All three entities that sought PPP loans have now received them; and the fourth, Jani-King Franchising, Inc., never sought a PPP loan in the first place. Defs.' SJ Mem. at 19-23. Thus, for want of a justiciable Article III case or controversy, this case must be dismissed. *See id.* at 17-18 (and cases cited therein).

Plaintiffs' summary judgment submissions confirm the nonjusticiability of their claims. They acknowledge that each of the Plaintiffs that applied for a PPP loan, Jani-King International, Inc., Ohio Services-CLE, LLC, and A and A Enterprises, LLC, succeeded in obtaining the desired financing. *See* Am. Compl. ¶ 20 (acknowledging that on April 13, 2020, three days before bringing this action, Jani-King International "did receive funding for a loan under the Temporary PPP Loan Program"); 2d Carollo Decl. ¶ 16 (Doc. 17-5) ("On April 29, 2020 Ohio

4

Services was notified by its lender that its PPP loan application had been approved and would be funded the week of May 4, 2020."); Snyder Decl. ¶ 12 (Doc. 17-6) ("A and A Enterprises was notified by its lender that its PPP loan application had been approved, and A and A Enterprises received funding on April 30, 2020.").  Plaintiffs' admissions are consistent with SBA's records. *See* 1st Olear Decl. ¶¶ 77-79 (Doc. 16-1).  Plaintiff Jani-King Franchising still does not allege or establish that it sought or was denied a PPP loan.  *See* Defs.' SJ Mem. at 21; *see generally* Ayres Decl. (Doc. 17-4).

Defendants remark that the SBA played no role in the decisions by the lenders for Jani-King International, Ohio Services, and A and A Enterprises to approve their applications for PPP loans.  Prospective borrowers submit PPP loan applications to SBA participating lenders, known as "delegated" lenders, who are authorized to make SBA-guaranteed loans in accordance with SBA rules, policies, and procedures, and it is the private lenders who process the loan applications.  2d Olear Decl. ¶¶ 4-5.  SBA does not review, approve, or deny PPP loan applications, or direct delegated lenders to approve or deny individual PPP loan applications.  *Id.* ¶ 6.  Thus, the SBA had no involvement with the independent determinations reached by Plaintiffs' lenders to approve them for PPP financing.  *See id.* ¶¶ 4-7.[1]

---

[1] In April 2020 the SBA determined that, consistent with the CARES Act's waiver of SBA affiliation rules for purposes of the PPP, *see* 15 U.S.C. § 636(a)(36)(D)(iv), the SBA would not consider affiliation or control issues when reviewing requests for inclusion on the Directory for purposes of seeking PPP loans.  1st Olear Decl. ¶ 70; *see* 2d Olear Decl. ¶¶ 10-11.  Accordingly, as the agency decided in the case of Jani-King of DC, 2d Olear Decl. ¶ 10, the SBA approved the franchise agreement under which A and A Enterprises operates for inclusion in the Directory, making it possible for A and A Enterprises to apply for and obtain a PPP loan.  SBA reached that decision through application of its across-the-board policy, and not on any special consideration given to A and A Enterprises or the fact that it is a Plaintiff in this case.  2d Olear Decl. ¶¶ 4-7, 10-12.

Accordingly, because Jani-King International received a PPP loan three days before this suit was filed, *see* Am. Compl. ¶ 20; Compl. (Doc. 1) (filed April 16, 2020), and because Jani-King Franchising never sought such a loan, neither of those Plaintiffs has standing to contest the SBA's use of the Directory in the PPP loan-application process, or SBA's interpretation of its rule against loans to passive businesses.  *See* Defs.' SJ Mem. at 19-21.  And even assuming that Plaintiffs Ohio Services and A and A Enterprises had standing to sue when this case was first filed, they mooted their claims regarding the PPP loans when they decided voluntarily to accept their PPP loans.  *See Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (in general a case becomes moot when "a party has already obtained all the relief it has sought") (cleaned up).  As a result, no live controversy remains for this Court to decide, and Plaintiffs' claims should be dismissed.  *See id*; *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (state employee mooted her challenge to state law when she voluntarily resigned to accept private employment).[2]

Plaintiffs nevertheless contend that so far as their claims concern the PPP they are not moot, because in Plaintiffs' view they are capable of repetition, yet evade review.  Mem. of Pts. & Auths. in Support of Pls.' Mot. for Summ. J. (ECF No. 17-1) ("Pls.' SJ Mem.") at 22.  That is incorrect.  The exception to mootness for controversies that are "capable of repetition, yet evading review," is limited to situations where two elements are present:  "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again."  *Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 632–33 (D.C. Cir.

---

[2] As Defendants have also shown, none of the Plaintiffs to this action has third-party standing to assert claims on behalf of other Jani-King master or unit franchises, not before the Court, that may have been or may be denied PPP financing.  Defs.' SJ Mem. at 23-25.

2002) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam)); *see also Planned Parenthood of Wisc., Inc. v. Azar*, 942 F.3d 512, 517 (D.C. Cir. 2019).  Plaintiffs do not meet either requirement.

Plaintiffs assert that "the SBA continues to maintain the position that at least some Plaintiffs are not entitled to loan forgiveness under the Temporary PPP Loan Program[.]"  Pls.' SJ Mem. at 22.  That assertion presupposes that SBA will deny some or all of the Plaintiffs loan forgiveness (under section 1106 of the CARES Act), because their franchise agreements were not listed in the Directory, or because the SBA considers them to be passive businesses.  But this assertion fails as a matter of fact and law to satisfy the capable-of-repetition requirement.

As a factual matter, Plaintiffs offer no support for the prediction that the SBA will deny at least some of the Plaintiffs loan forgiveness, other than a hearsay statement in Mr. Snyder's declaration that he was told by the lender for A and A Enterprises that "the SBA was taking the position that the PPP loan to A and A Enterprises was ineligible for loan forgiveness."  Snyder Decl. ¶ 13 (Doc. 17-6).  That statement is not only hearsay; it is wrong.

Section 1106 of the CARES Act provides that eligible recipients of PPP loans may, upon application, be eligible for forgiveness of indebtedness on their PPP loans in an amount up to the principal amount of the financing made available under their loans.  No PPP borrowers will be eligible to apply for loan forgiveness, however, until the end of May 2020, and to date the SBA has not yet issued regulations or guidance addressing the criteria to be applied in determining whether PPP borrowers are eligible for loan forgiveness under section 1106.  *See* 2d Olear Decl. ¶¶ 26-27.  Nor has the agency determined as a matter of law or policy the criteria that would apply to decisions of that kind, much less made decisions regarding the eligibility of individual PPP borrowers to obtain loan forgiveness.  *Id.*  Indeed, if Plaintiffs were to file a new complaint

seeking to challenge SBA's theoretical application of its yet-to-be-written loan forgiveness regulations or guidance, that complaint would properly be dismissed not only for lack of Article III injury (*cf. Ord v. District of Columbia*, 587 F.3d 1136, 1140-41 (D.C. Cir. 2009)), but also prudential ripeness (*see generally Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

Thus, as a matter of law, Plaintiffs cannot satisfy the capable-of-repetition requirement, which demands a "*reasonable expectation* that the same complaining party will be subjected to the same action again" *Planned Parenthood of Wisc.,* 942 F.3d at 517 (quoting *Weinstein*, 423 U.S. at 149 (emphasis added) (cleaned up)).  As matters stand now, it is no more than speculation that the SBA will adopt rules, regulations, and policies implementing the loan-forgiveness provisions of the CARES Act, or apply them in such a fashion, so as to deny Plaintiffs' loan-forgiveness applications when submitted.  Speculation of that kind is not sufficient to breathe new life into a moot case.  *See Leonard v. U.S. Dep't of Justice*, 598 Fed. App'x 9, 10 (D.C. Cir. 2015) (citing *Columbia Rope Co. v. West*, 142 F.3d 1313, 1317 (D.C. Cir. 1998); *Nat'l Wildlife Fed'n v. United States*, 626 f.2d 917, 925 n.15 (D.C. Cir. 1980).

Moreover, under the capable-of-repetition prong, Plaintiffs must show a reasonable expectation that the "same complaining party" will be subject to the "same action" again, *Pharmachemie B.V.*, 276 F.3d at 633 (quoting *Weinstein*, 423 U.S. at 149).  "The action that must be repeatable is the 'precise controversy' between the parties."  *Planned Parenthood of Wisc.*, 942 F.3d at 517 (quoting *People for the Ethical Treatment of Animals v. Gittens*, 396 F.3d 416, 422 (D.C. Cir. 2005)).  "[T]he exception does not permit the adjudication *one* otherwise-moot case in anticipation of a *different* live one." *Id.*  Hence, Plaintiffs cannot continue to litigate a moot controversy about the receipt of PPP loans under section 1102 of the CARES Act in anticipation of a future controversy over forgiveness of PPP loans under section 1106.

Even if a decision to deny loan forgiveness to Plaintiffs were reasonably foreseeable, and could be considered the "same action" as refusing eligibility for loans, Plaintiffs nevertheless could not meet the evading-review requirement. To satisfy that prong of the exception, "the challenged action [must be] in its duration too short to be fully litigated prior to its cessation or expiration." *Pharmachemie B.V.*, 276 F.3d at 633 (quoting *Weinstein*, 423 U.S. at 149). But if the SBA denied applications by Plaintiffs for loan forgiveness, the challenged action would not cease or expire so long as the SBA adhered to its position and refused to approve Plaintiffs' loan-forgiveness requests. There is no reason to expect, therefore, that the duration of the challenged action in that scenario would be too short to be fully litigated.

Plaintiffs also contend that their claims concerning the PPP are capable of repetition yet evade review because "other members of the JANI-KING® Franchise System will likely apply for this short term program and can be denied benefits of the Temporary PPP Loan Program because of the SBA's implementation of its guidelines in violation of the APA." Pls.' SJ Mem. at 22-23. The capable-of-repetition exception requires, however, "that the same parties will engage in litigation over the same issues in the future." *Pharmachemie B.V.*, 276 F.3d at 633 (citing, *inter alia*, *Norman v. Reed*, 502 U.S. 279, 288 (1992)). Plaintiffs cannot invoke the exception based on conjecture that PPP loans may be or may have been denied to *other* Jani-King unit or master franchises that are not parties to this case. (Moreover, as discussed, Plaintiffs lack third-party standing to litigate claims on behalf of these absent Jani-King entities. *See* Defs.' SJ Mem. at 23-25.)

