**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JANI-KING INTERNATIONAL, INC.,** *et al.*, | ) | |
| | ) | |
| | ) | |
| **Plaintiffs**, | ) | |
| | ) | **CASE NO.:  1:20-cv-00989 (TNM)** |
| **v.** | ) | |
| | ) | |
| **UNITED STATES SMALL BUSINESS** | ) | |
| **ADMINISTRATION,** *et al.* | ) | |
| | ) | |
| | ) | |
| **Defendants.** | | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Michael J. Lockerby (D.C. Bar No. 502987)
Frank S. Murray, Jr. (D.C. Bar No. 452063)
Jack G. Haake (D.C. Bar No. 1024798)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Sixth Floor
Washington, D.C. 20007-5143
(202) 672-5300
(202) 672-5399 (fax)

Peter L. Loh (admitted *pro hac vice*)
FOLEY & LARDNER LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
(214) 999-3000
(214) 999-4667 (fax)

Counsel for Plaintiffs,
Jani-King International, Inc.,
Jani-King Franchising, Inc.,
Ohio Services–CLE, LLC
dba Jani-King of Cleveland, and
A and A Enterprises dba Jani-King

May 13, 2020

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ......................................................................... 1

II.    THE UNDISPUTED MATERIAL FACTS..................................................... 10

III.   ARGUMENT.................................................................................................. 11

     A.     Plaintiffs' Claims Are Not Moot Because the SBA Now Claims the Right
            to Re-Examine and Reverse Lenders' Determinations of Plaintiffs'
            Eligibility. ................................................................................................. 11

     B.     The Apparent Funding of PPP Loans for Three Plaintiffs By Lenders
            Does Not Resolve This Case or Controversy or Affect Plaintiffs' Standing........ 19

IV.    CONCLUSION............................................................................................. 22

4842-4671-5068.3

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Babbitt v. United Farm Workers Nat. Union,*
  442 U.S. 289 (1979)...................................................................................................16

*Batterton v. Marshall,*
  648 F.2d 694 (D.C. Cir. 1980) ......................................................................................4

*Butler v. Enter. Integration Corp.,*
  No. 1:19-CV-01074 (CJN), 2020 WL 2198045 (D.D.C. May 6, 2020)....................9

*Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.,*
  No. 20-c-0601, 2020 WL 2088637 (E.D. Wis. May 1, 2020) .............................1, 2

*City of Waukesha v. EPA,*
  320 F.3d 228 (D.C. Cir. 2003) ....................................................................................17

*Cty. of Santa Clara v. Trump,*
  250 F.Supp.3d 497 (N.D. Cal. 2017) .........................................................................22

*DV Diamond Club of Flint, LLC v. United States Small Bus. Admin,*
  No. 20-cv-108999, 2020 WL 2315880 (E.D. Mich. May 11, 2020) ....................1, 2

*Mendoza v. Perez,*
  754 F.3d 1002 (D.C. Cir. 2014) ...................................................................................3

*Relman, Dane & Colfax PLLC v. Fair Hous. Council of San Fernado Valley,*
  No. 1:18-CV-00495 (TNM), 2019 WL 4737113 (D.D.C. Sept. 27, 2019) ............18

*Relman, Dane & Colfax PLLC v. Fair Hous. Council of San Fernando Valley,*
  No. CV1800495TNMRMM, 2019 WL 3779901 (D.D.C. Aug. 12, 2019) ............18

*Sandvig v. Barr,*
  No. CV 16-1368 (JDB), 2020 WL 1494065 (D.D.C. Mar. 27, 2020) ....................18

*In re Special Grand Jury*
  89-2, 450 F.3d 1159 (10th Cir. 2006) ........................................................................22

**Statutes**

5 U.S.C. § 553(b)(A).......................................................................................................3

15 U.S.C. § 634(b)(1) .....................................................................................................1

15 U.S.C. § 636(a)(36)(D) .............................................................................................2

4842-4671-5068.3

15 U.S.C. § 636(a)(36)(D)(i) ...........................................................................................3

CARES Act....................................................................................1, 2, 3, 5, 9, 11, 13, 14, 20, 22

CARES Act, Sections 1102 ......................................................................................11, 14, 20

CARES Act Section 1102(e) ...........................................................................................3

CARES Act Section 1106................................................................................11, 12, 14, 18, 20

CARES Act, Section 1106(a)(6), (b) ..............................................................................9

Declaratory Judgment Act ...............................................................................................9

Small Business Act Section 7(a).........................................................2, 3, 4, 8, 9, 10, 13, 17, 20, 22

**Other Authorities**

13 C.F.R. § 120.110 ...............................................................................................16, 17

13 C.F.R. § 120.110(c)...........................................................................................15, 17

13 C.F.R. § 121.301(f)(5) .......................................................................................3, 6, 7

13 C.F.R. § 121.301(f). 15 ...................................................................................................3

13 CFR 120.110 ...................................................................................................................17

85 Fed. Reg. 20811, 20812 (Apr. 15, 2020) .......................................................................17

Fed. R. Civ. P. 56(c) .........................................................................................................10

https://home.treasury.gov/policy-issues/cares/assistance-for-small-businesses (last
   visited May 13, 2020) ...................................................................................................13

4842-4671-5068.3

Plaintiffs, by counsel, respectfully state as follows for their reply to Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment (Dkt. #24) (the "SBA's Opposition").[1]

## I.     PRELIMINARY STATEMENT

Within the last two weeks, at least two federal courts have done what the SBA still insists no federal court has the authority to do: enter an injunction against the SBA.  In the first such case, decided May 1, 2020, the U.S. District Court for the Eastern District of Wisconsin pointed out that—under the SBA's interpretation of 15 U.S.C. § 634(b)(1)—"the SBA could adopt a policy stating that it will extend small business loans only to companies owned by white men" and not be enjoined from enforcing such a policy.  *Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.,* No. 20-c-0601, 2020 WL 2088637, at *1 (E.D. Wis. May 1, 2020).  And on Monday of this week, the Eastern District of Michigan agreed with the court in *Camelot* that it could and should award injunctive relief "'to set aside unlawful agency action.'"  *DV Diamond Club of Flint, LLC v. United States Small Bus. Admin*, No. 20-cv-108999, 2020 WL 2315880 (E.D. Mich. May 11, 2020) (quoting *Camelot Banquet Rooms*, 2020 WL 2088637, at *4).  In both cases, the SBA insisted that its "Standard Operating Procedure for Lender and Development Company Loan Programs 50 10 5(K)"—the same "SOP" challenged by Plaintiffs in this case (albeit a different provision)—authorized the SBA to deny PPP loans to applicants that otherwise met the size and other eligibility criteria set forth in the CARES Act.  In both cases, the court told the SBA that it was wrong.