**B.     Plaintiffs' Claims of Possible Future Injuries Due to the SBA's Administration of the PPP and Section 7(a) Loan Programs Are Too Speculative and Conjectural to Support Standing.**

Lacking actual injuries they can point to as a basis for standing, Plaintiffs contend that they face an "imminent" threat of injury, because supposedly they "will in the future be barred from participating in the Temporary PPP Loan Program and the Section 7(a) SBA Loan Program by the SBA's *ultra vires* actions." Pls.' SJ Mem. at 20-21; *see id.* at 19-21. An "imminent" injury under Article III is one that is "certainly impending and immediate, not remote, speculative, conjectural, or hypothetical." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914 (D.C. Cir. 2015). Plaintiffs describe their injury in a variety of ways—as a "[l]oss of an opportunity to pursue or receive a government benefit," or a "[p]rospective economic harm"— but no matter how this claim of injury is styled, it remains too remote and hypothetical, at best, to furnish the certainty that Article III demands.

So far as a loss of opportunity to obtain further PPP loans is concerned, Plaintiffs' asserted injury is truly "illusory." *See* Pls.' SJ Mem. at 19-20 (quoting *CC Distribs., Inc. v. United States*, 883 F.2d 146, 151 (D.C. Cir. 1989)). Plaintiffs Jani-King International, Ohio Services, and A and A Enterprises have already received PPP loans. As a result, they are barred by the CARES Act, and the SBA's implementing regulations, from receiving additional loans under the PPP. *See* CARES Act § 1106(G)(i)(IV); Interim Final Rule, *Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20811, 20814 (Apr. 15, 2020) (paragraph III.2.t.vi) (providing than an applicant must certify that it has not "receive[d] another loan under the [the PPP] program"). Because Plaintiffs Jani-King International, Ohio Services, and A and A Enterprises are categorically prohibited by the CARES Act itself from receiving additional PPP loans, they can suffer no conceivable injury from the manner in which the SBA

utilizes the Directory, or interprets its passive business rule, in connection with the PPP.  Jani-King Franchising, for its part, has expressed no current, concrete plans to apply for a PPP loan or even an interest in doing so, *see generally* Ayres Decl. (Doc. 17-4), and therefore cannot claim an imminent future injury due to the manner in which the SBA administers the PPP.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563-64 (1992) (plaintiff seeking to challenge agency rule that allegedly threatened her ability to observe certain endangered species abroad lacked standing without a "description of concrete plans" to visit global regions where the endangered species of animal were located).

Plaintiffs' claimed "[l]oss of an opportunity" to pursue or receive section 7(a) loans is almost as nebulous.  None of the Plaintiffs describes "concrete plans" to apply for section 7(a) assistance, or specifies when they might do so.  *Defenders of Wildlife*, 505 U.S. at 564.  *See generally* Meister Decl. (Doc. 17-3) (Jani-King International); Ayres Decl. (Doc. 17-4) (Jani-King Franchising); 2d Carollo Decl. (Doc. 17-5) (Ohio Services); Snyder Decl. (Doc. 17-6) (A and A Enterprises).  Without a description of current, concrete plans to apply for section 7(a) assistance, the presumed denial of loan applications that Plaintiffs hypothetically might submit in some uncertain future simply does not support a finding of "imminent" injury as required to establish Article III standing.  *Defenders of Wildlife*, 505 U.S. at 564; *see also Carbon Sequestration Council v. EPA*, 787 F.3d 1129, 1140-41 (D.C. Cir. 2015) (petitioner that objected to EPA rule lacked standing where it "ha[d] not claimed an interest in pursuing" activities regulated by the rule); *Saga Broad. Corp. v. FCC*, 38 Fed. App'x 8, 10 (D.C. Cir. 2002); *Alaska Leg. Council v. Babbitt*, 181 F.3d 1333, 1339 (D.C. Cir. 1999) (lost opportunity to hunt and fish on public lands, without specific plans to do so, does not establish standing).

Indeed, Plaintiffs here do not even allege "'some day' intentions" to apply for section 7(a) financing of a kind that the Supreme Court and the D.C. Circuit consistently reject as *in*sufficient to satisfy the requirement of an imminent Article III injury.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (citing *Defenders of Wildlife*, 504 U.S. at 564) (holding that plaintiff lacked standing where he stated a desire to visit tracts of national forest subject to challenged rule, but did not assert "any firm intentions to visit their locations"); *Worth v. Jackson*, 451 F.3d 854, 858 (D.C. Cir. 2006) ("[Plaintiff's] assertion that he 'intends to apply for new positions and promotions at [the agency] on a regular basis in the future' is just the kind of speculative intention normally insufficient for standing purposes."); *Am. Library Ass'n v. FCC,* 401 F.3d 489, 496 (D.C. Cir. 2005) (" '[G]eneral averments,' 'conclusory allegations,' and 'speculative "some day" intentions' are inadequate to demonstrate injury in fact.").

It comes as no surprise, therefore, that Plaintiffs cite no authority supporting a finding of imminent injury under circumstances such as those presented here.  The cases they rely on for the proposition that a lost opportunity to pursue or receive a government benefit can give rise to standing, *see* Pls.' SJ Mem. at 19-20, all involved situations in which the plaintiffs had already applied for and been denied a benefit; had been deprived of a benefit they were already receiving; or brought suit to preserve opportunities to compete for government benefits that they regularly pursued.  *See Barker v. Conroy*, 921 F.3d 1118, 1122, 1125-26 (D.C. Cir. 2019) (atheist activist who applied for and was denied admission to House of Representatives guest chaplain program had standing to bring Establishment Clause claim); *Hardaway v. Dist. of Columbia Housing Auth.*, 843 F.3d 973, (D.C. Cir. 2016) (public housing tenant whose previously granted right to a live-in aide was revoked by the housing authority had standing); *CC Distribs.*, 883 F.2d at 149, 150-51 (contractors who held a total of 27 government contracts

under military procurement program had standing to challenge cancellation of program based on lost opportunity to compete for additional contracts).

*Bryant v. Yellen*, 447 U.S. 352 (1980) and *Carpenters Indus. Council v. Zinke*, 854 F.3d 1 (D.C. Cir. 2017), also relied on by Plaintiffs, Pls.' SJ Mem. at 20, are not to the contrary.  In *Bryant*, the Supreme Court held that farmworkers seeking enforcement of a federal reclamation law in their place of residence had standing where they asserted a current desire to purchase land made unavailable to them by the failure to enforce the law in the manner they advocated.  447 U.S. at 366-68; *see also United States v. Imperial Irrigation Dist.*, 595 F.2d 525, 528 (9th Cir. 1979).  In *Carpenters Industrial Council*, the D.C. Circuit reached the unremarkable conclusion that lumber companies whose supply of raw timber would be diminished had standing to challenge the Government's designation of 10 million acres of national forest land as critical habit for the northern spotted owl.  854 F.3d at 5-7.  Those decisions do not sustain Article III standing here, where Plaintiffs neither already enjoy, nor have expressed a concrete intention to seek, the government benefits at issue.

Nor can Plaintiffs rely on purported prospective economic harm that other unknown members of the Jani-King franchise system not before the Court purportedly would suffer if the SBA were to deny those nonparties section 7(a) (or PPP) loans.  S*ee* Meister Decl. ¶¶ 5-6; Ayres Decl. ¶¶ 17-18.  To begin with, Plaintiffs' declarations contain no "specific facts" to substantiate this speculative and uncertain claim of injury.  *See Defenders of Wildlife*, 504 U.S. at 563.  In addition, as discussed, Plaintiffs here lack third-party standing to litigate the legal entitlement of other, non-present parties doing business under the Jani-King brand to seek SBA financial assistance.  *See* Defs.' SJ Mem. at 23-25.

C.      **Plaintiffs' Claim of "Procedural Injury" Also Fails.**

Plaintiffs fare no better in attempting to portray their asserted injury as "procedural."

Pls.' Mem. at 18-19.  "In a procedural injury case, the plaintiff must establish that (1) the

government violated its procedural rights designed to protect a threatened, concrete interest, and

(2) the violation resulted in injury to that concrete, particularized interest."  *California v. Trump*,

2020 WL 1643858, at *6 (D.D.C. Apr. 2, 2020) (internal quotation marks and citations omitted).

Even assuming that Plaintiffs have met the first of these requirements, they have not satisfied the

second.  For all the reasons discussed above, they have not shown that the SBA's adoption and

use of the Directory in the loan-application process has resulted in any injury to a concrete

interest of theirs, where they have already received the PPP loans they applied for, and have not

described any current, concrete plans to seek section 7(a) loans.  In *Summers,* the Supreme Court

made clear that "deprivation of a procedural right without some concrete interest that is affected

by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."

555 U.S. at 496.  Just such "a right in a void" is what Plaintiffs claim here.  *Nat'l Ass'n of Home*

*Builders v. EPA*, 667 F.3d 6, 15 (D.C. Cir. 2011).

* * *

Plaintiffs asserting "a harm that may occur 'some day,' with no 'specification of *when* the

some day will be,' do[ ] not establish [their] standing."  *Ks. Corp. Comm'n v. Fed. Energy Reg.*

*Comm'n*, 881 F.3d 924, 930 (D.C. Cir. 2018).  That is the position in which the Plaintiffs here

now find themselves, requiring that this case be dismissed.

## II.      PLAINTIFFS LACK A CAUSE OF ACTION ALLOWING THEM TO SUE

Plaintiffs' claims fail for yet another fundamental reason:  aside from lacking standing,

Plaintiffs have no cause of action for their broadside challenge to the SBA's administration of

the Section 7(a) and PPP loan programs.  Plaintiffs attempt to found their claims on two statutory

provisions: the APA's right of review for "person[s] suffering legal wrong because of agency action," 5 U.S.C. § 702; and the Declaratory Judgment Act, 28 U.S.C. § 2201.  *See* Am. Compl. ¶¶ 95, 101.  Neither suffices.

### A.     The APA Does Not Allow Plaintiffs to Launch a Wholesale Attack on the SBA's Administration of Its Loan Programs.