---

[1] All defined terms used in the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment (Dkt. #17-1) shall have the same meaning herein.

4842-4671-5068.3

The SBA apparently was not persuaded by the court's rationale in either *Camelot Banquet Rooms* or *DV Diamond Club of Flint*.  Both before and after these rulings, the SBA has continued to insist that it can use the SOP to deny members of the JANI-KING® Franchise System access to PPP loans—just as it has done for years under the Section 7(a) SBA Loan Program.  Indeed, the very day that *DV Diamond Club of Flint* was decided, the SBA told this Court that its use of the SOP to make eligibility determinations was and is entirely proper.  *See e.g.*, SBA Opp. pp. 2, 3, 17, 18, 19, 20, 23, and 24 (Dkt. #24) (pp. 9, 10, 24, 25, 26, 27, 30, 31 of 60).

On the merits, the SBA is clearly wrong.  Even if the eligibility criteria for PPP loans set forth in the CARES Act were the same as those for Section 7(a) loans,[2] and even if the CARES Act permitted the SBA to use the Directory for any purpose other than expanding rather than restricting eligibility for PPP loans,[3] the SBA's Directory listing requirement was and is a sheer

---

[2] As the district court observed in *DV Diamond Club of Flint*, one section of the CARES Act whereby the PPP was established (15 U.S.C. § 636(a)(36)(D)) is entitled "Increased Eligibility for Certain Small Businesses and Organizations."  2020 WL 231580 at *4.  Because the CARES Act established only two eligibility criteria for PPP loans, the SBA cannot use the SOP or any other policy or procedure—not even a duly issued regulation—to further restrict eligibility:

> Congress identified in the PPP only two criteria that a business concern must satisfy in order to qualify for loan guarantee eligibility: (1) during the covered period (2) it must have less than 500 employees or less than the size standard in number of employees established by the Administration for the industry in which the business operates.  Under the settled *expressio unius exclusio alterius* rule of statutory construction, Congress's express listing of these two eligibility criteria indicates that Congress did not intend there to be any other criteria for loan guarantee eligibility.

*Id.* at 10.

[3] The sole purpose for which the CARES Act authorizes the SBA to use the Directory is that a Directory listing automatically exempts a "franchise" listed in the Directory from the

act of bureaucratic lawlessness.   No statute—not Section 7(a) of the Small Business Act, and certainly not the amendments to Section 7(a) made by the CARES Act—permits the SBA to deny (or, perhaps more accurately, ***direct its lenders to deny***) loans to any franchised business that does not have its franchise agreement or "brand" listed in the Directory.   No regulation— especially not the "affiliation" rules set forth in 13 C.F.R. § 121.301(f)(5)—authorizes the SBA to erect this additional barrier around its lending programs for franchised businesses.   The one time that the SBA tried to slip such a requirement into its regulations—obliquely, in February of this year—Congress shut it down quickly.   Section 1102(e) of the CARES Act declares that the SBA's February 10, 2020 Interim Final Rule (to which the Amended Complaint refers to as the "Revoked Affiliation Rule") "is permanently rescinded and shall have no force and effect."

The SBA—prohibited by statute from imposing the Directory listing requirement, and unable to cite any regulation that authorizes it to do so—now insists that this mandate is a mere "procedural rule" that is exempt from the APA's notice-and-comment rulemaking requirements by virtue of 5 U.S.C. § 553(b)(A) ("rules of agency organization, procedure, or practice").   The SBA apparently is not persuaded by what the D.C. Circuit has to say on this issue.   Its precedents are clear that the APA exemption for procedural rules cannot be applied "where the agency action trenches on substantial private rights and interests."   *Mendoza v. Perez*, 754 F.3d 1002, 1023 (D.C. Cir. 2014) (citing *Batterton v. Marshall*, 648 F.2d 694, 708 (D.C. Cir. 1980)).   The SBA's directives to lenders and prospective borrowers qualify as "procedural rules" only if they

---

affiliation rule set forth in 13 C.F.R. § 121.301(f).  15 U.S.C. § 636(a)(36)(D)(iv).  As a result, if a "franchise" listed in the Directory employed 300 individuals but had an "affiliate" with an additional 300 employees, the applicant would be eligible for a PPP loan anyway.  Again, under the principle *expressio unius exclusio alterius*, Congress's directive to use the Directory for this purpose means that the SBA cannot use the Directory for any other purpose—certainly not as a barrier to eligibility for a business otherwise eligible under the only two criteria imposed by 15 U.S.C. § 636(a)(36)(D)(i).

3

"do not themselves alter the rights or interests of parties." *Batterton*, 648 F.2d at 707. On its face, the SOP's Directory listing requirement "trenches on substantial private rights and interests" and "alter[s] the rights or interests of parties." It tells lenders that, without such a Directory listing, they cannot approve loans to otherwise eligible franchised businesses, and prospective franchise borrowers need not even bother to apply.[4] Members of the JANI-KING® Franchise System that have tried to get past this requirement have been told in no uncertain terms—by the SBA's Chief Franchise Counsel himself—that they are ineligible and that the JANI-KING® Franchise Agreement will not be listed in the Directory. Indeed, the documented official position of "the SBA Franchise Team" as of April 6, 2020 is that the entire JANI-KING® business model is ineligible for SBA financing, a sweeping pronouncement that effectively "blacklists" every member of the JANI-KING® Franchise System in one fell swoop. *See* April 6, 2020 email to "Certified Loan Broker" from "The SBA Franchise Team," attached as **Exhibit A**.[5] That continues to be the SBA's position. Indeed, the SBA's Chief Franchise Counsel has since submitted sworn testimony that the SBA had nothing to do with the recent approvals of PPP loans—at least for funding if not forgiveness—to the JANI-KING® Master Franchise (Ohio Services) and JANI-KING® Unit Franchisee (A and A Enterprises) that happen to be among the plaintiffs in this case. (2d Olear Decl. ¶¶ 4-8) (Dkt. #24-1).