The APA authorizes judicial review of "circumscribed, discrete agency actions." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004).  But its "case-by-case approach" limits the kinds of challenges that federal courts can entertain: an "entire 'program'" of agency administration, "consisting principally of . . . many individual actions," "cannot be laid before the courts for wholesale correction under the APA."  *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 893 (1990). The APA does not authorize challenges raising "the kind of broad programmatic attack" that seeks "'*wholesale* improvement of [a] program by court decree.'" *Norton*, 542 U.S. at 64 (quoting *Lujan*, 497 U.S. at 891)).  Otherwise, "it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management"—a "prospect of pervasive oversight by federal courts" that "is not contemplated by the APA."  *Id.* at 66–67. Instead, the judiciary's "long-standing practice in circumstances like this is to require the complaining party to challenge the specific implementation of the broader agency policy."  *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 22 (D.C. Cir. 2006).

Rather than heed that requirement, Plaintiffs ask this Court to assume a supervisory role over the SBA's administration of its financial assistance programs.  Now that the three Plaintiffs who applied for PPP loans have obtained them, instead of challenging any particular SBA decision regarding any particular Plaintiff before the Court, Plaintiffs assert that the SBA has imposed "a new threshold criterion for eligibility of businesses operating under a franchise

agreement," and is "unlawfully applying a requirement found only in its own internal 'standard operating procedures' to deny needed financial assistance to Plaintiffs and others." Am. Compl. ¶ 94.  They seek judicial oversight of the manner in which the SBA administers loan applications by "other members of the JANI-KING® Franchise System, other commercial cleaning franchises, and small franchised businesses in general," none of which are parties to this case. *Id.* ¶ 95.  Indeed, a telling indicator that Plaintiffs raise a prohibited "broad programmatic attack" is their repeated focus on the alleged effects of the SBA's conduct on the Jani-King "Franchise System," rather than the effects of any discrete SBA decisions regarding the Plaintiffs before the Court.  *See* Am. Compl. ¶ 97 (purporting to challenge SBA decisions "that one or more members of the JANI-KING® Franchise System are ineligible for SBA financial assistance generally and PPP loans in particular because they are 'passive' businesses . . ."); *id* ¶ 98 (taking issue with "[a]ny contention [by SBA] that members of the JANI-KING® Franchise System are ineligible business under 13 C.F.R. § 120.110(c)).

If and when any of the Plaintiffs suffer legal wrong as a result of a discrete agency action, they may be able to meet the APA discrete action requirement, but they do not do so here, and their expansive allegations about SBA's loan  program administration cannot be squared with the limitations on APA claims recognized by *NWF* and *Norton*.

**B.      The Declaratory Judgment Act Does Not Create a Cause of Action.**

Nor can Plaintiffs rely on the Declaratory Judgment Act, 28 U.S.C. § 2201, to circumvent the APA's limitations.  The Declaratory Judgment Act "enlarge[s] the range of remedies available in the federal courts."  *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).  But "the question whether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive."  *Davis v.*

*Passman*, 442 U.S. 228, 239 (1979). The D.C. Circuit has thus long held that "the availability of relief" under the Declaratory Judgment Act "presupposes the existence of a judicially remediable right." *C & E Servs., Inc. of Wash v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002). In short, the Declaratory Judgment Act does not "provide a cause of action." *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011).

III.    **PLAINTIFFS' CLAIMS FAIL ON THE MERITS.**

Even if this case presented a live case or controversy, and even if Plaintiffs' had a cause of action, Defendants still would be entitled to judgment as a matter of law, because Plaintiffs' claims lack merit.

> **A.    The SBA's Use of the Directory as an Administrative Tool in the Loan Application Process Does Not Impose New Eligibility Requirements or Otherwise Constitute a Legislative Rule.**

As Defendants have shown, the SBA Franchise Directory, and the SOP's instructions to lenders for the Directory's use in the loan-application process, are procedural rules adopted to facilitate efficient and consistent application of SBA affiliation and eligibility rules that come into play when franchisee businesses seek SBA financial assistance. Neither the SOP, nor the Directory, determines the substantive legal right of franchisees to apply for SBA small-business loans. Rather, they are simply a means of communicating to lenders whether a franchise business is eligible to apply for a loan as determined by the SBA under its affiliation rules, and other applicable eligibility requirements. To make these determinations, SBA continues to use the same substantive eligibility criteria as it did prior to its creation and use of the Directory. Therefore, the SOP's instructions to lenders regarding use of the Directory in processing loan applications are procedural rules, not legislative rules, to which the APA's notice-and-comment requirements do not apply. *See* Defs.' SJ Mem. at 26-30.

Plaintiffs maintain, to the contrary, that the SBA's instructions to lenders regarding the Directory impose "a new substantive eligibility requirement[,]" not found in the SBA's regulations, that the agency cannot impose without observing notice-and-comment procedures. Pls.' SJ Mem. at 13-14.  Except to repeatedly say so, however, Plaintiffs do not explain why use of the Directory amounts to a "new precondition" or "stricter eligibility requirement[,]" or for that matter a legislative rule.  And they cannot.

A legislative rule is a rule adopted by an agency that imposes "new substantive burdens" on regulated parties, *Aulenback, Inc. v. Fed. Hwy. Admin.*, 103 F.3d 156, 169 (D.C. Cir. 1997), "encodes a substantive value judgment, or puts a stamp of approval or disapproval on a given type of behavior."  *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1047 (D.C. Cir. 1987).  Neither the Directory nor the SOP does any such thing.  The substantive criteria that a franchisee must satisfy to seek SBA small-business loans remain those set forth in the SBA's affiliation rules, 13 C.F.R. § 121.301(f)(5), and other eligibility criteria, such as the rule regarding passive businesses, 13 C.F.R. § 120.110(c).  1st Olear Decl. ¶¶ 40-44.  If in the SBA's judgment an applicant franchisee is eligible under the criteria set forth in these rules, then the franchisee's brand is listed in the Directory (subject to possible additional criteria such as the need for an addendum), and neither the Directory nor the SOP demands anything more of substance from the applicant to establish its eligibility.  *Id.*.  If the franchisee's brand does not appear in the Directory, that is not because of a "new substantive eligibility requirement."  *See* Pls.' SJ Mem. at 14.  It is the result of either an unfavorable affiliation or eligibility determination by the SBA, made under the same substantive criteria that the SBA applied prior to the Directory's adoption, or the franchisee's own failure to seek an affiliation and eligibility determination in the first place.  *See* 1st Olear Decl. ¶¶ 40-43.

The authorities cited by Plaintiffs are not to the contrary.  *See* Pls.' SJ Mem. at 13-14.

*National Mining Association v. McCarthy*, 758 F.3d 243 (D.C. Cir. 2014), concerned an

Enhanced Coordination Process agreed to by the Army Corps of Engineers and the

Environmental Protection Agency to facilitate coordination and consultation between the two

agencies in carrying out their respective duties under the Clean Water Act's permitting process

for surface coal mining operations.  *Id.* at 246, 247-48.  Nothing in the Enhanced Coordination

Process changed the statutory criteria for issuing such permits, or the statutory responsibilities of

the agencies involved.  *Id.* at 249.  The Court of Appeals had no trouble rejecting the argument

that the Enhanced Coordination Process was a legislative rule, concluding that it was a

procedural rule instead.  *Id*. at 250.  So, too, in this instance.  The SBA's Franchise Directory,

and the instructions for its use in the loan-application process, are merely procedural rules

designed to facilitate coordination between the SBA and lenders when franchisees seek to apply

for SBA-guaranteed loans, without changing the regulatory criteria on which franchisees' loan

eligibility is determined, or otherwise altering their substantive rights.

Plaintiffs also cite *Pickus v. U.S. Bd. of Parole*, 507 F.2d 1107 (D.C. Cir. 1974), *see* Pls.'

SJ Mem. at 13, but that case, too, simply highlights the procedural nature of the SOP's

instructions regarding the Directory.  In *Pickus*, the U.S. Parole Board had adopted without

notice-and-comment rulemaking a number of guidelines and regulations that established

substantive criteria by which an inmate's eligibility for parole would be determined.  507 F.2d at

1112-13.  The Court of Appeals held that these criteria must be considered legislative rules, not

procedural rules, because they were "likely to produce parole decisions different from those

which alternatives would likely to produce[.]"  *Id.* at 1114.  Use of the Directory, in contrast, has

no substantive "impact on ultimate agency decisions" regarding franchisees' loan eligibility, *see*

*id.* Rather, as explained, it is no more than a mechanism for communicating those decisions to lenders who must implement them when franchisees seek to apply for SBA financing.

The SBA adopted the Directory as a tool to promote consistency and efficiency in its administration of the loan-application process. Plaintiffs' claim that inclusion of the Directory in that process constituted legislative rulemaking, requiring notice-and-comment procedures, is without merit. Defendants are thus entitled to judgment on this claim as a matter of law.[3]

### B. SBA's Application to Jani-King Entities of Its Rule Against Loans to Passive Businesses Owned by Developers Properly Adheres To The Regulation's Text in Light of Its Context.

SBA correctly concluded in 2017 that a Jani-King master franchise seeking to establish its eligibility to apply for section 7(a) loans was a passive business owned by a developer under 13 C.F.R. § 120.110(c). That decision adhered to the text of the regulation, and was consistent with the SOP provision clarifying application of that regulation to franchise development agreements. SOP 50-10-5(K), Subpt. B, Ch. 2, § II.D.8.i, at p. 101. *See* Defs.' SJ Mem. at 33-40. Plaintiffs' contrary contention (Pls.' SJ Mem. at 14-17) is predicated on an artificially narrow misunderstanding of the regulation's text and a failure to address its context, and is therefore meritless.