---

[4] The SOP states, in boldface type: "**If the Applicant's brand meets the FTC definition of a franchise, it must be on the Directory in order to obtain SBA financing.**" (Dkt. #13-7) (p. 97 of 498) (emphasis added). The SBA's lender application form for PPP loans states unequivocally that, unless the applicant's franchise is listed in the Directory, "the loan cannot be approved." (Dkt. #17-5) (p. 58 of 63). The SBA's lender application form for the Section 7(a) program similarly states that if the applicant's brand "meets the FTC definition of a franchise" but is not listed in the Directory, "the loan is not eligible." (Dkt. #23-1) (p. 6 of 12).

[5] It appears that "The SBA Franchise Team" referenced in the e-mail was the *nom de guerre* of the SBA's Chief Franchise Counsel, who has admitted providing the response in question. *See* Olear Decl. ¶ 74 (Dkt. # 16-1).

4

Even though PPP loans have now been "approved" for Plaintiffs Jani-King International (whose application identified Plaintiff JKF as an "affiliate"), Ohio Services, and A and A Enterprises, there is much less to these approvals than meets the eye.  As the SBA took great pains to emphasize in its most recent filing, the SBA itself has in no way "approved" these members of the JANI-KING® Franchise System as eligible recipients of the PPP loan funds disbursed to them by their banks under delegated authority.  *See* 2d Olear Decl. ¶ 7 (Dkt. # 24-1) ("the approval of PPP loans to Plaintiffs Jani-King International, Inc., Ohio-Services-CLE, LLC and A and A Enterprises, LLC does not indicate that SBA reviewed or approved, or directed lenders to approve, PPP loan applications that these Plaintiffs submitted to their lenders").  With respect to these three loans, the SBA's position—as set forth herein—is that "the SBA giveth and the SBA taketh away."  Although the CARES Act says otherwise, the SBA claims the right to declare borrowers "ineligible" after the fact, deny loan forgiveness, and demand immediate repayment of the full amount of the loan upon threat of enforcement action.  As a result of the SBA's insistence both before and during this litigation that the JANI-KING® "business model is not eligible for SBA financing" (**Exhibit A**), therefore, these three Plaintiffs cannot make use of the PPP loan funds they have received in the manner Congress intended.  As Plaintiffs have explained, a PPP loan without the prospect of loan forgiveness is no benefit, but an additional financial ***burden***, because of the imminent threat that the SBA will demand repayment of amounts already spent on payroll and other uses expressly authorized by the CARES Act.  Such an outcome, by saddling Plaintiffs and potentially other members of the JANI-KING® Franchise System with unsustainable debt, would leave Plaintiffs worse off than if they had never received a PPP loan in the first place.[6]

---

[6] *See* 2d Carollo Decl. ¶ 20 (Dkt. #17-5) (p. 9 of 63); Snyder Decl. ¶¶ 13, 16 (Dkt. #17-6)

The SBA's Opposition tries to make much of the fact that, shortly before its summary judgment motion was due, the SBA approved (for purposes of PPP loans only) Directory listings for JANI-KING® *Unit* Franchise Agreements that had previously been submitted by two JANI-KING® Master Franchises that are not parties to this litigation: Jani-King Gulf Coast and Jani-King of Washington, D.C.   This about-face does not change the fact that no JANI-KING® *Master* Franchise Agreement has been accepted for listing in the Directory for any purpose.   And of course, the SBA steadfastly insists—in its memoranda of points and authorities, two declarations from the SBA's Chief Franchise Counsel, and communications with prospective lenders and borrowers—that no member of the JANI-KING® Franchise System need even apply.

By and large, the fallacies in the SBA's interpretation of the APA in general and its own statutory and regulatory authority in particular have already been addressed—at length—in the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment (Dkt. #17-1) and Plaintiffs' Opposition to the SBA's Motion for Summary Judgment (Dkt. #24). Still, the SBA's Opposition raises a few new arguments and embellishments of its prior arguments that are worthy of mention at least in passing.   One is the suggestion that the Directory listing requirement merely screens franchised businesses that would be ineligible anyway under the affiliation rules set forth in 13 C.F.R. § 121.301(f)(5).  Plaintiffs' Opposition to the SBA's Motion for Summary Judgment sets forth in detail (*see* Part III.C) how "franchises" that qualify under 13 C.F.R. § 121.301(f)(5) would nevertheless be barred by the SBA's "Directory-or-bust" requirement.  If the "franchise" is not listed in the Directory, the SBA will not even consider whether the applicant's size qualifies it for SBA assistance.  (Dkt. #24) (pp.

---

(pp. 4-5 of 47); Ayres Decl. ¶ 17 (Dkt. #17-4) (pp. 5-6 of 87).

33-43 of 51).  This practice on the part of the SBA conflicts with the following provision of its

own regulations:

> The restraints imposed on a franchisee or licensee by its franchise
> or license agreement generally ***will not be considered*** in
> determining whether the franchisor or licensor is affiliated with an
> applicant franchisee or licensee provided the applicant franchisee
> or licensee has the right o profit from its efforts and bears the risk
> of loss commensurate with ownership."