By its terms, the regulation makes ineligible "passive businesses owned by developers . . . that do not actively use . . . the assets acquired . . . with the loan proceeds." Plaintiffs maintain that Jani-King master franchises are not covered by the rule because a "Master Franchise is not

---

[3] Plaintiffs also argue in passing that reliance on the Directory is arbitrary, capricious, and contrary to law on the asserted basis that it "ignore[s] and effectively overrid[es]" the provisions of the SBA's franchise affiliation regulation, 13 C.F.R. § 121.301(f)(5). Pls.' SJ Mem. at 14. This contention also is baseless. As Defendants have explained, the Directory does not ignore or override the provisions of section 121.301(f)(5); rather, it is simply a means of implementing the decisions that the SBA arrives at when making affiliation determinations under that rule. *See* 1st Olear Decl. ¶¶ 40-44.

owned by a developer or landlord, and it engages in regular business activity that supports the efforts of the unit franchises within its geographic region." Pls.' SJ Mem. at 15. Plaintiffs maintain, in particular, that master franchises are not "developers" under the regulation because they "do not acquire real or personal property to lease to JANI-KING® Unit Franchisees (or any other entities)." Am. Compl. ¶ 57. But Plaintiffs' construction of the regulation as applying only to real estate developers is unsupported by any authority—neither a dictionary nor a precedent—and cannot possibly establish as a matter of law that the Agency went, as Plaintiffs' contend (Pls.' SJ Mem. at 15), "well beyond the plain language of the regulation itself."

As the Agency explained (Defs.' SJ Mem. at 34-35), a Jani-King master franchise is a "developer" as to the unit franchises within the master franchise's territory within the plain meaning of that term, because a master franchise "make[s] actually available or usable" what was "previously only potentially available or usable" by recruiting and contracting with unit franchisees within the territory. *See F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1198 (10th Cir. 2009) (quoting Webster's Third New International Dictionary 618 (2002)). That understanding of the term "developer" is also consistent with its usage in the franchise sector. 1st Olear Decl. ¶ 22. Although Plaintiffs insist that a "developer" must be a *lessor* of real or personal property (Am. Compl. ¶ 57), that lease-focused limitation is one of their invention. That limitation is not required by the "ordinary meaning" of "developer." *Cf. F.T.C. v. Tarriff*, 584 F.3d 1088, 1090 (D.C. Cir. 2009). Nor is that limitation required by the regulatory context or by any other authority.

Plaintiffs further err in contending (Pls.' SJ Mem. at 9 & n.9, 15) that the scope of the "support services" a master franchise provides to its subordinate unit franchises forecloses the Agency from concluding that a master franchise is a "*passive* business owned by [a] developer[]

. . . that do[es] not actively use . . . the assets acquired . . .  with the loan proceeds."  13 C.F.R. §

120.110(c) (emphasis added).  Again, as the Agency explained, because Jani-King is in the

commercial cleaning business, and because a unit franchise, not a master franchise, is the entity

that performs acts of commercial cleaning at customer locations, the master franchise's

predominant or significant reliance on the work of the unit franchises in its territory, and the

income they generate, renders the master franchise passive, *at least* for purposes of the

regulation.  Defs.' SJ Mem. at 38.

That conclusion is fully consistent with the "ordinary meaning" of "passive."  For example,

*Webster's Third New International Dictionary* (at 1651) provides, as the first definition of

"passive":  "not acting but acted upon : subject to or *produced by an external agency*" (emphasis

added).  A master franchise, sustained by the income "produce[d] by" the unit franchises that are

"external" to the master franchise, in that way falls within the plain meaning of the regulation.

Likewise, the definition of "passive"  in *Merriam-Webster's* directs attention to the manner in

which a firm "generat[es] . . .  income," and, again, a Jani-King master franchise relies on the

income "generat[ed]" by the cleaning services that the unit franchises perform.  *See Merriam-*

*Webster's Collegiate Dictionary* 906 (11th ed. 2006) (first meaning:  "acted upon by an external

agency"; fourth meaning:  "of, or relating to, or being business activity in which the investor

does not actively participate in the generation of income").  Plaintiffs' assertion that the unit

franchises receive what Plaintiffs call "support" from the master franchise does not knock the

Agency's conclusion out of harmony with the plain meaning of the regulation's text.

Plaintiffs also make no effort to address the *context* in which SBA applied 13 C.F.R.

§ 120.110(c) to Jani-King franchise agreements.  SBA's conclusion regarding the passive nature

of franchises that earn revenue by recruiting and then collecting royalties and other fees from

subordinate franchisees that conduct the actual business operations of the brand arose from Agency experience with that particular genre of franchise agreement. SBA used the lessons learned from that experience to formulate corresponding guidance in its Standard Operating Procedure (SOP 50-10-5(K), Subpt. B, Ch. 2, § II.D.8.i, at p. 101) applying the regulation to that genre of agreements, starting in 2009.

Thus, SBA's characterization of the genre of agreement employed by Jani-King master franchises did not "spring from [SBA] lawyers' heads as Athena did from the brow of Zeus." *Cf. In Re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984). Instead, it was the product of experience with "passive business[es] owned by developers" in the franchise sector. *See* Olear Decl. ¶¶ 20-25 (describing SOP); *id.* ¶¶ 61-62 (describing application to Jani-King business model). Plaintiffs' challenge to the Agency's application of the regulation therefore ignores the pertinent context of the regulation, and should be rejected on that ground as well. After all, "the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Deal v. United States*, 508 U.S. 129, 132 (1993).

Because examination of the regulation's text and context confirms the correctness of the Agency's construction of the regulation, the Agency's conclusion is properly upheld without further inquiry. Contrary to Plaintiffs' contention (Pls.' SJ Mem. at 15), *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) does not suggest otherwise. Under *Kisor*, the reviewing court relies on all the "traditional tools" of construction, and if, after doing so, the court concludes the regulation is genuinely ambiguous, it then asks whether the agency's interpretation warrants judicial deference. Here, Plaintiffs' failure to offer any textual (or extra-textual) basis to support their construction of the passive business rule leaves no ground for concluding that the regulation is genuinely ambiguous. *See Stand Up for California! v. U.S. Dep't of the Interior*, 410 F. Supp.

3d 39, 51-52 (D.D.C. 2019) (concluding that statute and agency regulation both were "unambiguous" and agreeing with agency under *Kisor*).

Moreover, in any event, even if there were an ambiguity necessitating further inquiry under *Kisor*, SBA's interpretation warrants judicial deference for the reasons given above concerning the text and context, and because the Agency's interpretation is the product of its historical experience, and reflects "fair and considered judgment" as embodied in the SOP provision discussed above, which arose from SBA administration of loans to franchises well before Plaintiffs brought this case. *See Kisor*, 139 S. Ct. at 2417; *see also Am. Tunaboat Ass'n v. Ross*, 391 F. Supp. 3d 98, 111-14 (D.D.C. 2019) (under *Kisor*, deferring to agency interpretation after determining that regulation was "genuinely ambiguous").

Plaintiffs' contention that the SBA's conclusions regarding the passive nature of Jani-King master franchises was "arbitrary and capricious" (Pls.' SJ Mem. at 15) must also fail. To adjudicate such a claim (once issues of regulatory interpretation are resolved), the court must "examin[e] whether [the agency]t has acted consistently with its previous applications of the governing regulations and whether the application of its general regulative doctrines to the specifics of this case has been reasonable." *DSE, Inc. v. United States*, 169 F.3d 21, 28 (D.C. Cir. 1999). Here, to repeat, after examining trends in the franchise sector, SBA adopted guidance for brands that spelled out when franchise development agreements would not be eligible for SBA loans under 13 C.F.R. § 120.110(c). SBA adhered to and assuredly did not contradict that guidance, now found at SOP 50-10-5(K), Subpt. B, Ch. 2, § II.D.8.i, at p. 101, in concluding that under the Jani-King branded master franchise it previously examined—namely the one submitted by Jani-King of Omaha in 2017—the master franchise was ineligible because it earned its income mainly by charging royalties to unit franchisees within the assigned territory,

where the unit franchisees (not the master franchise) actually performed the commercial cleaning services.  *See* 1st Olear Decl. ¶¶ 61-64.

Moreover, in response to this Action, SBA examined the rights and obligations of the parties to the A and A Enterprises agreement filed with this Court, and again concluded that the functions assigned by such an agreement to the master franchise rendered a master franchise ineligible under 13 C.F.R. § 120.110(c) and the implementing guidance focused on franchise development agreements.  *See* 2d Olear Decl. ¶¶ 19-24.  And, again, although Ohio-Services maintains that it considers itself to be "active" because of its subjective assessment of the weight of the "support services"  it provides to unit franchises (Pls.' SJ Mem. at 9 & n.9, 15), that subjective assessment does not alter the essential structural features of the Jani-King system, in which unit franchises, not master franchises, perform the actual commercial cleaning work, while master franchises earn income from recruiting and managing unit franchises within a given geographic territory.  SBA's adherence to its regulation and guidance was thus "reasonable" when considering the "specifics of this case," and was not "arbitrary" or "capricious."  *See DSE*, 169 F.3d at 28.

### C. The APA Did Not Obligate SBA to Waive Its Pre-Existing Eligibility Rules Wholesale Rather Than Waiving Them Incrementally.

Plaintiffs also err in contending (Pls.' SJ Mem. at 15-17) that when SBA determined through recent Interim Final Rule issuances that it was consistent with the CARES Act to waive its eligibility regulations for government-owned hospitals and for certain gaming concerns, SBA obligated itself likewise to waive 13 C.F.R. § 120.110(c) for Jani-King or to explain why it did not do so.  Plaintiffs purport to rely on *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983), but they misunderstand that decision.  *State Farm* explained that the "scope of review under the 'arbitrary and capricious' standard is narrow and a

court is not to substitute its judgment for that of the agency," and that the standard is satisfied if the agency "examine[s] the relevant data and articulate[s] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice[s] made.'" *Id.* at 43 (cleaned up). But Plaintiffs do not demonstrate that other than filing *this* action, they made any submissions to SBA supplying any "relevant data" regarding their need for relief from § 120.110(c). That is, when SBA issued its Interim Final Rules, there is no indication that Plaintiffs asked SBA to make the "rational connection" they now insist must be made between granting waivers to government-owned hospitals and to gaming concerns, and to passive businesses owned by developers.