13 C.F.R. § 121.301(f)(5) (2009) (emphasis added).

As for the SBA's contention that JANI-KING® Master Franchises are supposedly too

"passive" (while simultaneously being too "active" for JANI-KING® Unit Franchisees to qualify

either), the legal and logical fallacies in this argument are addressed at length in Plaintiffs'

Opposition to the SBA's Motion for Summary Judgment.  (Dkt. #23) (pp. 43 – 48 of 51).  The

SBA's Chief Franchise Counsel has since piled on with a Second Declaration in which he cites

the fact that JANI-KING® Master Franchises collect royalties rather than performing

commercial cleaning services.  (2d Olear Decl. ¶¶ 21-23) (Dkt. #24-1).  The fact that JANI-

KING® Master Franchises "don't do windows," however, does not make them "passive."  For

one thing, the SBA's *post hoc* rationalization ignores the many services that JANI-KING®

Master Franchises do perform—services completely unlike those performed by any landlord or

real estate developer.[7]  The record is clear that a JANI-KING® Master Franchise is both a

franchisor and a franchisee.  Under the SBA's rationale, no franchisor could ever qualify for

SBA assistance, because it would necessarily be a "passive business" whose income is dependent

upon the royalty payments and other fees generated by its franchisees.  But the SOP expressly

says that franchisors ***are*** eligible for SBA business loans:

---

[7] Plaintiffs' Opposition to the SBA's Motion for Summary Judgment.  (Dkt. #23) (pp. 44 – 48 of 51).

h.      Applications involving an applicant franchisor:

If the Applicant is a franchisor, it must together with all affiliates not exceed the size standard designated for either the primary industry of the Applicant alone or the primary industry of the Applicant and its affiliates, whichever is higher.  A franchisor's relationship with its franchisees under a franchise agreement must be considered when making a size determination.  If affiliation is found between a franchisor and its franchisees based on the franchise agreement, the Franchisor may execute a global addendum to resolve an affiliation issue(s) with respect to all agreements with its franchisees.  To request a determination of affiliation and, if necessary, obtain a franchisor global addendum for a franchisor Applicant, please contact franchise@sba.gov.

SOP Subpart B, Chapter 2, Section II.D.8.h.  (Am. Compl., Ex. C, Dkt. # 13-7 at p. 103 of 428).

The franchisor of a fast food restaurant does not flip burgers, instead collecting royalties from franchisees that do.  So why are franchisors eligible but master franchisors are not?  Apparently, the answer is: because the SBA says so.  The SBA has not said so, however, in a regulation that has ever undergone the notice-and comment rulemaking required by the APA.

Whether the recent approval of PPP loan funding for Plaintiffs by the SBA's lenders is merely a coincidence is of no import.  This late-breaking news does not eliminate the injury to Plaintiffs and other members of the JANI-KING® Franchise System resulting from the SBA's lawless administration of the Temporary PPP Loan Program and the Section 7(a) Loan Program. The SBA has already declared that it has the right to decide, after the fact, that Plaintiffs were deemed eligible for PPP loans "improvidently."[8]  For Plaintiffs, such an about-face would be more than "improvident."  It would be disastrous if, as the SBA suggests, the loans would not be

---

[8] Today, the SBA issued guidance to borrowers of PPP loans announcing that the SBA would perform after-the-fact reviews to determine whether loans had been issued in compliance with the Interim Final Rules the SBA has issued and will be denying loan forgiveness and demanding immediate and full repayment of loans issued to borrowers the SBA deems to have been ineligible to receive them.  (**Exhibit B** at 16).

8

forgiven in accordance with the statute.  The CARES Act defines eligible recipient for purposes of forgiveness as "the recipient of a [PPP] loan."  CARES Act, Section 1106(a)(6), (b).  A declaratory judgment and/or injunction preventing the SBA from amending the statute to provide otherwise will prevent injury and avoid a multiplicity of litigation as contemplated by the Declaratory Judgment Act.[9]  Already, the SBA has announced that it may seek to require PPP loan recipients to return the funds after the fact in a formal guidance to borrowers issued just today.  (**Exhibit B** at 16).  No one disputes that such a result might be justified in case of fraud.  But no statute or regulation authorizes this result if the SBA "moves the goal posts" by changing the eligibility standards after the fact.  To this day, the SBA will not list any form of the JANI-KING® Master Franchise Agreement in the Directory for any purpose.  This refusal harms not only Plaintiffs Jani-King International and JKF, but also the JANI-KING® Master Franchises, eleven of which are owned by JKF.

Last but not least, the SBA maintains its insistence that no member of the JANI-KING® Franchise System is eligible for the Section 7(a) SBA Loan Program—an ineligibility determination that affects the availability of PPP loans as well because the SBA maintains that an entity that it deems ineligible for a Section 7(a) loan is also ineligible for a PPP loan.  The two declarations of the SBA Chief Franchise Counsel confirm that this has been the position of the SBA for years and that it continues to be the position of the SBA today.  Under the authorities cited in support of Plaintiffs' Motion for Summary Judgment, the 5,600+ members of the JANI-KING® Franchise System do not have to engage in the futile act of applying for Section 7(a)

---

[9] *See, e.g., Butler v. Enter. Integration Corp.*, No. 1:19-CV-01074 (CJN), 2020 WL 2198045, at *18 (D.D.C. May 6, 2020) ("Ultimately, the purpose of the Declaratory Judgment Act is to 'allow the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings.'") (citing *Glenn v. Fay*, 222 F. Supp. 3d 31, 36 (D.D.C. 2016)).

4842-4671-5068.3

loans for which the SBA has already deemed them to be ineligible.  Nor is it necessary or practicable to challenge the SBA's conduct by means of a class action or other suit with literally thousands of plaintiffs.  The SBA's own procedures contemplate that Plaintiffs Jani-King International and JKF can seek to qualify the entire JANI-KING® Franchise System for SBA assistance (absent unique circumstances, such as size, that might disqualify individual applicants).

The SBA has already declared the entire JANI-KING® Franchise System ineligible. Plaintiffs Jani-King International and JKF are uniquely situated to right this wrong for themselves and the other injured members of the JANI-KING® Franchise System.  The relief sought by Plaintiffs would not result in the Court engaging in detailed, ongoing supervision of the SBA.  To the contrary, it would avoid the need for such involvement on an ongoing basis by correcting—in one fell swoop—the SBA's misapplication of its own statutory and regulatory authority and the mandates of the APA.