In any event, even if Plaintiffs *had* presented such contentions to SBA, neither the APA nor any other law would require the Agency to adopt Plaintiffs' parochial view of the public interest or the scope of relief warranted from eligibility rules under the CARES Act. To the contrary, "to allocate" SBA's "limited funds," the Agency had leeway to make "reasonable classifications and eligibility requirements." *Morton v. Ruiz*, 415 U.S. 199, 230 (1974) (dictum). Furthermore, an "agency may adopt policies to prioritize its expenditures *within the bounds established by Congress.*" *Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 237 (2014) (emphasis original). In "adopt[ing] policies to prioritize" relief for government-owned hospitals and for gaming concerns, SBA therefore remained well within statutory bounds. *See id.* After all, Congress long ago granted the SBA extraordinarily broad authority to establish restrictions the agency considers "necessary or desirable in making . . . loans" (15 U.S.C. § 634(b)(6), (7)).

Moreover, as SBA explained (Defs.' SJ Mem. 39-40), courts recognize that the APA does not prohibit agencies from making decisions about waivers from its pre-existing eligibility rules one step at a time. For example, SBA "enjoys broad discretion in determining how best to

handle related, yet discrete, issues in terms of procedures and priorities." *Mobil Oil Exploration & Producing Se., Inc. v. United Distribution Cos.*, 498 U.S. 211, 230 (1991).  That is, SBA "need not solve every problem before it in the same proceeding.  This applies even where the initial solution to one problem has adverse consequences for another area that the agency was addressing."  *Id.* at 231.  Accordingly, contrary to Plaintiffs' presupposition that the APA required SBA to waive all of the eligibility rules in 13 C.F.R. § 120.110 in a single stroke, the "court cannot force an agency to aggregate diverse actions to the point where problems must be tackled from every angle at once.  To do so risks further paralysis of agency decisionmaking." *Grunewald v. Jarvis*, 776 F.3d 893, 906 (D.C. Cir. 2015) (cleaned up).

## IV.   A PERMANENT INJUNCTION WOULD BE INAPPROPRIATE IN THIS CASE IN ANY EVENT

As explained (Defs.' SJ Mem. 40-41), the Small Business Act forecloses a grant of an injunction against SBA, at least where, as here, it would interfere with the agency's internal operations by overturning an agency procedural rule.  But the question of permanent injunctive relief has evaporated from this case.  As explained above, Plaintiffs have obtained the PPP loans they previously alleged they could not obtain because of SBA's adherence to the Directory listing requirement, and so, while they have no injury-in-fact for Article III purposes (a non-merits point), they also have no irreparable injury (a merits point), and therefore have not established the first or second elements of a permanent injunction.  *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (party seeking permanent injunction must prove, among other things, that "it has suffered an irreparable injury" and that "remedies available at law . . . are inadequate").  With loan funds in hand, Plaintiffs cannot show "irreparable injury" of the kind precedent requires.  "The equitable remedy" of an injunction "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any

real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Nor have Plaintiffs established that legal remedies would be inadequate. As already explained, *if* a dispute arises at some future point between them and SBA about loan forgiveness, *then* Plaintiffs can seek relief; *now*, such a dispute is merely conceivable, not imminent. *See supra* at 7-9.

Moreover, if Plaintiffs were somehow (contrary to law) to prevail on any of their contentions under the APA, the proper remedy would not be to issue an injunction directing SBA to take any particular action at least under the circumstances of this action, but instead to remand to the SBA for further proceedings at the Agency. Indeed, the "ordinary remand rule," which teaches that, "[g]enerally speaking," a reviewing court "should remand a case to an agency for decision of a matter that statutes place primarily in agency hands" (*I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam)), applies with special force here, where Plaintiffs rushed to court without presenting their legal and factual contentions to the Agency. The availability of remand obviates the need to consider extraordinary equitable relief. *See, e.g.*, *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (where "the record before the agency does not support the agency action, ... the proper course, except in rare circumstances, is *to remand to the agency* for additional investigation or explanation.") (emphasis added).

## CONCLUSION

For the reasons stated above, and in Defendants' initial memorandum, Plaintiffs' motion for summary judgment should be denied, Defendants' motion granted, and judgment entered for Defendants as a matter of law.

Dated:  May 11, 2020

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td>JOSEPH H. HUNT<br>Assistant Attorney General</td><td>JAMES J. GILLIGAN<br>Special Litigation Counsel</td></tr>
<tr><td>DAVID M. MORRELL<br>Deputy Assistant Attorney General</td><td><u>/s/  Indraneel Sur</u><br>INDRANEEL SUR<br>CORMAC EARLY</td></tr>
<tr><td>JOHN R. GRIFFITHS<br>Director</td><td>Trial Attorneys</td></tr>
<tr><td>ERIC WOMACK<br>Assistant Director</td><td>Federal Programs Branch,<br>Civil Division<br>United States Department of Justice<br>P.O. Box 883<br>Washington, D.C. 20044<br>Telephone:  (202) 616-8448<br>E-mail:      Indraneel.Sur@usdoj.gov</td></tr>
</table>

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JANI-KING INTERNATIONAL, INC., *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:20-cv-0989 (TNM) |
| UNITED STATES SMALL BUSINESS ADMINISTRATION, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED
MATERIAL FACTS**

Dated: May 11, 2020

JOSEPH H. HUNT
Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director

ERIC WOMACK
Assistant Director

JAMES J. GILLIGAN
Special Litigation Counsel

INDRANEEL SUR
CORMAC EARLY
Trial Attorneys

Federal Programs Branch,
Civil Division
United States Department of Justice
P.O. Box 883
Washington, D.C. 20044
Telephone:  (202) 616-8448
E-mail:      Indraneel.Sur@usdoj.gov

*Counsel for Defendants*

Under Federal Rule of Civil Procedure 56, Defendants submit this response to Plaintiffs' statement of material facts in support of Plaintiffs' motion for summary judgment (Doc. 17-2).

Defendants note that this response is solely designed to respond to Plaintiffs' statement of undisputed material facts (Doc. 17-2), by identifying which of the factual grounds for Plaintiffs' motion are not undisputed in Plaintiffs' favor.  In light of Defendants' separate motion for summary judgment, the use of the word "disputed" or similar references herein should not be construed to mean that Defendants believe that there are genuine issues of fact that would necessitate a trial.  Rather, such language simply means that Defendants dispute Plaintiffs' statement regarding that matter.  Defendants maintain their position that there are *no* genuine issues of material fact with respect to the grounds entitling *Defendants* to summary judgment.

In that regard, Defendants make this response without waiving their position that where, as here, Plaintiffs seek APA review of agency action, factual findings concerning the merits (as opposed to jurisdictional issues) are not warranted because the District Court "sits as an appellate tribunal," and "the 'entire case' on review is a question of law."  *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (citing *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993); and *Univ. Med. Ctr. of S. Nevada v. Shalala*, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999)).  The District Court accordingly does not "engage in lengthy fact finding" (*Pharm. Research & Mfrs. of Am. v. FTC*, 44 F. Supp. 3d 95, 111 (D.D.C. 2014)), because "[g]enerally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving legal questions" (*James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996)).  "Under the APA ... the function of the district court is to determine whether or not

1

as a matter of law the evidence in the administrative record permitted the agency to make the

decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (quotation

marks and citation omitted).

      Where Defendants represent herein that a statement of material fact is "undisputed" in

whole or in part, such a statement applies exclusively to this action and does not constitute an

admission for any other purposes, including any other administrative or judicial

determinations or proceedings.

      Allegations and purported facts that are not material are not properly included in a

statement of undisputed material facts. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,

247-48 ("As to materiality, the substantive law will identify which facts are material.  Only

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude entry of summary judgment.  Factual disputes that are irrelevant or

unnecessary will not be counted.").

      The format of this document is as follows. The text of the facts originally alleged in

Plaintiffs' statement is set forth in italics at the beginning of each paragraph. The balance of

each numbered paragraph contains Defendants' response as to that particular alleged fact.

*The Small Business Administration*

1.      *The United States Small Business Administration (the "Agency") is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633 et seq.*

**RESPONSE:**  Undisputed.

2.      *Jovita Carranza is the Administrator of the Agency (the "SBA Administrator," together with the Agency, the "SBA"). As the Administrator, Ms. Carranza holds a Cabinet-level position.*

**RESPONSE:**  Undisputed.

3.      *The regulations pursuant to which the SBA implements its statutory authority are published in the Federal Register and codified in Title 13 of the Code of Federal Regulations.*

**RESPONSE:**  Undisputed.

4.      *The SBA also issues guidance documents for compliance with its regulations and the programs that it administers. These guidance documents include publicly available internal SBA Standard Operating Procedures, Policy Notices, Procedural Notices, and other general guidance.*

**RESPONSE:**  Undisputed.

5.      *As a federal agency, the SBA is governed by the Administrative Procedure Act, 5 U.S.C. § 501 et seq. (the "APA").*

**RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of fact.  Accordingly, no response is required.  To the extent a response is deemed required, undisputed.

*The Section 7(a) SBA Loan Program*

 6. *Before enactment of the CARES Act, as defined below, the SBA's primary program for providing financial assistance to small businesses was through its authorization to provide loan assistance to small business concerns under Sections 7(a) and 7(b) of the Small Business Act, 15 U.S.C. § 636(a) (the "Section 7(a) SBA Loan Program").*

 **RESPONSE:** Undisputed.

 7. *The Section 7(a) SBA Loan Program provides financing for general business purposes. To qualify for Section 7(a) SBA Loan Program loans, an applicant must: (a) be an operating business organized for profit that is located in the United States (13 C.F.R. § 120.100(a)-(c)); (b) meet the size standards for a "small" business set forth under the statute and SBA rules, usually stated in terms of number of employees, or average annual receipts (15 U.S.C. § 632(a)(2); 13 C.F.R. § 120.100(d); 13 C.F.R. Part 121); and (c) demonstrate that the desired credit is not available elsewhere on reasonable terms. 15 U.S.C. § 632(h); 13 C.F.R. §§ 120.100(e), 120.101.*

 **RESPONSE:** This paragraph sets forth a legal conclusion rather than a statement of fact. Accordingly, no response is required.  To the extent a response is deemed required, undisputed.