## II.    THE UNDISPUTED MATERIAL FACTS

The SBA's Opposition is accompanied by a document entitled "Defendants' Response to Plaintiffs' Statement of Undisputed Material Facts" (Dkt. #24) (pp. 37-60) (the "SBA's SUMF Response").  Even with respect to the few paragraphs that the SBA purportedly disputes, the SBA's SUMF Response states that "the use of the word 'disputed' or similar references herein should not be construed to mean that Defendants believe that there are genuine issues of fact that would necessitate a trial." (Dkt. #24) (p. 38 of 60).  Moreover, of these purportedly disputed paragraphs, not one has been disputed in accordance with Fed. R. Civ. P. 56(c).  Whether characterized as issues of fact or questions of law, the matters before the Court can be reduced to one simple question:  is there a statute or duly promulgated regulation that authorizes the SBA to deny members of the JANI-KING® Franchise System access to PPP loans, Section 7(a) loans, or

10

both?  The SBA's inability to identify such a statute or regulation means that Plaintiffs are entitled to judgment as a matter of law on their claim that the SBA has violated the APA.

### III.     ARGUMENT

**A.     Plaintiffs' Claims Are Not Moot Because the SBA Now Claims the Right to Re-Examine and Reverse Lenders' Determinations of Plaintiffs' Eligibility.**

Plaintiffs' claims are not moot because the SBA today formally announced that it will deny loan forgiveness and require repayment of PPP loans that it determines were issued to businesses that it considers ineligible to have received them.  By way of background, the CARES Act created several different avenues of relief for businesses affected by the economic disruption caused by the COVID-19 pandemic, including multiple different loan programs.  *See* CARES Act, Sections 1102 (PPP loans), 1110 (Economic Injury Disaster Loans), 4403 ("Main Street" lending program).  What made the Temporary PPP Loan Program so attractive to adversely affected small businesses like Plaintiffs is the feature unique to the program: the opportunity to have the entire loan (including both the principal and accrued interest) forgiven.  CARES Act Section 1106.  That is a critical point that the SBA seeks to elide by contending that the issue of Plaintiffs' eligibility to receive SBA financial assistance under the Temporary PPP Loan Program has been rendered moot by the mere disbursement of loan funds by lenders—a process from which the SBA takes great pains to distance itself completely.  *See e.g.,* SBA Opp. at 5 ("the SBA had no involvement with the independent determinations reached by Plaintiffs' lenders to approve them for PPP financing") (Dkt. #24); 2d Olear Decl. ¶¶ 4-7 (Dkt. #24-1).

But the mere disbursement of PPP loan proceeds by lenders—which the SBA has asserted to the Court was done without any agreement or acknowledgment by the SBA that Plaintiffs are, in fact, *eligible* to receive SBA financial assistance—is only the first, and arguably *least important*, aspect of the financial assistance the CARES Act made available to businesses

under the Temporary PPP Loan Program.  The far more important aspect of the financial assistance available to businesses under the Temporary PPP Loan Program is the SBA's forgiveness of the loan, converting what would otherwise be a potentially crippling additional debt incurred in the midst of widespread economic disruption into what amounts to a government grant.[10]

The SBA has attempted to dodge the critical issue of loan forgiveness in this litigation by claiming that "[i]t remains to be seen whether or not the SBA will refuse to forgive loans, such as Jani-King International's, that may have been improvidently granted."  (SBA MSJ at 19).  The SBA's Opposition continued to beat this "just-wait-and-see" drum, stating: "to date the SBA has not issued regulations or guidance addressing the criteria to be applied in determining whether PPP borrowers are eligible for loan forgiveness under section 1106."  (SBA Opp. at 7) (Dkt. #24).  To the extent that assertion may have been accurate on May 11, 2020, it is no longer accurate as of May 13, 2020.  Today, the SBA issued guidance to PPP borrowers expressly announcing the SBA's intent to deny loan forgiveness, and require immediate repayment of the PPP loan amounts, by borrowers determined by the SBA in its *post hoc* review of loan documentation not to have been eligible (in the SBA's view) to receive a PPP loan.

The SBA issued that guidance in the form of a response to a Frequently Asked Question ("FAQ") posted under the "Program Rules" heading on the website maintained by the U.S. Department of Treasury to inform lenders and borrowers of the rules, policies, and procedures

---

[10]  *See* Ayres Decl.  ¶ 17 (receipt of PPP loans by Jani-King franchisees without forgiveness threatens their economic viability "because a franchisee will not be economically viable if it takes on debt to cover payroll costs that are not supportable by the cash flow of the business"); Carollo Second Decl. ¶ 20; Snyder Decl. ¶¶ 13, 16.

4842-4671-5068.3

applicable to the Temporary PPP Loan Program.[11]   One of the certifications required by applicants for PPP loans, as documented within the "General Eligibility" section of the SBA's PPP Lender Application Form, is that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."   *See* Carollo 2d Decl., Ex. 3 at 1 (Dkt. #17-5 at 58).   Today, the SBA issued a new FAQ response advising borrowers that, as part of its previously announced plan to conduct after-the-fact reviews of PPP loan documentation, the SBA intends to deny loan forgiveness and require immediate repayment of loans that the SBA determines were, to use the language from its summary judgment motion in this action, "improvidently granted:"

> SBA has previously stated that all PPP loans in excess of $2 million, and other PPP loans as appropriate, will be subject to review by SBA for compliance with program requirements set forth in the PPP Interim Final Rules and in the Borrower Application Form. If SBA determines in the course of its review that a borrower lacked an adequate basis for the required certification concerning the necessity of the loan request, SBA will seek repayment of the outstanding PPP loan balance and will inform the lender that the borrower is not eligible for loan forgiveness. If the borrower repays the loan after receiving notification from SBA, SBA will not pursue administrative enforcement or referrals to other agencies based on its determination with respect to the certification concerning necessity of the loan request.

(**Exhibit B**   at 16 (FAQ #46).  The SBA's announced policy of denying loan forgiveness to recipients of PPP loans that the SBA subsequently deems unworthy of having received the loans is yet another example of the SBA's impermissible departure from the unambiguous text of the CARES Act itself.   Section 1106(a)(1) defines a "covered loan" for purposes of the loan forgiveness provisions of the CARES Act as "a loan guaranteed under paragraph (36) of section 7(a) of the Small Business Act (15 U.S.C. 636(a)), as added by section 1102"—in other words,

---

[11]   The Treasury website address is   https://home.treasury.gov/policy-issues/cares/assistance-for-small-businesses (last visited May 13, 2020).

as a PPP loan. Section 1106(a)(6) defines an "eligible recipient" for purposes of loan forgiveness as "the recipient of a covered loan."  Section 1106(b) states plainly that loan forgiveness is available to any "eligible recipient" and that: "An eligible recipient ***shall be eligible for forgiveness of indebtedness on a covered loan*** …." (emphasis added).  Thus, under the plain text of the CARES Act, any recipient of a PPP loan "shall be eligible for forgiveness" of the loan amount, as provided in Section 1106.