 8. *The SBA's implementing regulations designate eighteen discrete categories of businesses as ineligible for SBA business loans. 13 C.F.R. § 120.110. Examples of ineligible businesses include, among others, financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors; businesses that derive more than one-third of gross annual revenue from legal gambling activities (i.e., casinos); and government- owned entities. 13 C.F.R. § 120.110 (b), (g), and (j). The discrete categories of "ineligible businesses" also include "[p]assive businesses owned by developers and*

4

*landlords that do not actively use or occupy the assets acquired or improved with the loan*

*proceeds (except Eligible Passive Companies under § 120.111)." 13 C.F.R. § 120.110(c).*

> **RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of fact.  Accordingly, no response is required.  To the extent a response is deemed required, undisputed.

### The SBA's Guidelines Relating to Franchised Businesses

*9.      In assessing the size of a business concern, the SBA has long applied so-called "affiliation" rules that determine whether the size of its "affiliates" should be considered when assessing whether the business concern and its affiliates collectively satisfy the relevant size standard. The governing affiliation principles applicable to franchised businesses seeking a loan pursuant to the Section 7(a) SBA Loan Program are set forth in 13 C.F.R. § 121.301(f)(5), entitled "Affiliation based on franchise and license agreements." It states as follows:*

> *The restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee has the right to profit from its efforts and bears the risk of loss commensurate with ownership. SBA will only consider the franchise or license agreements of the applicant concern.*

> *13 C.F.R. § 121.301(f)(5).*

> **RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of fact.  Accordingly, no response is required.  To the extent a response is deemed required, undisputed.

*10.      On February 10, 2020, the SBA published an interim final rule at 85 Fed. Reg. 7622 (Feb. 10, 2020) (the "Revoked Affiliation Rule").  The Revoked Affiliation Rule moved the language*

*in subsection 121.301(f)(5) to 121.301(f)(7) and added the following language after the above-quoted language that had previously appeared at 121.301(f)(5): "SBA will maintain a centralized list of franchise and other similar agreements that are eligible for SBA financial assistance, which will identify any additional documentation necessary to resolve any eligibility or affiliation issues between the franchisor and the small business applicant."*

**RESPONSE:** This paragraph sets forth a legal conclusion rather than a statement of fact. Accordingly, no response is required. To the extent a response is deemed required, undisputed.

*11.    On March 27, 2020, Congress passed and President Trump signed the Coronavirus Aid, Relief, and Economic Security Act, Public L. No. 116–136 §§ 1101–03, 1107, and 1104 (the "CARES Act"). The CARES Act includes the Paycheck Protection Program ("PPP") loan program (the "Temporary PPP Loan Program"). The purpose of the Temporary PPP Loan Program is to provide emergency relief to qualifying small businesses affected by the current COVID-19 pandemic and their employees.*

**RESPONSE:** This paragraph sets forth a legal conclusion rather than a statement of fact. Accordingly, no response is required. To the extent a response is deemed required, undisputed.

*12.    Section 1102(e) of the CARES Act, a subsection within the provision that established the Temporary PPP Loan Program itself, stated as follows with respect to the Revoked Affiliation Rule:*

> *On and after the date of enactment of this Act, the interim final rule published by the Administrator entitled 'Express Loan Programs: Affiliation Standards' (85 Fed. Reg. 7622 (February 10, 2020)) is permanently rescinded and shall have no force or effect.*
>
> *(emphasis added).*

**RESPONSE:** This paragraph sets forth a legal conclusion rather than a statement of fact. Accordingly, no response is required. To the extent a response is deemed required, undisputed.

13.     *Because the interim final rule at 85 Fed. Reg. 7622 was permanently rescinded upon enactment of the CARES Act, the operative regulation governing affiliation based on franchise agreements for applicants for SBA-guaranteed business loans is the regulation at 13 C.F.R. § 121.301(f)(5) as set forth above.*

**RESPONSE:** This paragraph sets forth a legal conclusion rather than a statement of fact. Accordingly, no response is required. To the extent a response is deemed required, undisputed.

**The SBA Franchise Directory**

14.     *The SBA's publicly available internal guidelines include the SBA Standard Operating Procedures Section 50, No. 10, entitled "Lender and Development Company Loan Programs" (the "SOP"). The current version of the SOP is Revision 5(K). The SOP is an internal SBA procedure, originated by the SBA's Office of Capital Access, addressed to "All SBA Employees." The SOP has not been published in the Federal Register. Revisions to the SOP do not undergo notice and comment under the APA because the SOP is an internal SBA procedure.*

**RESPONSE:** This paragraph sets forth a legal conclusion rather than a statement of fact. Accordingly, no response is required. To the extent a response is deemed required, undisputed.

15.     *To facilitate franchise loan applications under the Section 7(a) SBA Loan Program, the SBA established the SBA Franchise Directory that the SBA maintains at*

*www.sba.gov/sba-franchise-directory (the "Directory"). Generally, when a franchise brand is included in the Directory, it receives a Franchise Identifier Code. Effective January 1, 2018, the SBA incorporated into the SOP a requirement that business concerns operating as franchises must have their franchise "brand" listed in the Directory to be eligible to receive a Section 7(a) SBA Loan Program loan.*

 **RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of fact.  Accordingly, no response is required.  To the extent a response is deemed required, the second and third sentences are disputed.  Defendants respectfully refer the Court to the cited document for a full and accurate statement of its contents.

 16. *The SOP relevant to the Section 7(a) SBA Loan Program specifically states: "If the Applicant's brand meets the FTC definition of a franchise, it must be on the Directory in order to obtain SBA financing." See franchise sections of SBA SOP 50 10 5(K) (Subpart B, Chapter 2, Paragraph II.D.8.b).*

 **RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of fact.  Accordingly, no response is required.  To the extent a response is deemed required, Defendants respectfully refer the Court to the cited document for a full and accurate statement of its contents.

 17. *Before the Revoked Affiliation Rule, the reference to the Directory had never before appeared in SBA regulations published through notice-and-comment rulemaking.*

 **RESPONSE:**  Undisputed.

*The CARES Act and Paycheck Protection Program*

18.     The CARES Act amended 15 U.S.C. § 636(a) to establish the Temporary PPP
Loan Program to assist small businesses nationwide adversely affected by the COVID-19
emergency. The Temporary PPP Loan Program permits the SBA—on a one-time basis
during the period April 3, 2020 through June 30, 2020—to guarantee and forgive 100
percent of loans made by SBA approved lenders pursuant to the program if certain
eligibility requirements are met. The eligibility requirements for PPP loans set forth in the
CARES Act are: (a) having fewer than 500 employees; (b) being in operation on February
15, 2020; and (c) having employees or independent contractors that the employer paid. 15
U.S.C. § 636(a)(36) 36)(D)(i), (F)(ii)(II).

> **RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of
> fact.  Accordingly, no response is required.  To the extent a response is deemed
> required, the third sentence is disputed.

19.     Since enactment of the CARES Act, the SBA has issued several interim rules
to implement the Temporary PPP Loan Program, as well as informal guidance to borrowers
and lenders regarding the program. The SBA issued its first interim rule on April 1, 2020
(the "First PPP Rule"). The First PPP Rule was subsequently published in the Federal
Register on April 15, 2020. 85 Fed. Reg. 20811 (Apr. 15, 2020). In the First PPP Rule, the
SBA confirmed that the Temporary PPP Loan Program would be implemented on a "first
come, first served basis" until funds are exhausted. Id. at 20813.

> **RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of
> fact.  Accordingly, no response is required.  To the extent a response is deemed
> required, undisputed.

***Funding and Coverage Estimates***

*20.      On April 28, 2020, the SBA promulgated the Interim Final Rule entitled*

*"Business Loan Program Temporary Changes; Paycheck Protection Program-*

*Requirements Promissory Notes, Authorizations, Affiliation, and Eligibility," 85 Fed. Reg.*

*23450 (Apr. 28, 2020) (the "April 28 Interim Rule"). Before its publication in the Federal*

*Register, the SBA had posted a pre-publication version of the April 28 Interim Rule on April*

*24, 2020 at https://home.treasury.gov/policy-issues/cares/assistance-for-small-businesses.*

**RESPONSE:** Undisputed.

*21.      The April 28 Interim Rule states that the policy objective of the Temporary PPP*

*Loan Program is to make "PPP loans available to a broad segment of U.S. businesses." Id. at*

*7. In keeping with this understanding, the SBA stated that a "business that is otherwise*

*eligible for a PPP Loan is not rendered ineligible due to its receipt of legal gaming revenues,*

*and 13 CFR 120.110(g) is inapplicable to PPP loans." Id. Similarly, the SBA determined that*

*declaring the general ineligibility of government-owned entities under 13 CFR 120.110(j) to*

*be "inapplicable to PPP loans" is "appropriate to effectuate the purposes of the CARES Act."*

*Id.*

> **RESPONSE:** This paragraph does not set forth facts that are material to the outcome of
>
> the parties' pending motions for summary judgment. *See Anderson*, 477 U.S. at 247-48.
>
> Accordingly, no response is required. To the extent that a response is required, disputed.
>
> This paragraph constitutes a paraphrase and characterization of the cited document;
>
> Defendants respectfully refer the Court to the cited document for a full and accurate
>
> statement of its contents.

*The JANI-KING® Franchise System*

22.     The "JANI-KING® Franchise System" is a commercial cleaning service

that consists of three tiers: (a) Plaintiff JKF, The JANI-KING® Franchisor, (b) JANI-

KING® Master Franchises (such as Plaintiff Ohio Services, The Ohio JANI-KING®

Master Franchise), and (c) approximately 5,600 "JANI-KING® Unit Franchisees" (such

as Plaintiff A and A Enterprises, The Tri-State JANI-KING® Unit Franchisee).

(Declaration of Paul Meister ("Meister Decl.") ¶ 2). The JANI-KING® Franchisor

licenses trademarks (the "Proprietary JANI-KING® Trademarks") and other intellectual

property owned by The JANI-KING® Trademark Owner to 87 JANI-KING® Master

Franchises nationwide pursuant to a standard form JANI-KING® Master Franchise

Agreement. (Declaration of Sean Ayres ("Ayres Decl.") ¶ 3, Ex. A).

**RESPONSE:** Undisputed.

23.     The franchise relationship between each JANI-KING® Master Franchise in

the United States and its JANI-KING® Unit Franchisees is the subject of a standard form

written agreement (the "JANI-KING® Unit Franchise Agreement"). (Ayres Decl. ¶ 5, Ex.