The new FAQ response announces unequivocally, as the official policy of the SBA,[12] that the SBA will deny loan forgiveness and require prompt repayment of the full loan amount for borrowers that the SBA determines, as part of its after-the-fact review of the loan decisions made by its delegated lenders, were not, in the SBA's view, actually eligible to receive a PPP loan. That statement of SBA policy regarding the repercussions facing borrowers deemed by the SBA to have been "ineligible" to have received PPP funds demonstrates that Plaintiffs continue to face imminent injury from the SBA's position—both before and during this litigation—that Plaintiffs and other members of the JANI-KING® Franchise System are categorically ineligible to receive SBA loan assistance, based on the affiliation issues and "passive business" ineligibility determination challenged in this action.[13]  Indeed, the SBA has been adamant in its position—as internally inconsistent and irrational as it has been shown to be—that Plaintiff Ohio Services, as

---

[12] While the FAQ responses are not themselves issued in the form of an interim final rule, the SBA has notified both borrowers and lenders that they are entitled to rely on the guidance provided in the FAQ responses as SBA policy implementing the Temporary PPP Loan Program. *See* **Exhibit B** at 1 ("Borrowers and lenders may rely on the guidance provided in this document as SBA's interpretation of the CARES Act and of the Paycheck Protection Program Interim Final Rules.").

[13] *See* SBA Corrected Memo. (Dkt. #19) at 11 ("The reason that Jani-King franchises previously were deemed not eligible for PPP loans, or other SBA financing, is that the Jani-King business model (as reflected in the franchise agreements presented to the SBA in the past renders its franchises ***ineligible for such assistance*** under applicable affiliation and eligibility rules.") (emphasis added).

14

a JANI-KING® Master Franchise, is ineligible to receive a PPP loan based on its alleged status as a "passive business" ineligible for SBA loan assistance pursuant to 13 C.F.R. § 120.110(c). (2d Olear Decl. ¶¶ 19-24 (Dkt. #24-1).

In e-mails produced by the SBA in response to Plaintiffs' request for production of the Administrative Record underlying the eligibility determinations challenged in this action, the "SBA Franchise Team" recently characterized the SBA as having determined that the entire "Jani-King business model" is "not eligible for SBA financing."  (**Exhibit A**).  The SBA Chief Franchise Counsel has also characterized the entire "Jani-King brand" as "NOT eligible for SBA assistance" due to the purported passive business ineligibility of the Jani-King Master Franchises.  (**Exhibit C** at p. 4 of 5 (Bates numbered "Page 508 of 513")) (August 28, 2018 e-mail from Mr. Olear to Mr. Newcomb).  While those determinations are, as Plaintiffs have explained, arbitrary, capricious, and contrary to law and regulation, there is no question that the SBA maintains its position that the entire Jani-King business model is ineligible for SBA financial assistance due to the affiliation and eligibility issues described in those e-mails and the Olear Declarations submitted in this action.

The SBA has signaled that it will perform post-loan reviews for "compliance" with the same ineligibility rules challenged by the Plaintiffs in this action.  These review would—if not checked by this Court—render useless the loan funds disbursed to Plaintiffs and deny Plaintiffs the much-needed aid that Congress intended the Temporary PPP Loan Program to provide to economically distressed businesses and their employees.  Unless the Court resolves the arbitrary and capricious affiliation and eligibility "determinations" the SBA has made with respect to the JANI-KING® Master Franchises and Unit Franchisees—which the "SBA Franchise Team" has characterized as rendering the entire Jani-King "business model" ineligible for financial

assistance—Plaintiffs cannot actually *spend* the PPP loan proceeds they have received on the very purposes Congress intended.  (**Exhibit A**).  Indeed, Plaintiffs would be *worse off* for having received and spent PPP loan proceeds than they would have been had their respective lenders simply rejected their loan applications without processing them: Plaintiffs would have expended money on payroll costs for employees that would have otherwise been laid off or furloughed due to a lack of work and cash flow, only to have the SBA demand immediate repayment of that money upon threat of "administrative enforcement or referrals to other agencies."  (**Exhibit B** at 16).  *See* Ayres Decl. ¶ 17; 2d Carollo Decl. ¶ 20; Snyder Decl. ¶¶ 13, 16.

The affiliation and eligibility determinations challenged by Plaintiffs in this action therefore remain live disputes, notwithstanding the issuance of PPP loan funds to certain Plaintiffs by lenders acting without the approval or endorsement of the SBA.  The SBA has stated that it will review previously approved and issued PPP loans for compliance with the Interim Final Rules that the SBA issued to implement the Temporary PPP Loan Program. These include a rule specifically invoking the ineligibility criteria of 13 C.F.R. § 120.110 (including subsection (c)'s "passive business" category) as determinative of the types of businesses ineligible for PPP loans.  Thus, at a minimum, Plaintiff Ohio Services faces an impending injury from the SBA's *post-hoc* voiding of its PPP loan, demanding immediate repayment of the loan amount without forgiveness.  It is of no moment that the SBA has not yet formally issued such an edict to Ohio Services (or either of the other Plaintiffs that have received PPP loan funds), because today's FAQ response makes clear that the injury is "certainly impending."[14]

---

[14]*Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) ("[o]ne does not have to await the consummation of threatened injury to obtain preventive relief.  If the injury is certainly impending, that is enough").  *See also City of Waukesha v. EPA*, 320 F.3d 228, 236-37

Plaintiffs have shown that their injury is actual and imminent and Plaintiffs have come forward with proof of their harm, in the form of declarations, and shown that the harm is a result of the SBA's actions in "determining" the Jani-King business model to be ineligible for SBA financial assistance.  These determinations effectively render the PPP loans received by three Plaintiffs useless due to the SBA's announced policy of denying loan forgiveness and demanding immediate repayment of loans "improvidently granted" by lenders under delegated authority to borrowers deemed by the SBA to have been "ineligible" for the loan.  Specifically, Plaintiffs have shown that, without immediate declaratory and injunctive relief, they will not receive *any* benefit from the Temporary PPP Loan Program, because the loan funds are worthless (and actually worse than worthless—*economically harmful*) to Plaintiffs without the ability to invoke the CARES Act's provision permitting the loan to be forgiven.  The more immediate risk of harm relates to repayment of Temporary PPP Program loan funds and not Section 7(a) SBA Loan program funds.  But the SBA's invocation of the "ineligibility" criteria applicable to Section 7(a) loans in 13 C.F.R. § 120.110 as the baseline for assessing which businesses are ineligible for PPP loans[15] establishes that Ohio Services has standing to challenge the SBA's contention that Ohio Services is a "passive business" ineligible under 13 C.F.R. § 120.110(c).