B; Second Declaration of Joseph S. Carollo ("2d Carollo Decl.") ¶ 4, Ex. 1); Declaration

of Jerry A. Snyder ("Snyder Decl.") ¶ 3, Ex. A).

**RESPONSE:** Disputed.  Not all the agreements are identical.  *See* 2d Olear Decl. ¶ 14.

24.     The JANI-KING® Master Franchise Agreements and the JANI-KING® Unit

Franchise Agreements (collectively, the "JANI-KING® Franchise Agreements") require

each franchisee to comply with the brand standards of the JANI-KING® Trademark Owner

(Plaintiff Jani-King International) for the right to be licensed to use the Proprietary JANI-

KING® Trademarks and other intellectual property, including trade secrets, upon which the

11

*JANI- KING® Franchise System is based (the "JANI-KING® Brand Standards"). (Ayres Decl. ¶ 7; 2d Carollo Decl. ¶ 5, Ex. 1).*

**RESPONSE:** Undisputed.

*25.     Each JANI-KING® Master Franchise, including The Ohio JANI-KING® Master Franchise, is a franchisee within the exclusive territory to which it purchased the rights. In its exclusive territory, each JANI-KING® Master Franchise is also a franchisor of independently owned commercial cleaning service companies (the JANI-KING® Unit Franchisees) to which it sublicenses certain proprietary JANI-KING® Trademarks for operation of their franchised businesses. (Ayres Decl. ¶ 8; 2d Carollo Decl. ¶ 1, Ex. 1).*

**RESPONSE:** Undisputed.

*26.     Each member of the JANI-KING® Franchise System—The JANI-KING® Franchisor, the 87 JANI-KING® Master Franchises, and the approximately 5,600 JANI-KING® Unit Franchisees—has fewer than 500 employees, has the right to profit from its efforts, and bears the risk of loss commensurate with ownership. (Ayres Decl. ¶ 9; 2d Carollo Decl. ¶ 1, Ex. 1; Snyder Decl. ¶ 5, Ex. A).*

**RESPONSE:**  Disputed.  The terms of the unit franchise agreements made available for SBA review demonstrate that Jani-King unit franchises do not profit from their efforts or bear the risk of loss commensurate with ownership.  1st Olear Decl. ¶¶ 65-68 (Doc. 16-1); 2d Olear Decl. ¶¶ 14-18.

*27.     In the JANI-KING® Franchise System, The JANI-KING® Franchisor provides support services necessary to ensure that the JANI-KING® Master Franchises and each of their JANI-KING® Unit Franchisees operate their commercial cleaning franchises in accordance with the JANI-KING® Brand Standards. The support services that the JANI-KING® Master*

12

*Franchise Agreements obligate The JANI-KING® Franchisor to provide to the JANI-KING®*
*Master Franchises include the following: (a) registering and maintaining trademarks and*
*service marks, (b) providing initial training on how to operate a JANI-KING® Master*
*Franchise, (c) providing branded supplies and marketing materials, manuals, and training aids,*
*(d) offering technical assistance and support services, and (e) advertising and marketing the*
*JANI-KING® brand. (Ayres Decl. ¶ 10, Ex. A). The support services that the JANI-KING® Unit*
*Franchise Agreements obligate the JANI-KING® Master Franchises to provide to the JANI-*
*KING® Unit Franchisees include provision of: (a) confidential manuals, training aids, and other*
*pertinent information concerning the JANI-KING® Brand Standards, (b) initial and ongoing*
*training, recommendations, and advice regarding operation of their commercial cleaning*
*franchises in accordance with the JANI-KING® Brand Standards, and (c) promotional*
*materials, sales and service manuals, equipment, and other materials necessary to operate their*
*commercial cleaning franchises in accordance with the JANI-KING® Brand Standards. (Ayres*
*Decl. ¶ 10; 2d Carollo Decl. ¶ 7, Ex. 1; Snyder Decl. ¶ 3, Ex. A).*

> **RESPONSE:** This paragraph does not set forth facts that are material to the outcome of
> the parties' pending motions for summary judgment. *See Anderson*, 477 U.S. at 247-48.
> Accordingly, no response is required. To the extent a response is deemed required,
> undisputed insofar as it purports to provide a partial, not exhaustive, description of the
> duties and functions performed by Jani-King master franchises under their franchise
> agreements.

28.     *Pursuant to the JANI-KING® Master Franchise Agreements, each JANI-KING®*
*Master Franchise handles the billing and collection of accounts for which the JANI-KING® Unit*
*Franchisees perform commercial cleaning services and remits such collections to each*

13

*franchisee, minus a deduction for any royalties or other charges that the franchisee owes to the JANI-KING® Master Franchise. This arrangement improves the cash flow of the JANI-KING® Unit Franchisees because they actually receive payment from the JANI-KING® Master Franchise once the account payments are due—before many of the invoices are even collected. Ultimately, most JANI-KING® Unit Franchisees bear the risk of non-payment because most JANI-KING® Master Franchises "charge back" the franchisees for previously advanced payments if the customer has not paid the invoiced amount within a certain period of time. Pursuant to a program developed by The JANI-KING® Franchisor, however, some JANI-KING® Master Franchises offer the JANI-KING® Unit Franchisees a "no charge back" guarantee—effectively, a form of insurance—in exchange for payment of a premium. Under the "no charge back" guarantee, JANI-KING® Master Franchises thus act as the insurer that individual customers will not pay amounts invoiced on behalf of the JANI-KING® Unit Franchisees. JANI-KING® Unit Franchisees with this form of "insurance" mitigate, but do not eliminate, their risk of loss. Individual JANI-KING® Unit Franchisees without such "insurance" bear the risk of loss of non-payment. (Ayres Decl. ¶ 11; 2d Carollo Decl. ¶ 8, Ex. 1).*

      **RESPONSE:** This paragraph does not set forth facts that are material to the outcome of the parties' pending motions for summary judgment. *See Anderson*, 477 U.S. at 247-48. Accordingly, no response is required. To the extent a response is deemed required, disputed that Jani-King unit franchises profit from their efforts or bear the risk of loss commensurate with ownership.  1st Olear Decl. ¶¶ 65-68; 2d Olear Decl. ¶¶ 14-18.

**The SBA's Prior Refusals to List JANI-KING® Franchise Agreements in the Directory**

29.     *The SBA rejected listing the JANI-KING® Franchise Agreements in the Directory in 2015 and denied subsequent attempts by members of the JANI-KING® Franchise System to list JANI-KING® Franchise Agreements in the Directory. (Ayres Decl. ¶ 12).*

> **RESPONSE:**  This paragraph does not set forth facts that are material to the outcome of the parties' pending motions for summary judgment. *See Anderson*, 477 U.S. at 247-48. Accordingly, no response is required. To the extent a response is deemed required, disputed.  The SBA did not begin use of the Directory until January 1, 2018.  Olear Decl. ¶ 39.

30.     *Plaintiffs understand that the SBA rejected the JANI-KING® Franchise Agreements for listing in the Directory either because the SBA considers members of the JANI-KING® Franchise System to be "passive businesses" ineligible for the Section 7(a) SBA Loan Program under 13 C.F.R. § 120.110(c) or because the SBA considers members of the JANI-KING® Franchise System to be "affiliated" with one another. (Ayres Decl. ¶ 13).*

> **RESPONSE:**  Undisputed.

***Ohio Services PPP Loan Application***

31.     *Plaintiff Ohio Services is a JANI-KING® Master Franchise with 18 full-time employees owned 51% by Pamela Carollo and 49% by her husband, Joe Carollo, President of Ohio Services. (2d Carollo Decl. ¶ 1). On April 3, 2020, Ohio Services submitted an application for a PPP loan to a local lender with which Ohio Services has a longstanding banking relationship, Erie Bank. (2d Carollo Decl. ¶ 13, Ex. 3).*

> **RESPONSE:** This paragraph does not set forth facts that are material to the outcome of the parties' pending motions for summary judgment. *See Anderson*, 477 U.S. at 247-48.

15

Accordingly, no response is required. To the extent a response is deemed required, undisputed.

32.      *In response to Ohio Services' PPP loan application, on April 6, 2020, Mr.*
*Carollo received an email from Wes Gillespie, President of Erie Bank, stating as follows:*
*Joe, please call me first thing in the morning. I believe we have a problem with your PPP*
*application. The lender's  application ask[]s if the business is a Franchise, if so it must be*
*registered and listed in the SBA Franchise Directory with a Franchise Identification code, if the*
*answer is no, the business may be ineligible for the PPP program. Is Jani-King listed in the SBA*
*Franchise directory?(2d Carollo Decl. ¶ 14, Ex. A).*

**RESPONSE:** This paragraph does not set forth facts that are material to the outcome of
the parties' pending motions for summary judgment. *See Anderson*, 477 U.S. at 247-48.
Accordingly, no response is required. To the extent a response is deemed required,
undisputed.

33.      *The following day, April 7, 2020, Mr. Carollo spoke with Mr. Gillespie about*
*Ohio Services' PPP loan application. During that conversation, Mr. Carollo informed Mr.*
*Gillespie that the JANI-KING® franchise agreement was not listed in the SBA Franchise*
*Directory but that JKF was seeking to have it listed. Shortly thereafter, Mr. Carollo received an*
*email from Mr. Gillespie stating in part:*

*Joe, I am sorry, both our 3rd party processor as well as SBA told us that as the*
*current program is written, you would have to be on the SBA Franchise list or*
*we can't submit the application. I'm really sorry, but it's out of my control on*
*my end because it's right on the lender's certified application that we have to*
*submit for the loan guarantee. I'm trying to figure out a way to do it, but don't*

16

> *see an option right now. I would have called you but on a Zoom meeting right*
>
> *now, I can call you later.*

*(2d Carollo Decl. ¶ 15, Ex. 5).*

**RESPONSE:**  This paragraph does not set forth facts that are material to the outcome of
the parties' pending motions for summary judgment. *See Anderson*, 477 U.S. at 247-48.
Accordingly, no response is required. To the extent a response is deemed required, the
first and second sentences are undisputed.  The third sentence contains inadmissible
hearsay and may not be considered for the truth of the proposition asserted in support of
a motion for summary judgment.  Accordingly, no response to the third sentence is
required.