Plaintiffs' inability to avail themselves of the economic relief Congress intended to provide under the Temporary PPP Loan Program will cause irreparable harm in the form of: (a) reduced salaries to their employees that will not be recoverable to the employees causing certain

---

(D.C. Cir. 2003) (finding injury-in-fact where there was a "substantial probability" that plaintiff would face "significant monitoring, compliance, and disposal costs" from new regulations).

[15] "Businesses that are ineligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedures (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible."  First PPP Interim Final Rule, 85 Fed. Reg. 20811, 20812 (Apr. 15, 2020).

17

hardship; (b) the likelihood of layoffs as the wider impacts of dramatically reduced revenues reverberate through the JANI-KING® Franchise System; and (c) a threat to the existence of the Plaintiffs' business.  An injury is imminent when it is certain to take place based on the record, even if it is prospective harm.[16]

The declaration of the owner of A and A Enterprises demonstrates that the company has experienced a 35-40 percent decrease in hours work with a corresponding reduction of payments it receives.  (Snyder Decl. ¶ 6).  A and A Enterprises fears for the loss of its employees and the very survival of the company, leading its President to personally fund approximately $20,000 in payroll costs in order to keep the employees of A and A Enterprises paid.  (Snyder Decl. ¶¶ 7-8).  A and A Enterprises has experienced a significant decrease in the amount of revenue it has collected since the beginning of the COVID-19 pandemic and it anticipates these decreases in revenue will continue and worsen over the next months due to further reductions in customer demand for commercial cleaning services.  (Snyder Decl. ¶¶ 14-15).  If A and A Enterprises cannot proceed to spend its PPP loan proceeds on the payroll and other costs that Congress intended, assured of the ability to receive forgiveness of loan amounts expended in accordance with the terms of Section 1106 of the CARES Act, A and A Enterprises will have received no

---

[16] *See, e.g., Sandvig v. Barr*, No. CV 16-1368 (JDB), 2020 WL 1494065, at *6 (D.D.C. Mar. 27, 2020) (determining that the dispute was ripe where plaintiffs had not visited and violated websites, but intended to do so, and there was no question that plaintiffs intended to engage in proscribed conduct); *Relman, Dane & Colfax PLLC v. Fair Hous. Council of San Fernando Valley*, No. CV1800495TNMRMM, 2019 WL 3779901, at *5 (D.D.C. Aug. 12, 2019), report and recommendation adopted sub nom. *Relman, Dane & Colfax PLLC v. Fair Hous. Council of San Fernado Valley*, No. 1:18-CV-00495 (TNM), 2019 WL 4737113 (D.D.C. Sept. 27, 2019) (rejecting argument that suit was premature and not ripe where contingent fees claimed by law firm depended on future events that had not occurred and may never occur where a contracting party unequivocally provided its position that it would not perform under the agreement should the future events comes to pass).

benefit under the loan and could well result in employee layoffs and even the closure of some of A and A Enterprises' franchise locations.  (Snyder Decl. ¶ 16).

Furthermore, as set forth in the declaration of the president of Ohio Services, many of its customers have significantly curtailed their demand for commercial cleaning services or in the case of some hotel or restaurant customers suspended them altogether.  (2d Carollo Decl. ¶ 17).  Because of the deteriorating economic environment, many customers are also delinquent in paying for commercial cleaning services that Ohio JANI-KING® Unit Franchisees performed in January, February, or March 2020.  (2d Carollo Decl. ¶ 18).  The financial strain of covering these costs creates an existential crisis for Ohio Services where it is obligated to advance Ohio JANI-KING® Unit Franchisees revenue for their work performed in the previous month, which are funded from an existing line of credit that is paid from collections.  (2d Carollo Decl. ¶ 18).  Furthermore, Ohio Services and its employees will face irreparable harm because Ohio Services will be unable to meet payroll obligations to its current workforce while funding revenue advances, which ultimately will lead to laying off employees absent access to a PPP loan.  (2d Carollo Decl. ¶ 19).

>    **B.**    **The Apparent Funding of PPP Loans for Three Plaintiffs By Lenders Does Not Resolve This Case or Controversy or Affect Plaintiffs' Standing.**

The fact that three out of four Plaintiffs have been found eligible by their lenders to be eligible for financing under the Temporary PPP Loan Program does not mean that there is no justiciable Article III case or controversy.  Plaintiffs are members of the JANI-KING® Franchise System that the SBA has categorically determined is ineligible for all forms of SBA financing. The two Plaintiffs at the top tier of the JANI-KING® Franchise System, Jani-King International, Inc. and JKF, face injury to the extent that "downstream" franchisees continue to be denied access to SBA financing.  In this regard, the SBA continues to take the position that the entire

JANI-KING® Franchise System is ineligible.  Even those Plaintiffs that receive financing may not get to keep the money.