34.     *On April 24, 2020, Ohio Services resubmitted its previously rejected application*
*for a PPP loan. (2d Carollo Decl. ¶ 16).*

**RESPONSE:** Undisputed.

35.     *On April 29, 2020 Ohio Services was notified by its lender that its PPP loan*
*application had been approved and would be funded the week of May 4, 2020. Ohio Services has*
*received no indication from its lender as to whether the SBA will take the position that its PPP*
*loan will be ineligible for loan forgiveness. (2d Carollo Decl. ¶ 16).*

**RESPONSE:** The first sentence is undisputed.  The second sentence does not set forth
facts that are material to the outcome of the parties' pending motions for summary
judgment. *See Anderson*, 477 U.S. at 247-48. Accordingly, no response is required.  To
the extent a response is deemed required, undisputed.

17

*The Tri-State JANI-KING® Unit Franchisee's PPP Loan Application*

36.     *Plaintiff A and A Enterprises, The Tri-State JANI-KING® Unit Franchisee,*
*owns seven different JANI-KING® Unit Franchises in Louisiana, Mississippi, and Alabama.*
*Jerry A. Snyder, President of The Tri-State JANI-KING® Unit Franchisee, was concerned about*
*not laying off any of the franchisee's approximately 20 full-time and 80 part-time employees. The*
*loss of an employee would harm the employee during this time of increasing unemployment and*
*would also harm The Tri-State JANI-KING® Unit Franchisee because of the costs associated*
*with training people and the loss of trusted employees. The Tri-State JANI-KING® Unit*
*Franchisee has experienced a 35 to 40 percent decrease in hours worked during the COVID-19*
*pandemic. Because there is not enough work to keep its employees paid, Mr. Snyder has funded*
*approximately $20,000 of payroll costs out of his own pocket. (Snyder Decl. ¶¶ 5-8).*

> **RESPONSE:**  This paragraph does not set forth facts that are material to the outcome of
> the parties' pending motions for summary judgment. *See Anderson*, 477 U.S. at 247-48.
> Accordingly, no response is required. To the extent that a response is required, disputed.
> This paragraph constitutes a paraphrase and characterization of the cited document;
> Defendants respectfully refer the Court to the cited document for a full and accurate
> statement of its contents.

37.     *On April 3, 2020, Mr. Snyder submitted a Borrower Application Form under the*
*Temporary PPP Loan Program to Community Bank of Mississippi, a lender approved by the*
*SBA. If its application for a PPP loan was approved, The Tri-State JANI-KING® Unit*
*Franchisee intended to use the proceeds to keep its employees paid at the amounts they were*
*paid before the pandemic. (Snyder Decl.¶ 10).*

**RESPONSE:** This paragraph does not set forth facts that are material to the outcome of the parties' pending motions for summary judgment. *See Anderson*, 477 U.S. at 247-48. Accordingly, no response is required. To the extent a response is deemed required, undisputed.

38.     The Tri-State JANI-KING® Unit Franchisee's application for a PPP loan closed and was funded by the lender on April 9, 2020. The Tri-State JANI-KING® Unit Franchisee received a loan of $143,000 on April 17, 2020. After the closing, however, a representative of the lender told The Tri-State JANI-KING® Unit Franchisee's that the SBA had notified it that the SBA would deny forgiveness of the loan under the Temporary PPP Loan Program because The Tri-State JANI-KING® Unit Franchisee's franchise agreement is not listed in the Directory. Based on this conversation and fearful of being accused of having wrongfully received the funds, the Tri-State JANI-KING® Unit Franchisee returned the much needed funds to the lender. After returning the funds, The Tri-State JANI-KING® Unit Franchisee continued funding payroll costs with Mr. Snyder's personal funds. (Snyder Decl. ¶ 11).

**RESPONSE:** This paragraph does not set forth facts that are material to the outcome of the parties' pending motions for summary judgment. *See Anderson*, 477 U.S. at 247-48. Accordingly, no response is required. To the extent a response is deemed required, sentences 1, 2, 4, and 5 are undisputed.  The third sentence is inadmissible hearsay and may not be considered for the truth of the proposition asserted in support of a motion for summary judgment. Accordingly, no response to sentence 3 is required.  To the extent a response is deemed necessary, disputed.  The SBA has not yet decided as a matter of law or policy what criteria it will apply in determining whether to grant applications for PPP loan forgiveness under section 1106 of the CARES Act.

39.     On April 28, 2020, The Tri-State JANI-KING® Unit Franchisee resubmitted its

PPP loan application. Thereafter, The Tri-State JANI-KING® Unit Franchisee told the SBA

local representatives that a JANI-KING® Unit Franchise Agreement similar in form and content

to its franchise agreement had recently been approved for listing in the SBA Franchise

Directory.  On April 30, 2020, The Tri-State JANI-KING® Unit Franchisee was notified by its

lender that its PPP loan application had been approved, and The Tri-State JANI-KING® Unit

Franchisee received funding on April 30, 2020. (Snyder Decl. ¶ 12).

    **RESPONSE:**  Undisputed.

40.     That following day, May 1, 2020, The Tri-State JANI-KING® Unit Franchisee

was notified by its lender that the SBA was taking the position that the PPP loan was ineligible

for loan forgiveness. (Snyder Decl. ¶ 13).

    **RESPONSE:**  This paragraph does not set forth facts that are material to the outcome of

the parties' pending motions for summary judgment. *See Anderson*, 477 U.S. at 247-48.

In addition, this paragraph is inadmissible hearsay and may not be considered for the

truth of the proposition asserted in support of a motion for summary judgment.

Accordingly, no response is required.  To the extent a response is deemed necessary,

disputed.  The SBA has not yet decided as a matter of law or policy what criteria it will

apply in determining whether to grant applications for PPP loan forgiveness under

section 1106 of the CARES Act.

**The D.C. JANI-KING® Master Franchise's PPP Loan Application**

41.     On April 2, 2020, the JANI-KING® Master Franchise in the Washington, D.C.

area—Jani-King of Washington, D.C., Inc. ("The D.C. JANI-KING® Master Franchise")—

sought to have the JANI-KING® Franchise Agreement that it uses with its JANI-KING® Unit

*Franchisees listed in the Directory. The JANI-KING® Unit Franchise Agreement used by The*

*D.C. JANI-KING® Master Franchise is the same form that all JANI-KING® Master Franchises*

*nationwide use with their JANI-KING® Unit Franchisees. (Ayres Decl. ¶ 14).*

> **RESPONSE:** This paragraph does not set forth facts that are material to the outcome of
>
> the parties' pending motions for summary judgment. *See Anderson*, 477 U.S. at 247-48.
>
> Accordingly, no response is required. To the extent a response is deemed required,
>
> undisputed.

*42.    On April 8, 2020, the SBA's Chief Franchise Counsel notified the individual who*

*had submitted the listing request on behalf of The D.C. JANI-KING® Master Franchise that its*

*agreement was ineligible to be listed in the Directory and that its JANI-KING® Unit*

*Franchisees were ineligible for loans under the Temporary PPP Loan Program. (Ayres Decl. ¶*

*15).*

> **RESPONSE:** This paragraph does not set forth facts that are material to the outcome of
>
> the parties' pending motions for summary judgment. *See Anderson*, 477 U.S. at 247-48.
>
> Accordingly, no response is required. To the extent a response is deemed required,
>
> undisputed.

*43.    On April 27, 2020, the SBA sent an email stating the JANI-KING® Unit*

*Franchise Agreement submitted by The D.C. JANI-KING® Master Franchise would be listed in*

*the Directory for purposes of the Temporary PPP Loan Program only. (Ayres Decl. ¶ 16, Ex. C).*

> **RESPONSE:** Undisputed.

*Harm to Plaintiffs and the JANI-KING® Franchise System*

*44.      The SBA's administration of the Temporary PPP Loan Program and the Section 7(a) SBA Loan Program threatens Jani-King International and the entire JANI-KING® Franchise System with irreparable harm. (Meister Decl. ¶¶ 5-6).*

> **RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of fact.  Accordingly, no response is required.  To the extent a response is deemed required, disputed.  The cited document does not set forth sufficient evidence of specific facts from which a finding of the asserted irreparable harm can be made.

*45.      The SBA's administration of the Temporary PPP Loan Program and the Section 7(a) SBA Loan Program threatens JKF and the entire JANI-KING® Franchise System with irreparable harm. (Ayres Decl. ¶¶ 17-18).*

> **RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of fact.  Accordingly, no response is required.  To the extent a response is deemed required, disputed.  The cited document does not set forth sufficient evidence of specific facts from which a finding of the asserted irreparable harm can be made.

*46.      The SBA's conduct threatens Plaintiff Ohio Services with irreparable harm. (Carollo Decl. ¶¶ 19-20).*

> **RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of fact.  Accordingly, no response is required.  To the extent a response is deemed required, disputed.  The cited document does not set forth sufficient evidence of specific facts from which a finding of the asserted irreparable harm can be made.

47.     *The SBA's conduct threatens Plaintiff A and A Enterprises with irreparable*

*harm, including potential closure of one or more of its locations. (Snyder Decl. ¶¶ 14-17).*

**RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of

fact.  Accordingly, no response is required.  To the extent a response is deemed

required, disputed.  The cited document does not set forth sufficient evidence of specific

facts from which a finding of the asserted irreparable harm can be made.

Dated:  May 11, 2020

                                                  Respectfully submitted,

                                                  JOSEPH H. HUNT
                                                  Assistant Attorney General

                                                  DAVID M. MORRELL
                                                  Deputy Assistant Attorney General

                                                  JOHN R. GRIFFITHS
                                                  Director

                                                  ERIC WOMACK
                                                  Assistant Director

                                                  JAMES J. GILLIGAN
                                                  Special Litigation Counsel

                                                   */s/  Indraneel Sur*
                                                  INDRANEEL SUR
                                                  CORMAC EARLY
                                                  Trial Attorneys

                                                  Federal Programs Branch,
                                                  Civil Division
                                                  United States Department of Justice
                                                  P.O. Box 883
                                                  Washington, D.C. 20044
                                                  Telephone:  (202) 616-8448
                                                  E-mail:     Indraneel.Sur@usdoj.gov

                                                  *Counsel for Defendants*