The SBA's argument that Plaintiffs may receive financing is incomplete.  Plaintiffs need relief to determine their eligibility for all of its benefits that Congress intended—including forgiveness—when it enacted the CARES Act.  Section 1106 of the CARES Act discusses loan forgiveness requirements.  *See* **Exhibit D** (Section 1106).  The CARES Act provides that an "eligible recipient" means the recipient of a covered loan and a "covered loan" is a "loan guaranteed under paragraph (36) of section 7(a) of the Small Business Act (15 U.S.C. § 636(a)), as added by section 1102."  Section 1106(a)(7) provides that the expected forgiveness amount are sums used related to payroll costs along with certain other costs.  Amounts forgiven are considered canceled indebtedness.  Outside of the requirements that payments be used for the delineated expenditures, Section 1106 does not provide a basis for the SBA to disallow forgiveness for funds that were disbursed in accordance with the CARES Act.  However, just as the SBA has done with its interpretations of the straightforward and unambiguous language relating to affiliation and eligibility requirements for franchises, the SBA has already taken the position that the SBA will require certain borrowers to repay the loan and deny loan forgiveness.  *See* **Exhibit B** at 16.  Therefore, although Plaintiffs may have received or soon will receive financing, a case and controversy exists as to whether those Plaintiffs that received financing actually were afforded the benefit of receiving a PPP loan.  All indications from the SBA, both before and during this litigation, are that the SBA has determined that all JANI-KING® Franchise System to be ineligible for Section 7(a) and PPP loans alike.

The record before this Court clearly shows this.  For example, Mr. Olear responded to an email that "Jani-King" was not eligible for financing without having any information about the

applicant.  *See* **Exhibit C** (Franchise Inquiry) and **Exhibit A** (Jani-King Franchise Inquiry).  The email makes a general inquiry as to whether a JANI-KING® Master Franchise was eligible for a loan.  Without having any additional information, the SBA explained that the "Jani-King brand is NOT eligible for SBA assistance."   (**Exhibit C** at p. 4 of 5 (Bates numbered "Page 508 of 513")).  Similarly, in an email dated April 6, 2020, the SBA stated that the "SBA has reviewed the Jani-King business model in the past and found that . . . the business model is not eligible for SBA financing."   (**Exhibit A**).  It is telling that the email did not request additional information and that the response applied to the entire "Jani-King business model."  Therefore, any member of the JANI-KING® Franchise System that applies for SBA financing, including Plaintiffs, is injured by the same erroneous and uniform enforcement of an SBA determination that is unsupported by its statutory and regulatory authority.

Under the authorities cited, member of the JANI-KING® Franchise System are not required to engage in the futile act of applying for loans that are certain to be denied.  Nor is it necessary for all members of the JANI-KING® Franchise System to join in this litigation, including the more than 5,600 JANI-KING® Unit Franchisees, to reach a conclusion that, if made as to one member, would be applicable to the entire JANI-KING® Franchise System.

Additionally, for A and A Enterprises and Ohio Services, the survival of their companies turns on the implications of the foregone eligibility determination that the SBA has consistently made regarding the JANI-KING® Franchise system, both before and during this litigation.  Both Ohio Services and A and A Enterprises have received financing pursuant to the specific promise that, if used to pay for their underemployed employees, the financing would be forgiven.  The SBA has taken the position in its publicly available guidance statements that it will seek the repayment of ineligible PPP loan balances. *See* **Exhibit B** at 16. The SBA's consistent position

that members of the JANI-KING® Franchise System are ineligible raises the very real prospect that neither Ohio Services nor A and A Enterprises will be afforded forgiveness as they were promised under the CARES Act.   A and A Enterprises and Ohio Services will thus be injured by taking a debt to pay employees (as opposed to other necessary costs), only to later bear full financial responsibility for those costs adversely affecting their cash flow and economic viability. Such uncertainty is sufficient injury for standing.  *Cty. of Santa Clara v. Trump*, 250 F.Supp.3d 497, 537 (N.D. Cal. 2017) ("Without clarification regarding the Order's scope or legality, the Counties will be obligated to take steps to mitigate the risk of losing millions of dollars in federal funding, which will include placing funds in reserve and making cuts to services.").

Plaintiffs Jani-King International and JKF, and all JANI-KING® Master Franchisees, also face injury because the SBA has determined that they are *per se* ineligible.  The JANI-KING® Master Franchise Agreements have never been included in the Directory.  The Directory is the means by which the SBA enforces its misguided eligibility and affiliation rules by precluding SBA financing for those that are not listed.  Plaintiffs challenge is to the SBA's eligibility and affiliation rules as they apply to franchises and the JANI-KING® Franchise System in particular.  Regardless of whether Plaintiffs' receive PPP loans, in the first instance, they may not get to keep them, and they will never be eligible for Section 7(a) loans unless the Court sets the SBA straight.  Accordingly, a determination of eligibility by this Court to resolve this matter "will do no violence to the requirement that courts address only Cases or Controversies: this litigation presents the sort of concrete adversary contest typically presented to courts and the involvement of the judiciary hardly poses a threat to the 'tripartite allocation of power.'"  *In re Special Grand Jury* 89-2, 450 F.3d 1159, 1174 (10th Cir. 2006).

## IV.     CONCLUSION

The only thing consistent about the SBA's administration of Section 7(a) and PPP loans is that it is inconsistent—inconsistent with the SBA's statutory authority, inconsistent with the SBA's regulations, and internally inconsistent.  Only by granting Plaintiffs' motion for summary judgment can the resultant injury to Plaintiffs be ended and avoided in the future.  Accordingly, Plaintiffs respectfully request that the Court do so.

Dated:  May 13, 2020

Respectfully submitted,

JANI-KING INTERNATIONAL, INC.;
JANI-KING FRANCHISING, INC.;
OHIO SERVICES–CLE, LLC
dba JANI-KING OF CLEVELAND, and
A AND A ENTERPRISES dba JANI-KING

By:  */s/ Michael J. Lockerby*
                Counsel

Michael J. Lockerby (D.C. Bar No. 502987)
Frank S. Murray, Jr. (D.C. Bar No. 452063)
Jack G. Haake (D.C. Bar No. 1024798)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Sixth Floor
Washington, D.C. 20007-5143
(202) 672-5300
(202) 672-5399 (fax)

Peter L. Loh (admitted *pro hac vice*)
FOLEY & LARDNER LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
(214) 999-3000
(214) 999-4667 (fax)

*Counsel for Plaintiffs,*
*Jani-King International, Inc.,*
*Jani-King Franchising, Inc.,*
*Ohio Services–CLE, LLC*
*dba Jani-King of Cleveland, and*
*A and A Enterprises dba Jani-King*

4842-4671-5068.3